## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT SIMPSON RICCI, *et al.,* ) | **CA Nos.** | **72-0469-T (Belchertown)** |
| ) | | **74-2768-T (Fernald)** |
| Plaintiffs, ) | | **75-3910-T (Monson)** |
| ) | | **75-5023-T (Wrentham)** |
| v. ) | | **75-5210-T (Dever)** |
| ) | | |
| ROBERT L. OKIN, *et al.,* ) | | |
| ) | | |
| Defendants. ) | | |

## BRIEF IN SUPPORT OF DISABILITY LAW CENTER'S MOTION TO INTERVENE AS PLAINTIFF

NOW COMES, Disability Law Center, Inc. ("DLC"), and submits this Memorandum of Law in Support of its Motion to Intervene as Plaintiff in the proceedings to re-open above-captioned cases. DLC contends that it has standing to participate in this action in its own right and on behalf of its constituents, individuals with disabilities who reside in Massachusetts.

### INTRODUCTION

Under the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI") , 42 U.S.C. §10801 *et seq.*, and the Protection and Advocacy of Individual Rights Act ("PAIR"), 29 U.S.C.§ 794e(a), each state must have a protection and advocacy system to protect and advocate for the rights of individuals with disabilities. Each protection and advocacy system ("P&A") must have the authority to, *inter alia*, "pursue legal . . . remedies . . . to ensure the protection of, and advocacy for, the rights of such individuals within

the State who are or may be eligible for treatment, services or habilitation . . ." 42 U.S.C. .§ 15041. DLC is the designated P&A for the state of Massachusetts.

On June 13, 2004, the Plaintiffs in the above-captioned Belchertown, Fernald and Monson actions (Civil Actions No. 72-0469-T, No. 74-2768-T, and No. 75-3910-T) ("Belchertown/Fernald/Monson Plaintiffs") filed a Motion to Reopen and Restore Case to Active Docket and Enforce the Final Order of May 12, 1993 ( "Motion to Reopen"). On July 29, 2004, Plaintiffs in the above-captioned Wrentham and Dever actions (Civil Action Nos. 75-5023-T and 75-5210-T, respectively) filed a Statement of the Wrentham and Dever Plaintiffs Regarding Certain Issues Raised by Motion to Reopen and Restore Cases to the Active Docket and Enforce the Final Order.

DLC has filed its Motion to Intervene as Plaintiff to ensure an opportunity to be heard on issues affecting its P&A beneficiary populations if the case is re-opened. Of particular concern is the effort by the Belchertown/Fernald/Monson Plaintiffs to halt the planned closure of the Fernald Development Center.

## ARGUMENT

I.     THE DD ACT EXPRESSLY CONFERS UPON DLC STANDING TO LITIGATE IN ITS OWN RIGHT IN ORDER TO PROTECT THE RIGHTS OF INDIVIDUALS WITH DISABILITIES.

Congress has conferred upon P&As an express statutory grant of authority to litigate in a P&A's own right to enforce the legal rights of its beneficiary populations, persons with developmental disabilities, mental illness and other disabilities. Congress clearly has the authority to confer standing through a statutory mandate, and has done so in the case of the P&A System through the mandates in the DD Act, PAIMI Act and the PAIR Act, to ensure the

2

protection of the statutory and constitutional rights of persons with disabilities.

Congress originally enacted the DD Act into law in 1975 to address the public outcry in response to the media's exposure of inhumane and deplorable conditions at New York's Willowbrook State School for persons with mental retardation and other similar facilities. A state cannot receive federal funds for services to persons with developmental disabilities unless it has established a P&A for such persons, and has provided assurances that the P&A will have specified authorities. 42 U.S.C. §15041.

Under the DD Act, P&As are mandated to engage in the following activities, among others:

> pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements[.]

