November 16, 2004

Robin T. Tyler
53 Marlborough Road
Waltham, MA 02452-8143
RobinTraceyTyler@aol.com

Clerk's Office
Attn: Judge Tauro
Room 2300
1 Courthouse Way
Boston, MA 02210

    re:    Residents of Fernald Development Center
            Mediation Possibility

Dear Judge Tauro:

I am writing to you confidentially. I am a local resident of the area near the Fernald Development Center. I want the very best outcome for the residents of the Fernald Center whatever that turns out to be. I have no personal stake in the outcome of your decision concerning this case. I have no relatives (to the best of my knowledge) that are impacted by this case. I am not an attorney. I respectfully request that you consider the possibility of mediation for this case.

Rather than use the now "traditional" format of mediation or the use of a settlement master, I respectfully suggest that you employ a variation of the "permanency" mediation model. What I envision as a "traditional" mediation model involves a mediator facilitating work toward the resolution of a conflict between two (or more) parties. In the most basic "permanency" mediation model, a mediator facilitates work toward the resolution of a conflict between two or more parties in cases concerning the permanent or long term placement of children in adoption or guardianship cases. There is a fundamental difference between "traditional" and permanency mediation. In "traditional" mediation, the mediator is essentially disinterested in the outcome of the case, but permanency mediation permits/requires the mediator to be interested in the best outcome for the child. The mediator must always keep in mind "safety parameters" for the child as set out by social workers.

In permanency mediation, social workers meet with the mediator to discuss the situation and needs of the child and to set up safety parameters for a possible future agreement. The mediator then meets with birth parent(s) and the resource (foster or future adoptive parents) to determine if mediation is appropriate or not. Often, a mediator can eventually get parties to talk in a joint session(s). If things go well, together they plan for the permanent placement of the child and work out an agreement. Also, although a child is obviously not someone that can represent himself or herself, older children may actually play a role in the mediation process at some level, if that is determined by the professionals to be appropriate.

Residents of Fernald Development Center
Mediation Possibility
Page 2 of 2


I feel that the use of this particular model of mediation may be useful for five basic reasons:

1) If I understand correctly, there has been <u>an order of equal or better treatment for the residents</u>, so that is <u>a beginning point to start</u>. In permanency mediation cases, screening conferences are ordered by Judges, when appropriate.

2) There are 252 or 225 (depending on what number you use) or other number of residents. Even though the number is large and seemingly unclear, it is not an endless number. <u>Mediation is possible</u>.

3) <u>Family members and other interested parties may participate</u> in a meaningful way to make future plans for the residents. As in permanency mediation, there is much room for the input of professionals acting on behalf of the residents.

4) Possibly <u>residents may participate</u> in a meaningful way to make future plans.

5) I think that <u>litigation may create a great deal of stress on residents</u> or might take so long, it outlasts the lives of some of the much older residents.


I have tried my best to be clear. I hope this letter is helpful. If I may be of some assistance, I can be reached at my home address above.

I wish you the best of luck in making a decision concerning this situation and in helping the residents of the Fernald Center live as well and as full as possible.

Thank you for your time.


Sincerely,

*Robin T. Tyler*
Robin T. Tyler