UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| ROBERT SIMPSON RICCI, et al., | ) | | |
| | ) | C.A. Nos. | 72-0469-T |
| Plaintiffs, | ) | | 74-2768-T |
| | ) | | 75-3910-T |
| v. | ) | | 75-5023-T |
| | ) | | 75-5210-T |
| ROBERT L. OKIN, et al., | ) | | |
| | ) | | |
| Defendants. | ) | | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
NOTICE OF UNRESOLVED OUTSTANDING ISSUES**

Introduction

Of the 17 issues that the Fernald Plaintiffs have set forth in their December 29th *Notice of Unresolved Outstanding Issues*, many have not been the subject of the dispute resolution process mandated in this Court's Order of May 25, 1993 (the "Final Order") and not a single one requires this Court's immediate intervention. Following this brief introduction to the matter, the Defendants will offer a succinct, point-by-point response concerning the issues identified by the Plaintiffs as being "outstanding" and "unresolved."

On November 10, 2004, at a hearing on the Fernald Plaintiffs' *Motion to Re-Open and Restore Case to Active Docket* ("Plaintiffs' Motion"), the Court (Tauro, J.) directed the parties to enter into settlement discussions regarding (1) the conduct of individual service plans ("ISPs") at the Fernald Developmental Center, and (2) the placement planning process for individuals who will be transferred from Fernald. The Court indicated that (a) all individual services planning at Fernald should be focused entirely on the current needs of the individual and must comply with the Commonwealth's ISP regulations, and (b) there should be an appropriate separation between

planning for the alternative placement of individuals and the development of the annual ISP. Transcript at 81-82.

On November 11, 2004, the Department of Mental Retardation ("the Department"), through its counsel and Commissioner, met with Class Counsel and Class Representatives in an all-day negotiation session. The Department and the Fernald Plaintiffs met twice more in December 2004 in lengthy negotiation sessions ("the Settlement Meetings"). Per the Court's November 10th order, exhaustive discussion of all of the issues pertaining to placement planning and individual service plans (ISPs) at Fernald took place, and substantial progress was made toward reaching agreement on those issues.

<u>Individual Services Planning, Placement Planning, and Related Issues</u>

As a result of these Settlement Meetings, the Department agreed to substantially alter its current practice by (1) agreeing to separate all discussions about placement from the annual ISP meeting, allowing the ISP team to focus exclusively on the current needs of the individual at the annual ISP meeting (<u>see</u> Stipulation dated December 29, 2004, ¶ 3); and (2) agreeing that the Department would move forward with a transfer only in an ISP modification meeting, consistent with its regulations, after a specified placement was developed for the individual (<u>see</u> Stipulation, ¶ 4). The Department also agreed to continue negotiating appropriate mechanisms for engaging individuals, families and guardians in a discussion of placement options *prior* to the development of a site-specific alternative placement recommendation for each individual, in order that adequate relevant information might be exchanged to enable the Department to identify specific alternative placement(s) consistent with the individual's clinical needs, relationships, geographic considerations, and compatibility with peers. Stipulation ¶6.

While the parties did not agree that separate meetings about placement issues should take

2

place after the annual ISP is completed in order to facilitate the development of specific alternative sites that meet the individual's needs, the parties did agree that, for those families that initiate placement discussions, an appropriate mechanism could entail contact between the family and the Individual Transition Planning ("ITP") team to facilitate a free flow of information about the individual to the ITP team (the forum in which the administrative task of locating appropriate placement typically begins). See Stipulation ¶ 3.

With the recent signing of the Stipulation, the Department believes that any problems raised in the Plaintiffs' Motion that relate to the conduct of ISPs and placement planning discussions at Fernald – including the development and use of the Placement Planning Profile as a tool for the ITP Team, and the "administrative editing" of ISPs at Fernald – should fully subside upon implementation of the Stipulation. Therefore, it is the Department's position that the Plaintiffs' identification of "outstanding issues" in ¶¶ 9- 13 of their December 29th *Notice of Unresolved Outstanding Issues* actually conflicts with the Stipulation and overstates the extent of unresolved issues between the parties.

