December 31, 2004

From: William F. Gear
      Barbara Santella

To:  Gerald J. Morrissey Jr.
     Commissioner DMR
     500 Harrison Avenue
     Boston, MA 02118

Dear Commissioner Morrissey:

This letter is written to address one of many acts of discourtesy experienced by my daughter Gena Gear and her co-guardians in the matter of the appeal of Gena's 2002 ISP.

Although Gena has been assigned to Region VI for many years, during most of the past year, we have been involved in the modification stage of the appeal of Gena's 2002 ISP. As your records will indicate, we were notified by you that our appeal was allowed. Attached are your letter and the decision of the hearing officer.

The modification process was assigned to Mr. Mark Sanderson of Region V. As Mr. Sanderson and I, after a lengthy and civil discourse, could not reach agreement, Mr. Sanderson returned jurisdiction to Region VI. At that time he informed us that we had the option to appeal the modification document, which in his mind had assumed the status of a 2004 draft ISP. We believe on this last point he was in error, as his instructions to us to appeal the working papers of an existing appeal process is nonsensical. Nonetheless, under protest, we mailed notice of our intentions to exercise this appeal option as instructed by Mr. Sanderson.

We sent this certified notice of appeal to Ms. Gail Gillespie, Regional Director of Region VI. We have learned from the United States Postal Service that Ms. Gillespie refused to accept this certified letter on three separate occasions (11/23, 11/29/, 12/9). This unopened, unclaimed letter was returned to us on 12/27/2004

However, she wrote us concerning this matter. It appears to us that Ms. Gillespie learned of our appeal by way of a certified cc that we sent to Mr. Sanderson. We believe this is the latest example of bad faith and disrespectful treatment and non compliance with the DMR regulations regarding Gena Gear's ISP rights as a Ricci Class Client. I enclose all relevant correspondence.

Just prior to Christmas, and just after Christmas, Ms. Roberta Lewonis, acting for Ms. Gillespie, requested an appointment to visit with Gena. The DMR's usual process is to encourage the Service Coordinator to make such visits. The last Service Coordinator was reported to be Mr. Walter Astin. It makes us uncomfortable to receive either Ms. Lewonis or Ms. Gillespie with whom we have suffered literally years of mistreatment and

disrespect, and with whom we shall continue to engage in an adversarial process for years.

We ask that you instruct Ms. Gillespie to follow the DMR regulations in this matter and that the DMR follow the usual practice in this matter. We also ask that you or your legal staff provide us a written explanation of how the modification working papers of the 2002 ISP appeal has managed to be converted to a new appeal of a fictitious 2004 ISP.

There has been no 2004 ISP meeting and one has to ask how the appeal of the 2002 ISP was converted to an appeal of a nonexistent 2004 ISP. Gena has won her appeal and your staff has wished this reality out of existence.

We would be grateful for your response.

Cc: Honorable Judge Joseph Tauro
    Attorney Beryl Cohen
    Colleen Lutkevich COFAR

U.S. POSTAGE
PAID
ROSLINDALE,MA
NOV 22, 04
AMOUNT
$4.42
00052686-

02452

UNITED STATES
POSTAL SERVICE

9264

CERTIFIED MAIL™

7003 0500 0004 6699 8577

William L. Gero
109 Neponset Ave
Roslindale MA 0213

UNCLAIMED

Ms. Gail Gillespie
Metro Region DMR Regional Director
200 Trapelo Road
Waltham MA 02452

RTN 4
11/27/04
GG

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. Gail Gilbert
Metro Region Dire
2nd Floor Rd
Richmond, VA 24272

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by ( Printed Name )          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)           ☐ Yes

2. Article Number
   (Transfer from service label)     7003 0500 0001 5399 6577

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540



# The Commonwealth of Massachusetts
## Executive Office of Health & Human Services
### Department of Mental Retardation
### 500 Harrison Avenue
### Boston, MA 02118

**Mitt Romney**
Governor

**Kerry Healey**
Lieutenant Governor

**Ronald Preston**
Secretary

**Gerald J. Morrissey, Jr.**
Commissioner

Area Code (617) 727-5608
TTY: (617) 624-7590

January 6, 2004

Jerome B. Tichner, Esquire
Brown, Rudnick, Berlack & Israels
One Financial Center
Boston, MA 02111

RE:  Appeal of Gena Gear
     Final Decision

Dear Attorney Tichner:

Enclosed please find the recommended decision of the hearing officer in the above appeal. She held a fair hearing regarding the appeal of your client's ISP implementation.

