*Recd 2-9-05*

*72-469*

February 8, 2005

William F. Gear
109 Neponset Ave.
Roslindale, MA. 02131
billyzone@aol.com

Gerald J. Morrissey, Jr.
Commissioner DMR
500 Harrison Avenue
Boston, MA 02118

Dear Commissioner Morrissey;

This letter is written in response to your letter to me dated February 2, 2005. My response will be organized in the following manner. First, I will attempt to point out those statements/assertions in your recent letter that are inaccurate, with some attempt to provide clarification of these inaccuracies. I understand that your letter was based upon the inputs you received from various of your subordinates, and that these inaccurate statements were made in good faith by you. I hope you are open to the possibility that some of the information you have received is distorted by an understandable degree of "spin control" by those in your organization.

Second, I will address misstatements and misrepresentations offered by Attorney Meacham at the January 20 Court session before the Honorable Judge Joseph Tauro.

Third, I will offer a concise framework within which your stated goal of a partnership with Gena's family for the benefit of Gena will be most likely to succeed.

Finally, I will call your attention to serious matters I addressed in my December 31, 2004 and January 20, 2005 letters that you have not yet responded to.

## Inaccurate statements in your February 2, 2005 letter

In January 2004, I was informed that Mark Sanderson had been assigned to oversee the process of modifying the 2002 ISP that had been signed by the DMR Area Director and which I appealed, on the basis of the fact that it was not implemented by DMR from June of 2002 through November 2003. The Hearing Officer found for the appellant and instructed DMR to review the clinical content of the 2002 ISP, modifying it to include the clinical recommendations of Dr. John Julian. In the year that followed, I was asked to

1

reconsider a group home, to remove myself from my daughter's residence, to accept a number of undesirable geographic relocations at odds with the 2002 ISP, to accept the removal of the transportation resources offered in the 2002 ISP, and to accept a vendor for residential services in advance of the completion of a mutually acceptable modification of the 2002 ISP. Additionally, a regular family vacation experience was challenged by DMR as illegitimate despite its inclusion as a desirable component of the 2002 ISP. Many other new items were insisted upon by DMR and Dr. Julian's recommendations were both ignored and misstated in this modification process. Many key meetings occurred and decisions were made without my knowledge or participation. I asked that the normal process as described in the regulations be followed and that a service coordinator previously identified by Mr. Sanderson be asked to do a line by line review and modification with me. Mr. Sanderson decided to assign Gena back into the jurisdiction of Region VI and Ms. Gillespie and announced that the latest draft modification by Mr. Sanderson either be accepted by me as the new 2004 ISP, or that I signal my intention to exercise appeal rights. The appeal of the 2002 ISP, the findings of the hearing officer and my wishes in many areas of service and support design for Gena were swept aside. I submitted the appeal, under procedural protest. I sent this notice of appeal to Ms. Gillespie by certified mail, receipt requested. My letter was refused by Ms. Gillespie and/or by her office staff on three separate occasions.

When Ms. Gillespie stated that she would conduct the informal conference, I requested an ombudsperson, again citing objections to a re-initiation of the appeal process that I believe we had already won. You have since appointed an ombudsperson. I believe that the 2002 ISP appeal is still unfinished and that the 2004 ISP appeal is illegitimate under DMR regulations.

The hearing officer stated that budgetary concerns were the primary reason the 2002 ISP was never implemented, a concern for which there exist extraordinary safeguards for Ricci Class clients.

### Inaccuracies by Attorney Meacham before Judge Tauro on January 20, 2005

Your letter states that Gena's needs should be met in a manner consistent with Dr. Julian's clinical recommendations. In Judge Tauro's court on January 20, Attorney Meacham, speaking for the Department, stated that Dr. Julian performed an evaluation of Gena and that he addressed her needs for a day program. This is false, as a reading of Dr. Julian's report demonstrates. Additionally, Attorney Meacham described Gena's current living situation as one of isolation. This is false. Attorney Meacham also stated that I prevent Gena from receiving services. This statement is also false. It is my right and my responsibility to request appropriate services that will keep Gena safe from the abuse she had suffered previously in DMR sponsored and licensed programs. I am not required to alter the substance of her 2002 ISP to force Gena into a false fit with a vendor or a program dictated by the DMR. Attorney Meacham's mischaracterization has the effect of reducing the credibility of her guardian while providing a false halo for the DMR.

Throughout the past seven years DMR has devoted much creative energy to attempting to demonize her family, while denying the facts of her past abuse in DMR programs, despite

2

volumes of investigative documentation that substantiated this past abuse. Gena is not isolated. She enjoys friendships with unpaid persons, she attends family gatherings when transportation is available, and she has suffered mostly from periodic withdrawals of staff support by DMR, as well as a consistent refusal by DMR to provide safe and appropriate transportation. DMR has consistently required that I consent to the use of physical restraint to induce Gena to fit into DMR's existing programs. Dr. Julian discusses this question in depth, he relates it to her psychiatric diagnosis of PTSD, and he recommends that its use be reserved only for emergencies. Attending a congregate day program is dangerous for Gena and for her fellows in such a program. I had no choice but to protect her by asking that a more appropriate day schedule be developed. DMR has never offered services consistent with the 2002 ISP and I have never refused such offers of appropriate service. Attorney Meacham, perhaps ill advised by DMR staff, has misrepresented the facts. I believe that Attorney Meacham was misinformed and was speaking in good faith and in reliance upon statements offered by DMR staff.

### A framework within which we could negotiate good services for Gena and closure for DMR and for Gena's guardians

1. DMR should withdraw the so-called 2004 ISP and complete the modification process of the 2002 ISP.

2. You and I should meet for an informal private discussion of this matter. At such a meeting, I will provide you with a concise summary of Gena's treatment by DMR since she left Fernald. If any of my assertions do not seem accurate or credible, I will document their accuracy and the truth of my statements.

3. DMR and Gena's guardian(s) should strictly follow the DMR ISP regulations and both the letter and the spirit of the Ricci Final Order from the Court. As I represent Gena's wishes and we have expressed the wish to live in the Southeast Region, the DMR Service Coordinator previously identified by Mr. Sanderson in the Plymouth Area Office will complete a line by line modification of Gena's 2002 ISP, consistent with the instructions of the hearing officer with respect to clinical matters contained in Dr. Julian's report. Gena does not wish to live in Region VI and our relationship with the Director of Region VI is beyond repair. Ms. Gillespie and her subordinates should play no part in the modification of the 2002 ISP or in its subsequent implementation.

4. DMR should agree that Gena is entitled to prompt implementation of those items in the 2002 ISP that were not contested by DMR in the 2002 appeal process.

5. DMR, when the ISP is complete, should assist me in developing the means to implement the ISP, including our preferred vendor, our preferred manner of living and our preferred location.

3

6. If we can accomplish the above, then Gena will be well served, DMR will have resolved current service deficiencies and DMR will have gone a long way toward reversing the current impression that Gena has experienced difficulty in receiving appropriate services due to systemic deficiencies in the DMR community service system.

I recognize that Gena benefits if the DMR is perceived in the best possible public light, as she depends upon DMR. I sincerely hope that your mind is open to the graceful resolution of this matter.

Sincerely,

William F. Gear, Co-Guardian

c.c. The Honorable Judge Joseph Tauro
Robert Quinan, AAG
Marianne Meacham, General Counsel
Colleen Lutkevich, Executive Director, COFAR
Ms. Barbara Santella, Co-Guardian

4