UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT SIMPSON RICCI, et al.,
    Plaintiffs,

vs.

ROBERT L. OKIN,
et al.,
    Defendants.

CIVIL ACTION
No.   72-0469-T
        74-2768-T
        75-3910-T
        75-5023-T
        75-5210-T

AFFIDAVIT OF MARGARET CHOW-MENZER

I, Margaret Chow-Menzer, do depose and say as follows.

1. I am the Assistant Commissioner for Systems Integration Management (SIM) for the Department of Mental Retardation. I have served in this position for approximately four (4) years. In this position, my responsibilities include managing the information management and reporting systems for the Department of Mental Retardation. I have read the allegations made by Local 509 Union Counsel Katherine D. Shea in the submission from SEIU dated February 14, 2005 and offer the following in response.

2. Data collection and management is a critical function for any large organization; for the Department, reliable, accurate data provides the basis for policy development, as well as internal monitoring of service delivery and quality assurance, external reporting to stakeholders including the Legislature and the

public. The Department strives for transparency regarding its services through the regular publication and dissemination to stakeholders of reports including the DMR Annual Quality Assurance Report, Annual Mortality Report, and "DMR Update," the DMR Annual Report, the Human Services Research Institute (HSRI) Core Indicators Project Report and many others. In addition, the Department has been required to file reports to the Legislature which summarize staffing data regarding service coordinators and workload data.

3. The document attached as Exhibit 9 to the Union's submission is captioned the "Monthly Management Report – March 2003." In general, the monthly management reports which are generated by SIM are "data runs" generated from the Department's main client-based electronic data reporting system, the Consumer Registry System (CRS) at a particular point in time.[1] Since data entry by service coordinators and others is continual into the CRS system, these data runs create a "data snapshot" for that point in time.

4. These data runs are used internally by the Department's senior managers to ensure, among other things, the accuracy and timeliness of ISP data entered into the agency's information management systems, to track the Department's performance in completing ISPs, and to aid the Department in policy development on a wide array of issues by providing data trends and information.

5. The data contained in these reports, which reports are distributed only to senior managers, must be further validated by field staff. For example, we have found instances where an ISP reported as "overdue" ("overdue" means more than 30

---

[1] In the summer and fall of 2004, implementation of changes in statewide information systems resulted in delays in generating some data runs for that period.

2

days past the date which is indicated on CRS for the ISP to be completed) may have in fact occurred but was not captured by the system because there was a technical error in the information system. Additionally, there are instances where an ISP is reported correctly as being past due, but for which there are a number of appropriate reasons why the ISP may be late that are more fully described in paragraph 12. Data is validated through referral to field staff, and follow-through occurs; data corrections are reflected in the next month's report. To generate a report for purposes of external reporting, it is necessary to pick a particular point in time, and conduct thorough data validation.

6. For these reasons, the August 2004 data run referenced in the Union's submission was not a report that has undergone data validation.

7. Despite the limitations of this data, the data runs on the timeliness of ISP completions, do provide helpful "real-time" information to managers, and to the Department.

8. In order to respond to the Union's allegations regarding the August 4, 2004 data run, <u>but subject to the above caveat regarding data validation</u>, attached as Exhibit A is an excerpt from the August 2004 data run relating to ISPs.

9. According to the data "snapshot" for the month ending August 31, 2004, out of a total of 4164 Ricci class members, only 12 of their ISPs were "overdue" by more than 30 days. This represents an approximately 99.7% on time completion rate.

10. Looking at all DMR consumers with ISPs, including Ricci class members, only 97 of the 14,066 individuals with ISPs had ISPs that were "overdue" by more than 30 days. This represents an approximately 99.3% on time completion rate.

11. From experience, we have found that the number of overdue ISPs identified is reduced through data validation.  If data entry is done incorrectly, such as an incorrect date, incomplete information or the wrong year, the information generated would be incorrect. This is why it is imperative that managers have the opportunity after each monthly data run to verify these numbers.

12. There are other reasons why an ISP may be late.  The individual's participation in his/her ISP is of utmost importance.  The Department will accommodate the wish of the individual to attend at all possible times.  The same is done with encouraging family and guardian participation whenever possible.  Therefore, if the family member or guardian of the individual we serve, or the individual themselves, cannot appear at a meeting, the meeting may be rescheduled.  This could be due to weather, transportation, travel problems or illness, such as hospitalization of the individual or unavailability of family within the prescribed timeframe.  Many guardians of the individuals we serve are elderly and we want to accommodate them as much as possible.

13. Thus, in addition to the data entry corrections that are required to be made through data validation, there are acceptable reasons that ISPs may be conducted outside the timeframe indicated on CRS.

Signed under the pains and penalties of perjury this 8th day of March, 2005.

                                           S/Margaret Chow Menzer
                                          Margaret Chow-Menzer