## Copeland, Glenn & Associates, Inc.
Program and Financial Planning for State Human Service Agencies

1926 Pleasant Ave., So., #110
Minneapolis, MN 55403
(612) 870-4353
Fax: (612) 374-1603

# CURRICULUM VITAE

**LINDA GLENN**

3201 East Eva Street
Phoenix, Arizona 85028
Phone: (602) 996-7182
FAX: (602) 494-0805

2509 East Fillmore Street
Phoenix, Arizona 95008
Phone: (602) 220-0276
FAX: (602) 220-0278

**Current Positions:**

Partner
Copeland, Glenn & Associates, Inc.
1926 Pleasant Avenue South, Suite 110
Minneapolis, Minnesota 55403
Phone: (612) 870--4353
FAX: (612) 374-1603

Senior Project Manager, Mental Health
Institute for Human Services Management
7307 MacArthur Boulevard
Bethesda, Maryland 20816
Phone: (301) 229-9455
FAX: (301) 229-0380

Court Monitor
*Arnold et al v. Arizona Department of Health Services, et al*
Superior Court of Maricopa County
2509 East Fillmore Street
Phoenix, Arizona 85008
Phone: (602) 220-0276
FAX: (602) 220-0278

Court Monitor
*Johnson et al., v. Bradley, et al.*
United States District Court, Middle District, Florida
Tampa, Florida
(Office in Arizona)
Phone: (602) 220-0276
FAX: (602) 220-0278

Ongoing Consultant
Department of Health,
Division of Developmental Disabilities
State of New Mexico
1190 St. Francis Drive
P.O. Box 25110
Santa Fe, NM 87502-6110
Phone: (505) 827-2574

Ongoing Consultant in Program Design and Human Service Financing for:
Center for Study of Social Policy, Washington, D.C.
Robert Wood Johnson Foundation, Princeton, New Jersey
Children and Adolescent Service System Project, National Institute of Mental Health, Washington D.C. and Casey Foundation, Greenwich, Connecticut

**Educational Background:**

B.S. in Education, University of Mississippi, Oxford, Mississippi (1968)
M.A. in Special Education for the Mentally Retarded, University of Mississippi, Oxford, Mississippi (1969). Ph.D. Candidate, Education Administration and Business Administration, University of Kansas, Lawrence, Kansas

**Training Experience:**

September, 1968 to May, 1969 – Training in Research and Program Development under Dr. James Mann, Chairperson, Department of Special Education, University of Mississippi.

May, 1969 to September, 1969 – Training in Research, Program Development and Program Evaluation under Dr. Wolf Wolfensberger, Mental Retardation Research Scientist, Nebraska Psychiatric Institute, Nebraska.

1972 – Training in Precise Behavioral Management and Precise Administration under Dr. Ogden Lindsley and Behavior Research Company, Kansas City, Kansas.

1980 – Harvard School of Business, Management Program for Executives in State Government.

**Current Positions:**

1986 - Present:     Partner, Copeland, Glenn & Associates, Inc.

                    Program and Financial Planning for State Human Service
                    Agencies. Work with state governments on problems of

financing and reorganizing to capture large amounts of Federal revenue to provide incentives to reform large human service systems. Project managed the conversion of Community Mental Health, Mental Retardation, Substance Abuse and Long-term Care Services to Title XIX (Medicaid) funding in West Virginia. West Virginia will receive an additional $30 million annually as a result of the Copeland Project.

In North Carolina, the Copeland review to maximize federal reimbursement in Area Mental Retardation, Mental Health, and Substance Abuse programs provided the basis for major restructuring of eligibility, expanded use of Medicaid IV-E, and IV-A and resulted in an increased use of Disproportionate Share generated by the hospitals.

In process (beginning April 94) is the management of a multi-year project in Delaware to both maximize revenue (MA, IV-E, IV-A and SSI) and to establish a department-wide Managed Care program for Medicaid children in need of mental health services throughout the Department of Services for Children, Youth and Their Families.

