THOMAS J. FRAIN
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740
TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

FILED
IN CLERKS OFFICE

2005 MAR -8  P 12: 52

U.S. DISTRICT COURT
DISTRICT OF MASS

Thomas J. Frain, Esq.
Julie A. Warshafsky, Esq.
Francisco C. Melon, Esq.

March 7, 2005

<u>VIA FEDEX AIRBILL NO. 8499 7871 3747</u>

The Honorable Judge Joseph Tauro
United States District Court
District of Massachusetts
One Courthouse Way, Suite 2300
Boston, MA 02110

      Re: <u>Ricci, et al. v. Okin, et al.,</u>
           <u>Civil Action Nos. 72-0469-T, 74-2768-T, 75-3910-T, 75-5023-T, and 75-5210-T</u>

Dear Judge Tauro:

    This office represents the Massachusetts Coalition of Families and Advocates for the Retarded, Inc. ("COFAR"). This letter is in response to your order, dated February 22, 2005, in which you asked the parties to file comments with the Court concerning a letter submitted on behalf of the Service Employees International Union, Local 509 ("SEIU") by its attorney, Katherine D. Shea.

    COFAR would like to register its strong concern in response to the information presented by the SEIU that Service Coordinators' caseloads have grown to unprecedented levels and that the timeliness of completion of annual ISP reviews has declined. COFAR is concerned that these growing Service Coordinator caseload levels may be a direct cause of the lack of timeliness of ISP review completion. As the SEIU letter noted, Service Coordinators have the primary responsibility to assess clients' needs for services and to develop, coordinate, review, evaluate and monitor clients' ISPs. The ISPs are an integral component of the delivery of care to the mentally retarded, as evidenced by the Court's May 25, 1993 Order, which required the Defendants to provide continuing services to meet the needs set forth in each class member's ISP (May 25, 1993 Order, Section 2).

    Despite the critical nature of the work they do, the Service Coordinator line item in the DMR budget has been repeatedly frozen or cut in recent years, resulting in what COFAR believes has been a decline in the numbers of Service Coordinator positions in Massachusetts. COFAR believes these mounting caseloads have resulted in part from the decline in those Service Coordinator positions. In contrast, the DMR population has increased from approximately 21,000 clients in 1993 to approximately 33,000 today. COFAR also believes the situation is potentially dangerous, particularly in light of the decision to close the Fernald

THOMAS J. FRAIN
ATTORNEY AT LAW

The Honorable Judge Joseph Tauro
March 7, 2005
Page 2

Developmental Center and possibly other facilities and to relocate hundreds of severely and profoundly retarded residents into the community-based system.

The job of a Service Coordinator is much more complicated in the community system than in a state facility because it involves compiling many services (e.g., medical, nursing, residential and day programs) together from many different sources and places, which are no longer all located together on one site (as is the case at Fernald and the other Intermediate Care Facilities for the Mentally Retarded). It would seem that in such a decentralized system, DMR would need more Service Coordinators with smaller caseloads, not less. Also, as pointed out in Attorney Shea's letter, the job of a Service Coordinator has become more complicated and the workload demands per case have become greater, not less (page 4).

COFAR has also recently learned that DMR is imposing a new and massive data systems overhaul throughout the agency. This will add further new duties of monthly case notes and detailed billing requirements to the job of the Service Coordinator. COFAR is concerned that DMR is moving this job further away from critical direct monitoring and oversight of client situations and ISPs. Increasing the number of Service Coordinator jobs is the only way to improve the conditions discussed in Attorney Shea's letter.

Given that *Ricci* class members are given priority in obtaining services because of that class entitlement, COFAR is concerned about what these mounting Service Coordinator caseloads mean for those who have no such entitlements. COFAR is concerned that this may lead to a two-tiered system of care in Massachusetts. Evidence of this already exists in two lawsuits filed by other parties against DMR (*Boulet et al. v Cellucci,* and *Rolland et al. v. Cellucci*).

COFAR is further troubled that that SEIU has not been not been able to obtain accurate data from DMR (page 3 of Attorney Shea's letter) regarding caseloads and the completion of ISP reviews, even though the SEIU submitted freedom of information and public records requests to DMR for this information. We are also concerned that DMR has not been required to submit caseload information to the Legislature (page 2 of Attorney Shea's letter).

COFAR requests that DMR be ordered to provide comprehensive information not only on Service Coordinator caseloads, but on the numbers of Service Coordinator positions themselves and how they have been affected by budget freezes and reductions and DMR population growth in recent years. It might be further useful to all parties to have DMR project future population increases and identify where these clients will come from over the next 3 years. How does DMR expect to meet this responsibility?

COFAR fully supports the SEIU in its request that this Honorable Court require the Defendants to demonstrate that it has retained sufficient numbers of Service Coordinators to

THOMAS J. FRAIN
ATTORNEY AT LAW

The Honorable Judge Joseph Tauro
March 7, 2005
Page 3

ensure that the needs set forth in each class member's ISP are substantially met and that the ISP process is in compliance with the Court's May 25, 1993 Order.

Respectfully submitted,

Thomas J. Frain, Esq.

TJF/nc

cc:   William J. Burke, Esq.
      Beryl W. Cohen, Esq.
      Margaret M. Pinkham, Esq.
      Lisa C. Goodheart, Esq.
      Robert L. Quinlan, Jr., Esq.
      Marianne Meacham, Esq.
      Bettina Toner, Esq.