UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SIMPSON RICCI, et al.,<br>　　Plaintiffs,<br><br>　　　vs.<br><br>ROBERT L. OKIN,<br>et al.,<br>　　Defendants. | CIVIL ACTION<br>No.　72-0469-T<br>　　　74-2768-T<br>　　　75-3910-T<br>　　　75-5023-T<br>　　　75-5210-T |

Department of Mental Retardation's Motion for
<u>Entry of Order for the Protection of Confidential Material</u>

<u>Introduction</u>

At the Status Conference of January 20, 2005, the Court directed the Department of Mental Retardation ("the Department") to submit an appropriate protective order for approval to the Court to govern the disclosure of the release of two categories of confidential material held by the Department to the Class Counsel for the Fernald Plaintiffs. The first category concerned a list of names and dates for individual Fernald Class members' Individuals Service Plan meetings, as well as the list of guardians for these individuals. For this category of documents, counsel conferred, submitted a Joint Motion for Order for Protection of Confidential Material. The court entered the Order and these documents were provided to Class Counsel for the Fernald plaintiffs on February 22, 2005.

1

The second category of Confidential Material identified in the January 20th hearing was individual support plans ("ISPs"), i.e., documents supporting the certification of 'equal or better" services in the new location. Transcript of Hearing of January 20, 2005, at 31. For this category of documents, the parties held meetings on February 7, 15, March 2, 16, and March 29th. For the reasons discussed below, on March 29, 2005, the parties agreed that they could not agree either on the type of documents to be produced or on whom would be permitted to access these confidential client files. The Department has been and is ready to produce the documents described in the attached [Proposed] Order for Protection of Confidential Material as soon as this Order is approved by the Court, and respectfully requests that the Court enter the proposed Order forthwith.

The Department's position, simply stated, is that under the Court's January 20th Order, the Fernald Class Counsel is entitled to access to the ISP documents for the transferred class members and any certifications of "equal or better."[1] However, Fernald Class Counsel is seeking unfettered access to the individual client records of transferred individuals. Although Class Counsel does not individually represent any of the transferred class members (indeed has repeatedly stated that he does not intend to contact any of these individuals or seek legal authorization to review their entire records), he argues that he should have access to each individual's entire client record, which records unquestionably contain highly sensitive confidential client information. For obvious reasons, outdated individual service plans and assessments which reflect an individual's service needs at from several years prior to transfer are not relevant to whether the

---

[1] In an effort to resolve this matter without further resort to Court, the Department agreed to expand the scope of the document produced to include the ISPs preceding the transfer (up to 2 years prior to the transfer), the post-transfer ISPs, the Individual Transition Plan ("ITP") for all individuals transferred, all transition related documents and necessary informed consents. See Proposed Order for the Protection of Confidential Material, submitted herewith.

2

services provided in a new location since February 23, 2003 are "equal or better." In considering whether to expand Class counsel's access to this confidential material, the Court should consider the lack of relevance of this outdated information to the determination that equal or better services have been provided upon the placement from Fernald to another setting in 2003 through 2005. Fernald Class Counsel's argument that these documents may demonstrate a gradual erosion of the ISP while at Fernald over the last decade is factually unsupported and cannot justify this invasion of privacy.[2]

With regard to the manner of accessing these files, the Court's January 20, 2005 Order, through its colloquy with Class Counsel and Counsel for the Department. established clear parameters for the disclosure. Specifically, in response to concerns about the intrusiveness of the disclosure of confidential records to a third-party, the Court directed that Fernald Class Counsel, and only Class Counsel, should view these records at the Department's offices, and that the records not be copied or removed from the Department's offices. Despite this clear directive, Fernald Class Counsel has insisted that in addition to him, the Class Representatives must have access to the client files, and that he be authorized to copy them. The Department urges the Court to uphold the parameters it established during the January 20th hearing, and stands ready to make these documents available to Class Counsel as provided under its proposed Order.