42 U.S.C. 15043(a)(1)(A)(I).

It is through Section 15043(a)(1)(A)(1) of the DD Act that Congress conferred upon P&As a special status to protect the legal rights of persons with developmental disabilities, including the authority for the P&A to bring litigation in its own right for this purpose. This point was clarified in the 1994 re-authorization of the DD Act by the report of the Senate Committee on Labor and Human Resources. The report stated as follows:

> The Committee heard testimony about the waste of scarce resources that are expended on litigating the issue of whether P&A systems have standing to bring suit. The Committee wishes to make it clear that we have reviewed this issue and have decided that no statutory fix is necessary because the current statute is clear that P&A systems have **standing to pursue legal remedies to**

> ensure the protection of and advocacy for the rights of individuals
> with developmental disabilities in the state.

S. Rep. 120, 103rd Cong., 1st Sess. 39-40 (1993) (*emphasis added*), reprinted in 1994 U.S. Code

and Admin. News at 164, 202. Based on this expressed intent of Congress, the regulations

implementing the DD Act include a provision confirming P&As' independent standing authority

under the Act. That regulation provides:

> Allotments [authorized by Congress to P&As under the Act]
> may be used to pay the otherwise allowable costs incurred
> by a Protection and Advocacy System in bringing lawsuits in
> its own right to redress incidents of abuse or neglect,
> discrimination and other rights violations impacting on
> individuals with developmental disabilities . . .

45 C.F.R. § 1386.25.

   Moreover, courts have consistently held that the P&A mandate provides that the state

must permit the agency to operate effectively, and with broad discretion and independence in

representing persons with disabilities. *See* Alabama Disabilities Advocacy Program v. J.S.

Tarwater Developmental Center, 894 F. Supp. 424 (M.D. Ala. 1995), *aff'd*, 97 F.3d 492 (11th Cir.

1996); Robbins v. Budke, 739 F. Supp. 1479 (D.N.M. 1990).

   Virtually all courts which have considered the issue have held that P&As have

independent standing, by virtue of these statutory mandates, to litigate in order to protect and

enforce the rights of persons with disabilities. In the first reported case on the issue, a court

permitted the Rhode Island P&A to intervene in its own right in an action against the State

Department of Mental Health for damages relating to injuries suffered by a patient as a result of

inappropriate medication. Naughton v. Bevilacqua, 458 F.Supp. 610 (D. R.I. 1978), *aff'd on

other grounds*, 605 F.2d 586 (1st Cir. 1979). The court found that the P&A system's standing is

"crucial to protect the rights secured by the [DD] Act." *Id.* at 616. With regard to the P&A's standing, the court noted that

> like any agency charged with enforcement of statutory provisions, the [P&A] need not show injury to the agency in order to initiate suit or intervene on behalf of an injured party. The live case or controversy requirement of Art[icle] III is satisfied by injury to [the patient]. Congress can charge an agency with representation and protection of the statutory rights of the particularly helpless developmentally disabled.

*Id.*, n. 3. In allowing the P&A to intervene in <u>Naughton</u>, the court noted the value of the P&A's "insight into the problems and statutory protection of the developmentally disabled." *Id.*

A number of other courts have held that P&As have the independent right to sue in their own name to vindicate the rights of persons with mental illness and developmental disabilities. <u>Michigan Protection and Advocacy Service</u> v. <u>Babin</u>, 799 F. Supp. 695, 702 n.12 (E.D. Mich. 1992), aff'd 18 F.3d 337 (6th Cir. 1994) ("It was clearly the intention of Congress that the [P&A] and other similar advocacy groups represent and, if necessary, litigate on behalf of individuals suffering from developmental disabilities"); <u>Goldstein</u> v. <u>Coughlin</u>, 83 F.R.D. 613, 614 (W.D.N.Y. 1979)("[g]iven the Congressional purpose to provide retarded persons with legal representation as revealed in Section [6042 of the DD Act], and given [the P&A's] responsibilities as the designated advocacy system for this state, [the P&A] need show no injury to itself in order to have standing in this action"); <u>E.K.</u> v. <u>New York Hospital-Cornell Medical Center</u>, 600 N.Y.S. 2d 993 (N.Y. Sup. Ct. 1992); <u>Hershberger</u> v. <u>Missouri Protection & Advocacy Services, Inc.</u>, 880 S.W.2d 380 (Mo. Ct. App. 1994) (P&A had standing to intervene in a proceeding concerning the sale of real estate of a person who lacked capacity, asserting the