New or Under-Discussed Issues

Further, Defendants assert that the parties have <u>not</u> yet held exhaustive or meaningful settlement discussions on a number of issues raised in the Plaintiffs' Motion and now cited in the Plaintiffs' *Notice of Unresolved Outstanding Issues*. For example, during the Settlement Meetings, there was virtually no discussion of Plaintiffs' claims concerning the alleged inadequacy of the Department's efforts to obtain sufficient funding for *Ricci* class members in Fiscal Year 2005 and Fiscal Year 2006. See Plaintiffs' Notice, ¶ 15. No detailed discussion of any specific alleged negative impact of the FY '05 budget occurred, and since the Governor's budget for Fiscal Year 2006 has not yet been published, the parties conducted no discussion of

3

the potential impact of that budget either.

Similarly, there was little meaningful dialogue regarding the allegations that there are unmet capital needs at Fernald,[1] or any allegations that the physical plant at Fernald fails to satisfy Title XIX standards. See Plaintiffs' Notice, ¶ 14. Plaintiffs request that the Court take a "view" of the facility, but have not identified any specific physical plant issues that the Department has not already addressed.

Defendants' Position Regarding Plaintiffs' Statement of "Unresolved Issues"

In the following point-by-point response to Plaintiffs' compilation of "unresolved" issues, Plaintiffs' formulations of the issues are reiterated verbatim in bold-face type with the Department's response appearing underneath in regular type.

**1.   Request Court to take View of Fernald Developmental Center**

The Department believes that this action is unnecessary, but leaves to the Court's discretion whether such a view is warranted on the facts presented.

**2.   List of Class Members at Fernald / exact date of each annual ISP for next calendar year / name of current QMRP assigned to oversee the ISP for each identified resident/name, phone number and address of each current guardian for every**

---

[1] Some discussions have occurred regarding plaintiffs' claim that greater capital outlays are needed at Fernald. However, these talks have been limited and unproductive to date. Plaintiffs' position is that only a multi-million dollar capital expenditure consistent with that outlined in a 2002 Parsons-Brinkerhoff study would be adequate. The Department has stated that the purpose of this study -- an inventory of all buildings on all state-owned properties, regardless of whether they are currently in use -- is not a meaningful starting place for these discussions. Plaintiffs have not responded to the Department's proposal for capital improvements outlined in its letter of July 1, 2004, other than to state, in general terms, that it is inadequate. For its part, the Department has expended over $250,000 and effected numerous physical plant repairs at Fernald since the filing of the Plaintiffs' Motion, including the re-roofing of buildings, the painting of buildings (inside and out), and the repair and refurbishing of bathrooms. The Department has hired 5 new staff in addition to the 18 incumbent maintenance and grounds staff members at Fernald. In addition, within weeks the Department will be transferring individuals residing in Cottages 5 and 6 to a refurbished Cottage 11 to address incidents of vermin infestation in Cottage 5 and 6 that remained stubbornly impervious to concerted extermination efforts. The Department is committed to maintaining the environment in full compliance with the Title XIX standards, and believes that the current level of cleanliness and habitability well meets those standards.

4

**resident at Fernald Center**

At the Court hearing on November 10, 2004, Plaintiffs requested that Defendants provide them with "the dates of the ISP meeting for each family member," and the Court stated: "They will provide it to you." Transcript, November 10, 2004, p. 83. Immediately thereafter, the Department provided Plaintiffs' counsel with a list of all ISP dates for individuals at Fernald, but with the names of individuals redacted, citing the confidentiality of client records under state law (115 C.M.R. §§ 1.00 et seq.) and the civil and criminal liability that could be imposed upon the Department for unauthorized disclosures under the Health Insurance Portability and Accountability Act (HIPAA). After discussion with the Plaintiffs' counsel, the Department then sent each individual Fernald resident, and their family member and/or guardian, a notice regarding the availability of the Fernald League to act as the individual's "designated representative," and an authorization form, inviting the individual, family member or guardian to execute a release to allow the Department to disclose personal contact information, if they so desired, to the Fernald League. Defendants contend that the aforementioned process is required by law before the Department can release the requested personal health information to the Plaintiffs. Moreover, on past occasions when the Department has sought permission to disclose personal contact information, family members or guardians have objected to any such disclosure.

3. **Prohibition of DMR employees discussing status of Federal Court case with family members or guardians**

The Department objects to this as an unwarranted, unilateral imposition of a restriction upon individual employees' right of free speech under the United States Constitution and the Massachusetts Constitution.