The hearing officer's recommended decision made findings of fact, proposed conclusions of law and a recommended decision. After reviewing the hearing officer's recommended decision, I find that it is in accordance with the law and with DMR regulations and therefore adopt its findings of fact, conclusion of law and reasoning as my own. Your appeal is therefore **allowed**.

You, or any person aggrieved by this decision may appeal to the Superior Court in accordance with G.L. c. 30A. The regulations governing the appeal process are 115 CMR 6.30-6.34 and 801 CMR 1.01-1.04.

Sincerely,

Gerald J. Morrissey, Jr.
Commissioner

Cc: Marcia Hudgins, Hearing Officer
    Gail Gillespie, Regional Director
    Marianne Meacham, General Counsel
    Susanna Chan, Regional Eligibility Manager
    George M. Casey, Assistant General Counsel

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF MENTAL RETARDATION

### In Re: ISP Appeal of Gena Gear

This decision is issued pursuant to the regulations of the Department of Mental Retardation (DMR) (115CMR 6.30 - 6.34) and M.G.L. Chapter 30A. A hearing was held on November 10, 2003 at the Department's Metro Boston Satellite Area Office in Hyde Park, Massachusetts. Those present for all or part of the proceedings were:

| | |
|---|---|
| William F. Gear | Father and Co-Guardian of Gena Gear |
| Joan F. Katz | DMR Area Director, Middlesex West Area |
| Deborah Butkiewicz | DMR Service Coordinator Supervisor |
| Roberta Lewonis | DMR Community Systems Director |
| Jerome B. Tichner | Attorney for the Appellant |
| George M. Casey | Attorney for DMR |

The evidence consists of documents submitted by the Appellant numbered A1-4, documents submitted by DMR numbered D1-2 and approximately five hours of oral testimony.

## ISSUE PRESENTED

Whether the June 2002 Individual Support Plan (ISP) is being implemented.

## SUMMARY OF THE EVIDENCE PRESENTED

1. The Appellant has been deemed eligible for DMR services. She is a Ricci Class Member. She currently resides in a single family home in Roslindale owned by the Polus Center, a DMR vendor. The Shriver Center, another DMR vendor provides support. She does not attend a day program. (A-2, testimony of William F. Gear)

2. Her father, William F. Gear and her aunt, Barbara Santella are the Appellant's Co-Guardians. (Testimony of William F. Gear)

3. An ISP was developed for the Appellant in June of 2002 with the participation of the Appellant's father. He approved the ISP and was anxious to see it implemented. He continues to want the 2002 ISP implemented. (A-2 and Testimony of William Gear)

4. There are "Individualized Goals" set out in the ISP. The goals in part state that the Appellant will be transitioned to a shared living arrangement and that she will have meaningful activity during the daytime hours in an individualized setting without others who are disabled. It also states that the Appellant will have professional assessments from a urologist and a behaviorist. (A-2)

5. The ISP set out a number of goals including: *Gina will live with paid supports in a more rural setting.* (A-2)

6. The "Strategies" for implementing this goal were as follows:

    a. The Shriver Center and DMR were to develop a budget adequate to support the implementation of this ISP.
    b. The Shriver Center was to develop a "shared living model".
    c. The Shriver Center was to look for property within Region V with the assistance of Anne Lane.
    d. The Shriver was to recruit, hire and train live-in and other support staff.
    e. The Shriver was to acquire a vehicle for the Appellant.
    f. The current and future staff were to continue to develop and identify meaningful day activities for the Appellant. (A-2)

7. Although DMR and the Shriver Center made a number of attempts to implement the ISP, none of the tasks outlined above have been completed. The Appellant has not moved to a shared living arrangement in a rural setting nor does she have meaningful daytime activity or the use of a car. (Testimony of William Gear, Deborah Butkiewicz and Joan Katz)

8. One of the reasons the ISP has not been implemented is due to DMR's inability to pay for the services. (A-1)

9. Joan Katz testified that while the vision of the 2002 ISP was to provide the Appellant with a "shared living arrangement", the implementation section of the ISP required that a budget be developed to carry out this vision. She also explained that as part of that budget development DMR applied for Medicaid funding for Personal Care Assistants (PCAs). This funding was denied on several occasions. (Testimony of Joan Katz)