Completed the analysis of other states' conversion of state and closed-end funding for conversion to unique methods of utilizing Medicaid financing, including the expansion for the use of these funds into the child welfare arena.

| | |
|---|---|
| 1988 - Present: | Senior Project Manager, Institute for Human Services Management. |

Planning and implementation projects in 20 different program policy in children's services, mental health, education and child welfare state systems. Through IHSM work with Georgetown University, eight national workshops have been held to assist in financing in all states.

| | |
|---|---|
| May 1990 - Present: | Court-Appointed Monitor for *Arnold v. Sarn*. |

State Superior Court-appointed monitor, responsible for overseeing the State of Arizona's implementation and compliance of a large class action case on behalf of the indigent mentally ill in Maricopa County, Arizona.

| | |
|---|---|
| August 1993 - Present: | Consultant to the Department of Health, Division of Developmental Disabilities, State of New Mexico. |

Under my contract, in addition to planning and technical assistance, annual program audits are undertaken statewide

|  |  |
|---|---|
|  | each year to become the basis for a full internal QA program. Working for Developmental Disabilities Division, I have been assisting the State in system changes needed to come into compliance with *Jackson v. Ft. Stanton*. |
| Aug. 1989 - Present: | Court Monitor, *Johnson v. Bradley*. |
|  | Federal court appointed monitor, responsible for overseeing the State of Florida's implementation of a large class action case on behalf of the mentally ill. |

**Past Experience:**

| | |
|---|---|
| Oct. 1982 - 1993: | Special Consultant to the Special Master's Office In *NYSARC v. Carey* (Willowbrook case), Eastern district of New York, Federal District Court. |
| | After serving on the Court-appointed Review Panel from 1974 to 1980, I agreed to continue working to assist to bring closure to this case with a newly appointed Special Master. |
| | In this position, along with many other activities, coordinated the negotiations between the State of New York and the Master's Office. This case was finally completed in 1993 with an agreed-to Permanent Injunction. |
| 1982 - 1986: | Chairman of the Board, Community Assistance Corporation (CAC). |
| | CAC was a national human services development corporation that operated community residential and day programs for the most severely retarded and mentally ill individuals in Massachusetts, Florida, California, Ohio, the district of Columbia and Louisiana. Local programs of CAC served approximately 500 clients in small community-based residential programs in communities where no other provider existed for the most severely handicapped with accompanying behavioral or dual diagnosed (MR and MH) problems. CAC had as its purpose developing services in any state where current providers were not able to provide services to the more severely handicapped until such time as other local providers are willing to assume these services. Local providers have now assumed the operation of these services in each state. |
| Dec. 1980 - Sep. 1982: | Associate Commissioner, Department of Mental Health, Commonwealth of Massachusetts. |

|||
|---|---|
| | In this position, Glenn had all operational responsibility for the Department of Mental Health which provided services for over 400,000 Mentally Ill, Mentally Retarded and Chemically Dependent individuals in 10 state institutions, three regional centers and through the direct operation of seven regional and 40 area offices, which contracted with over 300 community mental health centers, partnership clinics and community providers of service. Was responsible for an annual budget of approximately $500 million. |
| Mar. 1976 - Dec. 1980: | Assistant Commissioner for Mental Retardation, Massachusetts Department of Mental Health. |
| | Responsible for mental retardation services for the State of Massachusetts, within the State Department of Mental Health. The Department of Mental Health was responsible for approximately 20,000 mentally retarded individuals in eight state facilities and through contracting and monitoring of approximately 700 contracts with over 200 providers of community services in 40 catchment areas of the state DMH system. Major accomplishments under my direction while in this position included the resolution of five large class action cases in federal court, a ten-fold increase in residential and day training and support services in the community while decreasing the use of institutional beds by over one-third; implementation of the first statewide case management, licensing and evaluation systems; establishing and maintaining Title XIX compliance in the institutions; and massively increasing the available federal financing in the community. Under my directorship the budget for mental retardation services increased from $69 million in 1976 to almost $300 million in 1982. |
| Mar. 1974 - Mar. 1976: | Executive Director, Eastern Nebraska Community Office of Retardation (ENCOR). |
| | Five county community-based service systems for the mentally retarded providing education, vocation, family resources and residential services to approximately 1400 clients throughout Eastern Nebraska. ENCOR employed at that time approximately 500 staff in 130 different locations providing a complete range of community-based services with the goal of retraining every mentally retarded person to his/her home community and the provision of a continuum of services for each person to move through to independence. |
| May 1973 - Feb. 1974 | Director, Kansas University Affiliated Facility, Technical Assistance Director (while completing Ph.D.). |