In addition, the Department makes the following specific arguments regarding what the parties identified in their meeting of March 29th as areas "still in dispute" following a series of discussions about the matters set forth in Paragraph 6 of the Stipulation which the parties entered into in December of 2004.

---

[2] Again, in an attempt to resolve this matter, the Department agreed to provide ISPs from two years prior to the transfer date, but this offer was rejected.

A. <u>Scope of "Confidential Material" Necessary to Review the Provision of "Equal or Better" Services.</u>

At the Status Conference of January 20, 2005, the Court ordered that Class Counsel for the Fernald Class be permitted to view transferred class members' ISPs and (the certification of "equal or better") in order to ascertain whether individuals who have transferred from the Fernald Developmental Center would be receiving equal or better services at the new location as required by the Court's Final Order. See Transcript of January 20, 2005, pg. 31, 36 ln. 7.  Notwithstanding this Order, Class Counsel has demanded access to view the individual's entire client record, some dating back more than thirty years.  These documents, aside from being outdated and thus irrelevant to the determination of "equal or better," go far beyond what this Court ordered on January 20, 2005.  The Department respectfully suggests that Class Counsel's request for additional documentation is overreaching and well beyond the scope of the Court's instructions.[3]

B. <u>The Court Limited the Manner of Access to, and Dissemination of Confidential Client Files.</u>

At the Status Conference of January 20, 2005, the Department expressed serious concern regarding whether this information would be adequately protected from disclosure if access were to extend beyond Class Counsel.  This important issue was resolved by the Court placing certain restrictions on who would view the client files, and whether they would be copied.  With regard to allowing third parties other than Class Counsel to view these client records, the transcript is clear that the only access to these records was to be by Class Counsel:

---

[3] The additional documents requested include progress notes of treating clinicians, Individual Transition Planning staff notes, and complete materials from each individual's client records including confidential medical information, and records maintained by the service coordinator.  Additionally, Class Counsel has requested that "any additional records which he deems necessary to determine equal or better" be included in the definition of confidential information.

4

| | |
|---|---|
| Court: | "Who needs to see it besides you ?" |
| Attorney Cohen: | "I've been doing this case by myself since 1972." |
| Court: | "Yes, so just him." |

Transcript of January 20, 2005, pg. 34 ln. 2.

With regard to the Department's objection to the copying of confidential client records held by the Department, the following colloquy occurred:

Court: "Are you satisfied that you just take a look at these things?"

Attorney Cohen: "Yes, Your Honor."

Transcript of January 20, 2005, pg. 34 ln. 12.

Notwithstanding these clear limitations upon the disclosure of these client records, Fernald Class Counsel has insisted that in addition to himself, the Fernald Class Representatives must be allowed to view the records, and that he must be allowed to copy them and remove them from the Department's possession.

The Department strongly objects to disclosure of the transfer records of these individuals to the Class Representatives. Guardians for these individuals have made the decision to opt for community or facility placement in a highly charged and contentious environment. In some instances, guardians have reported being contacted about the move by individuals opposed to the closure, indicating a breach in privacy has occurred. Under these circumstances, allowing the Class Representatives, also representatives of the Fernald League which is avowedly opposed to the closure, to access individual clients files without an authorization would constitute an unwarranted invasion of privacy, and exceed this Court's order.

5

    C.  <u>Class Counsel For The Fernald Class Objects The Department Of Mental Retardation's Letter Informing Family Members And Guardians Of Fernald Class Members Regarding Class Counsel's Access To Their Confidential Information.</u>

At the Court's Status Conference of January 20, 2005, the Court instructed the Department to make available certain confidential information and personal data of the Fernald Class Members to Class Counsel subject to a protective order. See Subparts A and B above. The Department and Class Counsel thereafter engaged in communications and negotiations pertaining to the protective order and the release of confidential information to Class Counsel which have been ongoing. On February 16, 2005, an Order permitting the disclosure of certain confidential material (ISP dates and guardians' names and addresses) was approved by the Court.