interests of the individual in the P&A's own name).  In each of these cases, the court articulated

that the P&A had standing to litigate to protect the rights of persons with disabilities whether or

not there were other named Plaintiffs in the action. Indeed, the P&A acted alone in the Babin,

Naughton, and Hershberger cases cited above. *See also* Doe v. Stincer, 175 F.3d 879 (11th Cir.

1999) (that section of the [P&A enabling statute], which granted standing to protection and

advocacy groups to pursue legal remedies to "ensure protection of individuals with mental

illness," did not require P&A, as prerequisite to its associational standing, to name specific

individual(s) on whose behalf it was suing); *Cf.* Association for Retarded Citizens of Dallas v.

Dallas County Mental Health & Mental Retardation Center, 19 F.3d 241 (5th Cir. 1994) (The

court, in reaching its conclusion that the Texas P&A did not have standing, failed to consider the

agency's federal statutory mandate conferring standing. Instead, the court rested its analysis on

the theories of "associational" and "organizational"standing.); *But cf.* Tennessee Protection and

Advocacy, Inc. v. Board of Education of Putnam County, 24 F.Supp.2d 808 (M.D. Tenn.

1998)(P&A did not have standing where it was not filing on behalf of a specific, named, injured

individual but rather, alleging discrimination against all disabled children in the county school

system.)

II.    DLC'S INTERVENTION IS NECESSARY TO PROTECT THE INTERESTS OF P&A
       BENEFICIARIES.

A key issue raised in the Motion to Reopen is the Belchertown/Fernald/Monson

Plaintiff's opposition to the closure of the Fernald Developmental Center. Rule 24 (a)(2) of the

Federal Rules of Civil Procedure provides that

> upon timely application anyone shall be permitted to intervene in an

6

> action when the applicant claims an interest relating to the property
> or transaction which is the subject of the action and the applicant is
> so situated that the disposition of the action may as a practical
> matter impair or impede the applicant's ability to protect that
> interest, unless the applicant's interest is adequately represented by
> existing parties.

Although current residents of the Belchertown, Fernald, Monson, Wrentham, and Dever Centers are represented by counsel in the above-captioned matter, DLC's is federally authorized to protect and advocate for all individuals in Massachusetts who have a developmental disability. This includes individuals receiving services throughout the DMR service delivery system in Massachusetts-- not only current residents at state ICFs/MR, but also those at risk of being institutionalized at an ICF/MR or other facility, and other individuals receiving services in the community. Those at-risk individuals and community service recipients have a crucial stake in the outcome of the present action because it involves fundamental issues related to unnecessary institutionalization and the right to community-based services addressed by the Supreme Court in Olmstead v. L.C., 527 U.S. 581 (1999). All of these individuals are affected by the budget implications of decisions to close or maintain large state ICFs/MR. If the above-captioned case is re-opened, it is imperative that these individuals, who are not currently represented in this case, have a voice concerning issues that affect their services and supports. If DLC is not allowed to intervene at this time, it is likely that such individuals will be precluded from having a meaningful opportunity to address this issue in future litigation.

## **CONCLUSION**

For the foregoing reasons, DLC respectfully requests that the Court allow its Motion to Intervene as Plaintiff.

Respectfully submitted,
Disability Law Center, Inc.

Bettina Toner (B.B.O. #629300)
Senior Staff Attorney
Stanley J. Eichner (B.B.O. #543139)
Director of Litigation
Disability Law Center, Inc.
11 Beacon Street, Suite 925
Boston, MA 02108
(617) 723-8455, ext. 152

Dated: August 26, 2004

8