4. **Prohibition against the transfer on more than on one occasion of any current resident of Fernald to an alternative placement site at an existing ICF/MR**

This is a new issue, raised by the Plaintiffs only within the past week, and hence it has not been the subject of the procedure contemplated in Paragraph 7(c) of the Court's Final Order. In any event, the Department objects to any attempt to limit the Department's ability to meet the ISP needs of individuals who are transferred from Fernald to other ICF/MRs or the community. While it is plainly the Department's goal <u>not</u> to cause multiple transfers for individuals, the individuals' ISP-determined needs must control placement decisions, not an administrative rule or a stipulation between the Fernald League and the Department.

**5. The Department will allow any individual who chooses an alternative placement and later decides that the alternative program is not successful for that individual to return to an ICF/MR bed within DMR**

The Department offered this term in its July 1, 2004, letter to Plaintiffs as part of the 13-Point Plan to Close the Fernald Developmental Center. Thus, the Department does not view this as an unresolved issue.

**6. Applicability of Stipulation by the parties dated December 29, 2004 to include the current residents at Marquardt Nursing Center located on Fernald grounds**

This is another issue that has only arisen within the past week. Marquardt Nursing Center is not, and has never been, subject to the Court's Final Order. Marquardt is a separate skilled nursing facility located on the Fernald campus; some individuals residing at Marquardt are *Ricci* class members, others are not. In this regard, Marquardt is no different than other facilities operated by the Department that are not subject to the *Ricci* Final Order (such as the Hogan or Galvin Developmental Centers).

Further, admissions of *Ricci* and non-*Ricci* class members to Marquardt come from the community as well as from the Department's developmental centers. If the Stipulation were applied to an individual who was admitted to Marquardt for a short-term rehabilitative stay, the

6

Stipulation might be read as precluding the Department from discussing his or her return to the community. Therefore the application of the Stipulation's terms to individuals living at Marquardt Nursing Center is an inappropriate attempt to extend the jurisdiction of the Court beyond the facilities identified in the various *Ricci* court orders, including the Final Order.

7. **Opposition to the Department's intention to mail referral materials relating to representatives from any other advocacy group or entity in addition to the Fernald League that wishes to offer its services to act as a "designated representative" at an individual's ISP at Fernald**

This issue has only cropped up within the past week and has not been raised with all counsel of record. The Department strongly objects to the Plaintiffs' attempt to limit the availablity of other organizations, including the statutorily-designated Protection and Advocacy ("P&A") groups or the ARC of Massachusetts, to act as the "designated representative" for individuals at Fernald, and believes that any attempt to do so would violate federal law.

8. **Failure to comply with Final Order, May 25, 1993, paragraph 4:**

> "Defendants shall not approve a transfer of any class member of a state school into the community, or from one community residence to another such residence, until and unless the Superintendent of the transferring school (or the Regional Director of the pertinent community region) certifies that the individual to be transferred will receive equal or better services to meet their needs in the new location and that all ISP-recommended services for the individual's current needs as identified in the ISP are available at the new location."

The Department has at all times scrupulously complied with this provision of the Final Order. Concerning the "transfer certification" issue, the Department's position is fully set forth on pages 10-11 and 21-22 of its *Opposition to Plaintiffs' Motion to Reopen and Restore Case to Active Docket*, which was filed with this Court on August 16, 2004 (see Docket item no. 8) (hereinafter, "*Opposition*"). Discussions with Plaintiffs concerning this issue have not proved fruitful.

9. **Failure to comply with Final Order, May 25, 1993, paragraph 2a**:

> "**Defendants shall substantially provide services to each class member on a lifetime basis. The specific services to be provided to each class member to meet this obligation, and defining this obligation, shall be set forth in an Individual Service Plan ("ISP") that details each class member's capabilities and needs for services, pursuant to the regulations governing the preparation of ISP's as currently set forth in 103 CMR 20, et seq. (the "ISP Regulations"). Such services shall include, as appropriate for the person, residential programs; day programs; recreational and leisure time activities; medical psychological, dental and health-related professional services; respite care and crisis intervention services; support and generic services, such as guardianship and adaptive equipment services; and transportation services.**"

The Defendants believe that this is not an issue warranting the reopening of the *Ricci* case for the reasons stated in their *Opposition* at pages 5-7.  Accepting *arguendo* that Plaintiffs stated a viable and material claim relating to this provision in their Motion, then, as noted above, the Defendants respond that any such issue has been resolved through the Stipulation.