10. Ms. Katz testified that despite the vision expressed in the 2002 ISP, DMR had very little clinical information concerning the Appellant. Neither the Shriver Center nor the Polus Center provided DMR with adequate clinical information. (Testimony of Joan Katz)

11. The Appellant was evaluated on August 11, 2003 by John J Julian, M.D., a psychiatrist employed by the Massachusetts General Hospital and McLean Hospital. One of Dr. Julian's recommendations was that the Appellant establish a relationship with a behavioral psychologist experienced with individuals with trauma history. He suggested

that this individual develop an on-going treatment and consultative relationship with whatever caretakers were put in place. (D-1)

12. Deborah Butkiewicz testified that when discussions began in May of 2002 concerning the Appellant's ISP she did not feel that DMH had enough clinical information. Although she agreed with the ISP at the time it was written, Ms Butkiewicz explained that after meeting with the Appellant and obtaining a more complete clinical picture, she came to the conclusion that more staffing would be necessary than was contemplated in the 2002 ISP. In order to implement a behavior component, the residential component should have a higher staff ratio than a shared living model would provide. Higher staffing would also be necessary if the Appellant were to have meaningful daytime activities in the community. She also believed that it would be beneficial to the Appellant to spend more time with peers. (Testimony of Deborah Butkiewicz)

13. On cross-examination, Ms Butkiewicz explained that budgets for services contemplated in an ISP can be amended. Monies can be added and subtracted. She indicated that the focus of the 2002 ISP meetings was the budget. DMR was attempting to use Section 8 Housing funds and Medicaid funding for PCAs to implement the ISP. (Testimony of Deborah Butkiewicz)

## FINDINGS AND CONCLUSIONS

On the basis of the evidence before me, I find that Department failed to implement the Appellant's 2002 ISP. As a Ricci Class Member, the Appellant has Special Eligibility. (115 CMR 6.04) Such Special Eligibility provides for priority for services. Unlike other individuals who are eligible for DMR services, individuals with Special Eligibility are to receive assessments, planning and the development and implementation of ISPs without regard to the availability of resources. [115 CMR 6.07 (1)] While there appear to be a number of reasons for the failure of the Department to implement this ISP, I find that the primary reason was budgetary. DMR assumed that funds would be available that did not materialize.

That being said, I find that the most recent clinical information indicates that the Appellant may benefit from behavioral treatment to be determined by a behavioral psychologist and thereafter implemented by her caretakers. Such a behavioral program may necessitate a higher staff ratio than provided in a shared living model. Therefore I f find that with the additional clinical information now available, the Appellant's ISP should be reviewed and revised in accordance with 115 CMR 6.20 so as to provide her with humane and adequate care and treatment and the opportunity to live and receive services in the least restrictive and most typical setting possible as well as the opportunity to engage in activities and styles of living which encourage and maintain the integration of the individual in the community through individualized social and physical environments. The parties should reconvene an ISP meeting. A revised ISP should then

be developed in accordance with Dr. Julian's recommendations. Further evaluations should take place as needed. Once the ISP is developed it should be implemented. Resources must be used in a fiscally responsible manner to implement the ISP. All of the parties should work together to ensure that the assessments, planning and development and implementation of the revised ISP proceed in a timely fashion.

The Appellant's father has envisioned a life-style for his daughter that he believes would best meet her needs. This lifestyle is laid out in the 2002 ISP. While his love and concern for his daughter are evident, all current clinical information relating to her treatment must be considered and factored into a plan to be implemented by DMR and their service provider network. As a Ricci Class Member, implementation of the Appellant's ISP should not be subject to the availability of resources; however, all services must be clinically appropriate and implemented in a fiscally responsible manner. The Department's regulations state that ISPs should be reviewed on a yearly basis or sooner if necessary and updated as needed based on new information. The ISP must always reflect the needs and desires of the individual and must be based on the most current information available to the parties.

## APPEAL

Any person aggrieved by a final decision of the Department may appeal to the Superior Court in accordance with M.G.L. c.30A [115 CMR 6.34 (5)].

Date _December 9, 2003_

Marcia A. Hudgins
Hearing Officer