|  |  |
|---|---|
|  | Major responsibility for technical assistance component of U.A.F. Systems Technology under James Budde. |
| Jul. 1972 - May 1973 | Diffuser, Research and Development Project, Education Administration, University of Kansas (while completing Ph.D.). Project Director, Dr. Ogden Lindsey. |
|  | Responsibilities included working with central office administrators in local school districts in Kansas and the Kansas State Department of Education, assisting them in learning and utilizing new R and D tools and techniques (e.g., PERT, CPM, PPBS, Systems Analysis, Administrative Charting, Facilities Planning, Budget Projections, Future Forecasting, Delphi Techniques, Cost-Benefit and Cost-Effectiveness Analysis, etc.) to solve school district problems. |
| Jul. 1970 - Jul. 1972: | Director of Research and Planning, Eastern Nebraska Community Office of Retardation, 885 - 72nd Street, Omaha, Nebraska 68114 |
|  | Kept abreast of all sources of financing services for the retarded through the federal, state and local governments, private foundations, and wrote all grant applications to the appropriate agencies. Provided liaison services between county, state and federal agencies, as well as non-profit groups to insure community agencies' involvement in operation improvement. Gained legal clarification and interpretation of laws. Provided research and assistance in program planning and needed legislation. Served as resource person to state senators and the OMR Director. Provided up-to-date planning and implementing new programs, as well as the implementation of new sources of financing. |
| Sep. 1969 - Jul. 1970: | Director of Research and Planning, Greater Omaha Association for Retarded Citizens, 140 South 40th Street, Omaha, Nebraska 69131 |
|  | Responsibilities included investigating and developing new concepts; collection, synthesizing, interpretation and dissemination of relevant knowledge for effecting program growth and improvement and for program planning, implementation and evaluation. Resource person on all available funding and current legislation. |
| May 1969 - Sep. 1969: | Research Assistant under Dr. Wolf Wolfensberger. |
|  | During this period, I was on a Federal stipend to work seven weeks under Dr. Wolfensberger as his research assistant, |

remaining thereafter to coordinate the SWEAT program and to continue with him, assisting in Human Management Research, the development of a review mechanism for the funding of service project proposals for the State Department of Mental Retardation

**Consultant Positions:**

Between 1969 and the current time I have been utilized as a consultant in 30 states to provide assistance in the utilization federal financing through Titles IV-A, XVI, XX and Title XIX; system design and program evaluation, especially program development for long-term institutionalized, severely handicapped; the design of funding allocation systems for state agencies; planning for the phase-out of large institutions and the establishment of replacement community programs; as well as many direct evaluations of systems of services for state agencies and statewide training workshops. Lists of these consulting activities are available upon request.

Current ongoing consultant positions include:

> The Robert Wood Johnson Foundation, working with each of their long-term grantees in mental health to develop long range financing and program design strategies:
>
> NIMH, CASSP, in working with all states' mental health agencies in program planning and financing;
>
> Center for Study on Social Policy, working with states that receive Clark and Casey Foundation grants in developing program designs which maximize federal reimbursement to the state. Special projects have included Kentucky, Maryland, Philadelphia, Georgia and Tennessee.

**Involvement in Litigation Concerned with the Establishment of Legal Rights for the Mentally Disabled and the Improvement of Human Services:**

Expert witness in *Wyatt v. Stickney*. (Alabama Federal District, March 1972.) Landmark case concerning 'right to treatment' in Alabama's institutions. My testimony on two different occasions concerned alternatives to institutional care for the mentally retarded and cost-effectiveness rationale of community-based treatment.

Expert witness in the "Willowbrook Case," 1972 (New York Federal District Court) concerning the "right to treatment". I was called in by the New York Civil Liberties Union to study conditions at Willowbrook State School (5,000 residents) and to study the service delivery system for mental retardation services in the City of New York. My function was to make recommendations on the decentralization

of Willowbrook and on more effective delivery system models for community-based services in New York City.

Expert witness in *Welsh v. Likins*, Minnesota "right to treatment" trial against Cambridge State Hospital. Testimony given regarding community alternatives to institutionalization and an evaluation of the Cambridge State Hospital.

Expert witness in *New York State Association for Retarded Children Inc. v. Nelson Rockefeller*, (September, 1974). Post-judgment proceedings of the 1972 "Willowbrook Case" (New York Federal District Court) concerning "right to treatment." Testimony as an expert witness in this trial centered on "protection from harm" issues, evaluation of community facilities developed to aid in deinstitutionalization as ordered in relief granted in initial trial and a total re-evaluation of Willowbrook with recommendations on the types of community programs needed.

Re-evaluation of Partlow and community services in Alabama (1975 and 1976) established as a result of *Wyatt v. Stickney*, at the request of the Mental Health Law Project, the Partlow Human and Legal Rights Committee established under Judge Johnson, and the United States Justice Department. In 1978 review and testimony given in the Partlow retrial.

Expert witness in *Doe v. Hudspeth* (current) for the Children's Defense Fund. "Right to treatment" litigation against Central Mississippi Retardation Center.