Massachusetts General Laws chapter 66A section 2(k) requires that holders of personal data "maintain procedures to ensure that no personal data are made available in response to a demand for data made by means of compulsory legal process, unless the data subject has been notified of such demand in reasonable time that he may seek to have the process quashed." See M.G.L. c. 66A § 2(k). In accordance with M.G.L. c. 66A § 2(k) the Department mailed the letter described above to Family Members and Guardians of Fernald Class Members notifying them that Class Counsel had been granted access under the Court's instructions of January 20, 2005, to personal data/confidential information of their family members or wards. Pursuant to G.L. c. 66A § 2(k), the letter informed family members and guardians of the procedure to object to Class Counsel's access under the order. This document was sent to Class Counsel for his review on February 9, 2005, and mailed to Fernald class member guardians on February 17, 2005.

Fernald Class Counsel argues that the mailing of this letter in compliance with G.L. c. 66A was contrary to the Court's Order of January 20, 2005. Because M.G.L. c. 66A clearly anticipates circumstances under which a valid court order will still require the disclosure of personal data the Department's actions were in compliance with the Court Order and Massachusetts law.

D. <u>Under the Court's January 20th Order, Placement Planning Meetings For Fernald Class Members Are Permitted to Move Forward With Notice To Counsel.</u>

In response to this Court's directive to separate placement planning discussions from the ISP meeting for individuals at Fernald, the Department met with Fernald Class Counsel and agreed to a special process for class members living at Fernald to *remove* the placement planning objective from individual ISPs so that the ISP team could focus exclusively on the individual's needs *at Fernald*. The Department agreed to conduct separate placement planning meetings outside the ISP meeting; an extraordinary accommodation given that the Department's practice, and federal regulations, require planning to provide services in the least restrictive environment as part of the ISP.

On January 20, 2005, in response to the Department's request for clarification on its practices in between the ISP meeting and the stage of a concrete alternative placement proposal, the Court indicated that these discussions could take place, with notice to counsel:

> Ms. Meacham: And so Your Honor would read the stipulation as allowing the Department to engage families in discussions in this separate placement meeting about where they might want to …
>
> The Court: Yes. But of course, with notice to whomever it is that is representing the family. If he (Attorney Cohen) is representing the family or the Fernald League is representing the family, you let them know. " See Transcript of January 20, 2005 pg. 50.

7

Transcript at pg. 50 ln. 7; pg. 51 ln. 11.

In response to a specific question from Department Counsel regarding how placement meetings could be held and how notice should be given, the Court went so far as to outline the process for the parties.

> The Court: The process is you (the Department) give him the names. He contacts the people. You want us to represent you, me, Cohen or the Fernald League. They say no or they don't sign the letter. Then they don't represent them. And if he does get a letter back saying yes, you represent them (Class Counsel), he sends you (the Department) a copy of that so that you are now on notice that any time you want to have a meeting with this client about where they are going to go, you have to give him notice.

See Transcript at pg. 52, ln. 19.

Further clarifying the issues around the conduct of placement planning meetings, and the need to notify counsel, the Court stated

> Mr. Quinan: The problem, Your Honor, is over many hours of discussion in these settlement meetings the plaintiffs have consistently taken the position that the Department has no ability whatsoever to communicate with families except via letter or in the meeting that is co-lead by counsel for the Fernald League and the Commissioner. We have said we need to have some more informal mechanisms for endeavoring a discussion with members about possible appropriate alternatives.
>
> The Court: No, I don't think you should. I think that is --- is like filing an appearance. I think that once you give him the names and he sends out a letter and offers his services, if the people want his services, then you have got to give him notice that there is going to be a hearing on such and such a day.
>
> Mr. Quinan: No problem.
>
> The Court: And no side ex parte conference.
>
> Mr. Quinan: That's not the issue. The issue is whether we can have the discussions at all.