10. **Failure to comply with Final Order, May 25, 1993, paragraph 2b**:

> "**Defendants shall not seek to amend, revise, or otherwise modify the ISP Regulations as they affect class members except upon 60 days written notice to the plaintiffs' counsel, with an opportunity for plaintiffs to comment upon the proposed changes. Any amendments must leave in place a process that is at least the substantial equivalent of the regulations currently set forth in 104 CMR 20 et seq., with regard to the definition of the ISP, the individualized nature of the ISP, the existence of an appeal process, and the principles contained in footnotes 2 and 3 herein.**"

The Department has made no effort to "amend, revise, or otherwise modify the ISP Regulations" and, thus, this is a non-issue.  See also *Opposition* at pages 22-28.

11. **Failure to comply with Final Order, May 25, 1993, paragraph 6a**

> "**Defendants shall continue to seek to improve, and shall not undermine, the progress achieved during the period of this litigation by:**
>
> **a. Maintaining and implementing the basic principles of the ISP.**"

The Defendants believe that this is not an issue warranting the reopening of the *Ricci* case for the reasons stated in their *Opposition* at pages 22-28.  Accepting *arguendo* that Plaintiffs stated a

viable and material claim relating to this provision in their Motion, then, as noted above, the Defendants respond that any such issue has been resolved through the Stipulation.

**12.  The Defendants have, in the absence of specific regulatory authority, created a Placement Planning Process for the displacement of all current residents at the Fernald Developmental Center, which process includes a Placement Profile, in which the entire ISP "team" authorized by Regulation (115 CMR 6.21 et seq.) does not fully participate, but instead the program, support needs, and alternative future residential site of the individual are determined by an Individual Transition Planning Team comprised of Fernald administrators only.**

The Defendants believe that this is not an issue warranting the reopening of the *Ricci* case for the reasons stated in their *Opposition* at pages 22-28. Accepting *arguendo* that Plaintiffs stated a viable and material claim relating to this provision in their Motion, then, as noted above, the Defendants respond that any such issue has been resolved through the Stipulation.

**13.  The Defendants, without specific regulatory authority and in the absence of a reconvened ISP team, have conducted reviews of ISPs previously completed by family, guardians, and team members and have edited and otherwise re-written ISPs, in the absence of family members, guardians, and team member professionals, with the purpose of intentionally reducing costs, services and supports to residents, which clearly constitutes a systemic violation of the specific mandates of the Order.**

The Defendants believe that this is not an issue warranting the reopening of the *Ricci* case for the reasons stated in their *Opposition* at pages 28-31. Accepting *arguendo* that Plaintiffs stated a viable and material claim relating to this provision in their Motion, then, as noted above, the Defendants respond that any such issue has been resolved through the Stipulation.

**14.  Failure to comply with Final Order, May 25, 1993, paragraph 6b:**

> **"Defendants shall continue to seek to improve, and shall not undermine, the progress achieved during the period of this litigation by:**
>
> **b. Exerting their best efforts to maintain and secure sufficient funds to meet the needs of class members under this Order."**

**The Defendants have failed to provide appropriations to meet the large scale present need for capital improvements and repairs at Fernald.**

> **The policy decision announced by Governor Romney to close or consolidate existing ICF/MR facilities which are subject to the Final Order together with the unprecedented reduction in personnel and available budget in the past several years totally undermines and erodes the progress achieved by the Federal Court during the period of litigation 1972 - 1993 and accordingly, represents a systemic violation.**

See Defendants' response to paragraph 15, *infra*.

15. **The impact of the FY2005 and FY2006 budgets, which place Fernald class members at risk and severely affect the Defendant's ability to meet its Court-mandated obligations to provide active treatment for Ricci class members.**
    **In addition, the staff reductions and early retirements in FY2002 and FY2003 have had a direct effect upon the number of professional, clinical, and support staff required to meet the ISP-documented needs of class members.**
    **Further, the failure to fill long-term staff vacancies has resulted in inappropriate short-term use of floating personnel, unnecessary overtime, increased caseloads for remaining staff, an attendant lack of supervision, and a direct affect upon resident participation in active treatment programs and recreational activities.**