Expert witness in *Gary w. et al., and United States v. Stewart, et al.*, (1976) for the United States. My participation in this lawsuit against the State of Louisiana and 38 private institutions in Texas involved the evaluation of services received by Louisiana residents in eight private Texas facilities serving both mentally retarded and the emotionally disturbed and testimony in March 1976 in the New Orleans trial before the Honorable Judge Rubin.

Review Panel member for the Consent Judgment in *New York State Association for Retarded Citizens v. Carey*. As a panel member, testimony was given in several evidentiary hearings in this ongoing controversy over compliance.

Expert witness in *Evans and United States v. Washington D.C.*, "right to treatment" litigation against Forest Haven. This work resulted in not only the initial review and report, but later review and testimony on the adequacy of the District of Columbia's plan.

Expert witness in *Halderman and United States v. Pennhurst* on evaluation of community alternatives.

Expert witness in *Maratti Wuori et al., v George Zitnay, et al.*, to evaluate alternative placement facilities utilized by Pineland State School. I was later requested in 1981 to re-review the status of the State of Maine's implementation status of the Consent Decrees.

Expert witness in *KARC v State of Kentucky*. My role was to evaluate the Exception Outwood Facility and the community system and to report and testify on my findings.

Expert witness in a State Education case against Hunterton State School in New Jersey.

Expert witness and ongoing plaintiffs consultant in Federal Class Action case *Lelsz* against the State of Texas regarding three state institutions (Fort Work, Denton and Austin). My testimony was in support of the settlement agreement proposed to the Court between the Plaintiffs and the State of Texas.

Expert witness (1987) in *Thomas S.*, a class action in Federal District Court of North Carolina, involving the rights of mentally retarded and dual diagnosed individuals in North Carolina psychiatric facilities. Through this litigation I evaluated the services and needs of approximately 400 institutionalized class members and testified to their alternative service delivery needs. In follow-up affidavits, I presented fiscal analyses to show how the state could find the necessary alternative services through existing federal programs.

Expert Witness (1988) in the Philadelphia *Police and Fire Association v. The City of Philadelphia and the Commonwealth of Pennsylvania*. In this case, which involved the reduction of funding and community services to clients living with their natural families, testimony was given relating to the harm that would result in such reduction of service and to alternative sources of funding which would enable the state to maintain and expand services to these and other un-served persons in the community.

Plaintiffs' expert and Court-Appointed Monitor in *Johnson v. Bradley* (1989 - Present). Class action case involving the right of the mentally ill in the State of Florida. Ongoing oversight for the implementation of a broad settlement agreement concerning both condition at G. Pierce Wood Memorial Hospital and the development of comprehensive community services for the mentally ill in Florida.

*Dixon* – St. Elizabeth Hospital, Washington D.C.; consultant to Mental Health Law Project on financing alternatives to meet compliance with the provisions of the 1992-93 court case.

*Jackson* – New Mexico Mental Retardation class action litigation. Consultant for state regarding compliance, 1993.

**Publications:**

Wolfensberger, W. and Glenn, L., <u>A Proposed Review Mechanism for Funding of Service Project Proposals under Nebraska's Community Mental Retardation Act</u>

of 1969, Lincoln, Nebraska, Office of Mental Retardation, Department of Public Institutions, 1969.

Glenn, Linda L., The Retarded Offenders - From Reconditeness to Reconciliation, Omaha, Nebraska: Greater Omaha Association for Retarded Children, 1970.

Wolfensberger, W and Glenn, L., Program Analysis of Service System (PASS). Canadian National Institute of Mental Retardation, 1973, 1 vol.

Glenn, Linda L., " The Principle of the Least Restrictive Alternative: Implications of Normalization and Community Alternative to Institutionalization", in the President's Committee of Mental Retardation. The Mentally Retarded and the Law. 1976.

Wolfensberger, W., and Glenn, L., Program Analysis of Service Systems – A Quantitative Evaluation of Human Services. Third revised edition (2 vols). Canadian National Institute of Mental Retardation (1975).

Glenn, Linda L., "An Application of Linear Programming to Reciprocal Cost Allocation Problems in Large Human Management Service Agencies", 1974 University of Kansas Business School.

Innumerable documents, evaluation tools, plans and reports were developed during my positions in Massachusetts. All are available upon request.

Program manuals, reports, fiscal analyses, and documents related to organization and financing of community services prepared through work with Copeland, Glenn & Associates, IHSM, and the Center for the Study of Social Policy available upon request.

Documents, court reports and program audits carried out in conjunction with my positions as Court Appointed Monitor in *Johnson v. Bradley* and *Arnold v. Sarn* are available upon requests.