8

>The Court:  <u>You can have the discussions as long as you notify him.</u>

See Transcript of January 20, 2005 pg. 50, 51 (emphasis supplied).

The Department provided Class Counsel with a list of guardians and family contacts as required by the Court on February 22, 2005.  The Department anticipated that Class Counsel would then mail letters to such guardians identifying the Fernald League or himself as representing the individual or guardian so that notice for these meetings could be provided.  On March 15, 2005, the Department requested that Fernald Class Counsel provide the Department with a list of those individuals represented by Class Counsel so that as it sent out invitation to attend planning meetings with staff, it would simultaneously provide notice to Class Counsel of those individuals who are represented.  Although the Department provided Class Counsel with a list of guardians, and adequate time for Class Counsel to contact said individuals, Fernald Class Counsel has indicated that does not plan to contact these family members or guardians until some future point in time.  The Department intends to plan initial placement planning meetings with families and guardians, and at this point has received no information from Class Counsel indicating that he should be notified of these meetings because he represents these guardians or families.

As the Department moves forward to begin placement planning with individuals -- at a stage prior to the ISP modification meeting, and for the purpose of initiating discussions with families about their geographic preferences, their family members' needs, and so forth -- it will provide notice to Class Counsel where Class Counsel represents the individuals.  The Department does not interpret the Court's remarks of January 20th to indicate that it must notify Class Counsel of all meetings with families

9

whether or not Class counsel represents the family or guardian and in fact would assume that barring information indicating that the individual *is* represented, the Department will move forward without notice.

Notwithstanding the clear directives of the Court, Fernald Class Counsel has indicated that, in his view, placement planning meetings conducted with families which are not ISP meetings but are preliminary discussions about preferences and options violate the Court's order of January 20, 2005. This position is both inconsistent with the Department's understanding of the January 20th Order, See Transcript at 50, 51, above, and would essentially deprive the Department of any reasonable opportunity to plan with families and guardians prior to the identification of a specific alternative placement, and effectively deprive families of the opportunity to participate in the planning process in a meaningful way, at the outset of planning which allows them to express geographic preferences, program type (state-operated, vendor-operated, facility, etc). In other words, such an "all or nothing" approach to planning is inconsistent with "best practices" and with ensuring the best family and individual outcomes.

In addition, Title XIX requirements dictate that the Department plan with families for discharge to the least restrictive setting. See 42 CFR 483.440(b)(4)(ii). Failing to adequately plan, a foreseeable result of this unsupported legal position, would potentially violate Title XIX.

Conclusion

For the foregoing reasons, the Department respectfully requests that the Court enter the attached [Proposed] Order for the Protection of Confidential Material.

>Respectfully submitted,
>DEPARTMENT OF MENTAL RETARDATION,
>
>By its attorney,
>
>THOMAS F. REILLY
>ATTORNEY GENERAL
>
>
>__s/Juliana deHaan Rice_____
>Juliana deHaan Rice, BBO 564918
>Assistant Attorneys General
>Office of the Attorney General
>One Ashburton Place
>Boston, MA  02108
>(617) 727-2200, ext. 2062
>
>
>__s/Marianne Meacham_____
>Marianne Meacham, BBO 550468
>Special Assistant Attorney General
>General Counsel
>Department of Mental Retardation
>500 Harrison Avenue
>Boston, MA  02118
>(617) 727-5608
>
>Dated:  April 4, 2005
>
>>Certificate of Service
>>By my signature below, I hereby certify that I have served the within document on all parties by filing it electronically and by sending it by facsimile and first-class mail to Beryl Cohen, Esq., Counsel for the Fernald Plaintiffs, on this the 4th day of April, 2005.
>>
>>S/Juliana deHaan Rice
>>Juliana deHaan Rice, BBO 564918
>>Assistant Attorney General

11

Case 1:72-cv-00469-JLT    Document 59    Filed 04/04/2005    Page 12 of 12