To date, the parties have conducted no significant discussion regarding the impact, if any, of the staffing reductions the Department experienced in Fiscal Years 2002, 2003 or 2004. Defendants' position is that the Plaintiffs' Motion lacks merit insofar as it asserts that there are inadequate personnel, staffing, or resources at the Fernald Developmental Center. See *Opposition* at pp. 8-9 and 31-35. The number of trained professional, clinical and direct care staff at Fernald meets the ISP-documented needs of individuals at Fernald, complies with Title XIX requirements and, indeed, exceeds those requirements as evidenced by the staff – resident ratio of 3:1.2 at Fernald. Notwithstanding past staff reductions, this ratio has remained constant over the years or even increased slightly due to a decline in the Fernald census and recent significant re-hiring of staff at Fernald.

In the spirit of compromise, and without admitting any deficiency in compliance with the Final Order, the Department has suggested that for a meaningful discussion of this issue to occur, as required by the Final Order, ¶ 7 (c), Plaintiffs should identify specific instances in

which the Department's level of professional, clinical, and support staff required to meet the ISP-documented needs of class members has fallen short of recognized benchmarks at Fernald. To date, no such discussion has occurred.

The Department has acknowledged that there are staffing vacancies at Fernald that it is actively seeking to fill -- in particular, nursing vacancies. The Department has negotiated agreements with the relevant unions that provide "signing" incentives for recruiting nursing staff. The Department continues to fill direct care staffing vacancies as they arise, and to date it has hired 17 new staff at Fernald, in addition to the hires identified in the Affidavit of Diane Enochs filed in August.

The Department contends that the ¶ 7 (c) process should and could be utilized to address allegations regarding staffing if the Plaintiffs were willing to engage in meaningful negotiations around specific personnel issues. Similarly, the Department is more than willing to discuss the Plaintiffs' perception of the need for more capital improvements at Fernald if they are willing to be more specific about what they view as needed repairs.

16. **Failure to comply with Final Order, May 25, 1993, paragraph 2c:**

   "Sufficient adequately trained and experienced personnel, as reasonably determined by the Department of Mental Retardation based on professional judgment, shall be available to substantially meet the needs set forth in each class member's ISP."

   **Due to staff shortages, lack of supervision, and lack of preventative maintenance programs, there has been a progressive and alarming physical deterioration and loss of timely maintenance at Fernald, which has resulted in an increase in safety issues, lack of medical attention, inconsistent transportation services, elimination of recreation programs, unattended health issues, and a visible increase in vermin and insects in residential areas.**

   See Defendants' response to paragraph 15, *supra*. In addition, pages 14-15 and 36-36 of the *Opposition* contain the Department's detailed responses to the Plaintiffs' allegations of

inadequate maintenance at Fernald.

**17.   Failure to comply with Final Order, May 25, 1993, paragraph 5**

> "Except as set forth in other paragraphs of this Order, nothing in this Order is intended to detract from or limit the discretion of the defendants in developing and improving programs, managing and determining the personnel and budget of the Department of Mental Retardation and other state agencies, implementing innovative services, improving quality enhancement and dispute-resolution mechanisms, or allocating its resources to ensure equitable treatment of its citizens."

The Defendants are at a loss to understand how the Department could possibly be in violation of the above-quoted provision of the Final Order as it speaks only of the Department's discretion and contains no specific mandate.

        Respectfully submitted,

        DEPARTMENT OF MENTAL RETARDATION

        By its attorneys,

        THOMAS F. REILLY
        ATTORNEY GENERAL

        /s/  Robert L. Quinan, Jr.
        _____
        Robert L. Quinan, Jr., BBO No. 553010
        Juliana deHaan Rice, BBO No. 564918
        Assistant Attorneys General
        Office of the Attorney General
        One Ashburton Place – Room 2019
        Boston, MA  02108
        (617) 727-2200, ext. 2554 (Quinan)

        _____
        Marianne Meacham, BBO # 550468
        Special Assistant Attorney General
        General Counsel
        Department of Mental Retardation
        500 Harrison Avenue
        Boston, MA  02118
        (617) 727-5608

DATED: December 29, 2004

## CERTIFICATE OF SERVICE

I, Robert L. Quinan, Jr., hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first-class mail, postage prepaid, on December 30, 2004.

/s/  Robert L. Quinan, Jr.

_____
Robert L. Quinan, Jr., BBO No. 553010