April 14, 2005

William F. Gear
109 Neponset Avenue
Roslindale, MA 02131

Ms. Gail Gillespie
Department of Mental Retardation
200 Trapelo Road
Waltham, MA 02452

RE: Transportation requirements as delineated in 2002 ISP of Gena Gear

Dear Ms. Gillespie:

Although numerous letters reminding the Department of the transportation requirements of the 2002 ISP signed by Joan Katz for the Department have been offered during the past year (see letters to Gail Gillespie, March 5, 2005 and to Mark Sanderson, October 25, 2005), your agency, by its refusal to fund and implement these 2002 ISP transportation requirements, has chosen to ignore DMR's Fair Hearing Regulations [115 CMR 6.34(4)] This regulation states that those portions of the ISP which are subject to appeal shall not be implemented until after the informal conference conducted pursuant to 115 CMR 6.33(1). The informal conference occurred in 2003. The basis for the appeal was lack of substantial implementation of the 2002 ISP by the Department. At no point during the informal conference, nor the Fair Hearing, did DMR object to any component, including the transportation component, of the 2002 ISP. As the transcript depicts, the Department defended its own role during this lack of implementation by laying responsibilities for these substantive omissions at the feet of the provider organization. The provider has stated that only funding for direct care staff and a few household utilities had been authorized by Joan Katz, and was not present at the Fair Hearing to answer DMR's statements about the providers failure to implement other components of the ISP.

You have, in the past year and more stated that there are no current fiscal constraints upon the implementation of Gena's ISP. If all of your remarks are true, then upon what regulatory basis has Gena Gear, a Ricci Class client been emphatically denied the transportation resources promised in the 2002 ISP. Further, as the modification process recommended by the Hearing Officer was for the explicit purpose of exploring and/or complementing the clinical components of the ISP, why have you chosen to use denial of transportation resources in this matter? Does denying Gena transportation, as described in the 2002 ISP (copy attached) advance some clinical goal for Gena? Does the draft modification of the 2002 ISP prepared by Mr. Sanderson and representatives of Nonotuck "trump" the 2002 ISP signed by the Department? I find your repeated insistence upon degradation of the 2002 ISP with respect to transportation to be unjustifiable and damaging to Gena on a daily basis.

As you know, to transport Gena safely, she must have ready access to a vehicle that ensures her physical separation from the driver. Additionally, our previous vehicle was equipped with a toilet, avoiding the risks and uncertainties of Gena using public facilities during her frequent need for access to a toilet. These requirements were described at the request of Joan Katz in a detailed memo dated 10/28/01(see attached). We were pleased when the 2002 ISP executed by Joan Katz for the Department included language sufficient to meet the safety requirements of routinely transporting Gena.

Additionally, as you know, Gena has had no primary care physician whom I could call for consultation nor to visit with Gena since she left the group home at 29 Thoreau Rd., Northboro, in 1996. In the event of any emergent medical situation ( such as has occurred a number of times in the past ten years) Gena would only receive medical attention on an emergency basis through emergency room services. As Gena's behavior poses certain difficulties, were strangers (EMTs) to attempt to transport her to an emergency room, you knowingly create a situation of unacceptable and fully avoidable risk of her being harmed, due to your repeated determination to deny Gena the transportation resources described in the 2002 ISP.

What purpose does this lack of transportation serve for Gena or for the DMR?

I ask again that you promptly implement the transportation resources described in the 2002 ISP or that you explain to me why the current lack of transportation is proper. I believe that DMR, perhaps unconsciously, misses no opportunity to deny Gena supports and resources to which she is entitled. You often criticize what you describe as Gena's isolation and lack of services. Your refusal to provide transportation is a root cause of the lack of enjoyable and necessary experiences that you elsewhere decry.

Kindly authorize some qualified vendor to lease or purchase an appropriate vehicle, with adequate insurance, to permit staff and others to transport Gena and to respond to her needs and her requests, and please do so immediately. A purchase would be more cost effective than a lease if there is sincere interest in not wasting public funds.

Ricci class clients are entitled to the supports outlined in their ISPs and this entitlement is not subject to fiscal problems, nor subjective opinions of DMR staff. The ISP for a Ricci Class Client is a microcosmic vehicle for enforcing compliance with the final disengagement order.

I am hopeful that we can achieve a breakthrough and get beyond this unnecessary and unseemly refusal to provide Gena with safe and appropriate transportation.

Sincerely,

William F. Gear, Co-Guardian

Cc: Barbara Santella, Co-Guardian
    Honorable Judge Joseph Tauro
    Gerald J. Morrissey Jr., Commissioner, DMR
    Colleen Lutkevich, COFAR



# DEPARTMENT OF MENTAL RETARDATION
## Middlesex West Area Office
114 Turnpike Road
Westboro, MA 01581

## INDIVIDUAL SUPPORT PLAN RESPONSE SHEET

**DMR APPROVAL**

The enclosed document is the ISP developed from the Annual Review meeting for Gena Gear for the period 02/02/98 to 02/02/99.

On the basis of the report of DMR Service Coordinator Suzanne Moran, the Department of Mental Retardation Area Office accepts responsibility for <u>endeavoring</u> to provide, purchase or arrange for the services contained in the ISP, <u>some of which may not be currently available.</u>

<u>The Department's responsibility to provide, purchase or arrange for these services is subject to the availability of resources</u> and the extent to which these services comply with the requirements of applicable laws and regulations and are duly and lawfully authorized for implementation.

_____11/19/98_____        _____[signature]_____
Date                       Area Director / Designee

**PROVIDER RESPONSE**

On the basis of information currently available __TRI__ accepts responsibility for addressing the goals and for implementing the strategies that have been designated our responsibility in the attached ISP/Annual Review.

_____        _____        _____
Signature              Position              Date

**PROVIDER COMMENTS:**

| | |
|---|---|
| Subj: | **Fwd: Gena's travel, safety and costs** |
| Date: | 10/29/01 4:29:21 AM Eastern Standard Time |
| From: | Billyzone |
| To: | Billyzone |

---

Forwarded Message:

| | |
|---|---|
| Subj: | **Gena's travel, safety and costs** |
| Date: | 10/28/01 5:17:13 PM Eastern Standard Time |
| From: | Billyzone |
| To: | joan_katz@dmr.state.ma.us |
| CC: | CODSCSC, ANDREBLANC, deb_butkiewicz@dmr.state.ma.us, george_casey@dmr.state.ma.us, AEFLYNN |

To: Joan Katz
Area Director DMR Metrowest Area
From : William F. Gear
Subj: **Gena's travel, safety and costs**

Safety, ethical and liability considerations regarding Gena Gear when she travels or is integrated socially

Gena Gear is prone to sudden episodes of panic, anxiety and violent attacks upon others that are near her during these episodes. The antecedents are internal to Gena and we believe that past trauma, complicated by her genuine intellectual deficits, are the roots of this problem. These episodes and their unpredictable nature make travel and group situations very risky for Gena and for those other staff, clients, or passers by who may be hurt or may be subjected to frightening verbal and complex physical aggression.

There are long periods of time when these episodes do not occur and this adds to the problem. Staff are trained in the abstract to deal with these episodes and have never witnessed them when they are one day faced with an episode with no experienced support to help out.

It is against the backdrop of these threatening episodes that we must plan for Gena's travel and her transition to community experiences, including her transition to a day program. Gena's episodes grow worse if efforts are made to physically restrain her in any way. Thus a staff person monitoring Gena during travel or group experience must do so in a quick, agile, circling manner, making little or no contact, protecting him or herself only by dodging maneuvers. We do not know a good way to separate Gena from a helpless or innocent individual who may well become the target of Gena's fear and rage. Children are also very vulnerable. People with physical and intellectual impairments are most vulnerable.

How do we advance Gena's range of community and social integration while still remaining responsible and ethical in the risks we may create for others in the environment? We know full well that such episodes are dangerous, of infrequent but regular occurrence and that our ability to train staff to safeguard Gena and others is limited. If we had the luxury of unlimited time and staff resources, we could attempt to slowly fade in the demands of travel and group experience, but we must maintain a morally acceptable level of safety in the real world of uneven staff performance and necessarily limited time and money.

Travel

All efforts to transition Gena to a day program, or to engage her in other community integration experiences depend upon transportation safety. If Gena experiences a panic episode, or as part of such an episode she becomes violent to those with whom she travels, then she and her caregivers and fellow travelers are at great risk of bodily harm. We know that using the right vehicle is vital and we have tried to determine the least expensive vehicle that would prove effective. In the past, a family owned camping RV was used, but this has worn out and is no longer an option. To replace such a vehicle is prohibitively expensive. We intend that Gena travel in an ordinary van that has been retrofitted with a driver protection barrier, some protective interior padding, driver

controlled rear locks and a portable toilet. Some other small adaptations are also advisable, such as a source of soothing music and extra-tinted side and rear windows. The van must have three banks of seating and the larger American makes are preferable. For the foreseeable future, Gena must be the only impaired or vulnerable co-passenger.

The driver must be alert, compliant with agreed upon safety protocols, punctual, responsive and available for sudden return journeys as called for by Gena's staff and father. This is probably incompatible with most contractual transportation services. We need to lease a van in order that it be flexibly available, as we cannot wait a reasonable half-hour or more when Gena requires exit from a situation of jeopardy to her self or to others. We do not have the option of even the most competently and judiciously applied physical restraint, as she is terrified and further enraged by any such handling. Any use of force upon her harkens her back to the abuses and violent assaults she describes when she is inside of such an episode. Her driver must be able to remain instantly available from the time she leaves her home until the end of her day of program activity, whenever such an end stage may be. This is all very expensive, but we cannot think of another non-individualized approach to a meaningful day for Gena that is acceptably safe for her and for others. Neither the Gear family, nor Shriver, nor the day program provider, nor DMR can afford to ignore the risks or act less vigilantly than described. The moral and legal liabilities are too high.

We invite the opinions of the Area Director and her staff in our cooperative effort to craft supports and safeguards that will permit Gena to live a fuller life and to enjoy the same valuable and normative experiences that we all aspire to. Please offer very concrete, specific and well designed travel and day activity support contingencies and please think about cost-effectiveness as well. We are distressed by the fact that Gena's transportation may cost more than her day program. Please mull this over and respond when you are able to do so. We are in this together and for the common purpose of enhancing and restoring Gena's dignity and well being.

On a related note, we have reviewed and signed the agreement for interim support for Gena and we will ask the Shriver Business Manager, Ann Flynn, to send one of the fully executed originals to your office this week. I appreciate the hard work that DMR and Shriver have put forth, and the continued housing option provided by Polus. This spirit of collaboration is very encouraging. Thank you.

March 4, 2005

Ms. Gail Gillespie
Regional Director, Region VI
Department of Mental Retardation
200 Trapelo Road
Waltham, MA 02452

Dear Ms. Gillespie;

This letter is to inform you of our plans to include my daughter, Gena Gear, in a family vacation at our summer home. Last year, notification was provided through a letter to our attorney, but as we are not presently represented by counsel, this year I offer notification directly to you. We intend to begin our vacation in the first week of May, 2005.

This vacation is described in the 2002 ISP, which was signed and executed by Joan Katz, Area Director. As this component of Gena's ISP is not the subject of our disagreement with the lack of other substantial implementation of the ISP, it should, by DMR's ISP regulations, be implemented.

In order to provide staff support for this experience, Shriver Clinical (which provides staff and processes their payment under an interim arrangement with you) requires your continued support of Gena's current staffing pattern.

Additionally, the 2002 ISP describes transportation resources for Gena and asks that Shriver implement same. Shriver requires funds, in excess of the funding you provide for staff, in order to implement this item. Please communicate with Shriver as to how you will provide funding for necessary transportation. Gena's safe transport requires a van with certain safety and comfort modifications that have been described in previous correspondence with Joan Katz. If you want a copy of this previous correspondence, please notify me.

I ask that you respond, indicating your intention to provide these uncontested elements of the 2002 ISP, by letter to me. Kindly copy Shriver on any such correspondence.

Sincerely,

William F. Gear, Co-Guardian

*William F. Gear* (signature)

c.c. Barbara Santella, Co-Guardian
    Conrad O'Donnell

Memorandum

To: Mr. Mark Sanderson
From: William F. Gear
Re: Transportation
Date: October 25, 2004

This is written as follow-up to my telephone message to you of last Friday morning. Specifically, as the 1986 vehicle owned by me was Gena's only transportation resource and as this vehicle is now deemed beyond repair by a qualified mechanic, Gena is stranded in Roslindale, and I do not have the ability to respond to ordinary transportation needs such as food shopping, other shopping for necessary items and the like. All previous drafts of her ISP, including the 2002 document signed by DMR have called for the provision of an appropriate vehicle, permitting sufficient distance and separation from the driver to ensure safety for Gena and the driver, as well as other occupants. None of her current staff have such a vehicle and it would be extremely unwise to risk the consequence of a panic attack or aggression of any other origin while in transport. Gena is therefore stranded and unless friends and/or Shriver personnel volunteer to make these deliveries, she will be deprived of all basic goods and services that directly or indirectly depend upon transportation. This is a clear and unambiguous violation of Gena's rights and of relevant DMR regulations.

I have just received your draft ISP, and will address it in a subsequent memo. However, its time-line for implementation is stated to be within six months. Such a long period without transportation is not acceptable. I hope that the DMR will not use transportation as yet another make-believe crisis in order to force my agreement to what may be an unacceptable ISP.

I suggest that DMR authorize a vehicle lease through a qualified DMR vendor willing to accept DMR's commitment to honor the casts Or, DMR could purchase a vehicle in Gena's name and she could purchase liability insurance that would hold all of her drivers essentially harmless. Or, if the DMR has an overwhelming aversion to long-term and cost effective solutions, the DMR can authorize and pay for rental vehicles, such as we used to return Gena to Roslindale.

If I do not receive a response of a substantial nature in writing within the next few days, I will assume that you wish to deprive Gena of her rights to transportation and a range of dependent basic goods and services. I will also assume that you are less concerned than is reasonable about Gena's possible distress or deprivation.

I hope you are well and I encourage you to call or write about this or any other matter of concern. In light of Mr. Tichner's sub-optimal communications regarding the plans for Gena's vacation during April, May and July, 2004, I suggest that you communicate about Gena to me as her guardian. You may send copies to Mr. Tichner.

c.c. Mr. O'Donnell
     Ms. Barbara Santella, Co-Guardian

Subj: **Re: Gena Gear Transportation**
Date: 10/26/04 8:15:40 AM Eastern Standard Time
From: Mark.Sanderson@state.ma.us
To: Billyzone@aol.com
CC: CODSCSC@aol.com, Otherguardian@aol.com
File: **Transportation102504.doc** (23552 bytes) DL Time (53333 bps): < 1 minute

*Sent from the Internet (Details)*

Last Friday, October 22nd I received a telephone message from you advising me that your car was not operative and that you and Gena were without transportation in your shared home in Roslindale. I immediately called Conrad O'Donnell from Shriver Clinical Services advising him of the situation. We agreed that Conrad would make arrangements for any necessary food shopping, supplies and other required transportation for Gena in the event you were unable to assume responsibility for doing so. This arrangement will continue until we are able to move forward with the new ISP you have acknowleged receiving. Safe and reliable transportation is a component of this ISP, and part of the transition plan to be developed between Shriver and Nonotuck will be to deliniate responsibility for arranging appropriate transportation for Gena in the future - both while she remains in Roslindale and once Gena moves to her new shared living arrangement. If you have any questions about this arrangement, feel free to contact Conrad or myself.

Billyzone@aol.com on 10/25/2004 04:11:07 PM

To: "Sanderson, Mark (DMR)" <Mark.Sanderson@state.ma.us>
cc: CODSCSC@aol.com, Otherguardian@aol.com, Billyzone@aol.com (bcc: Mark Sanderson/R5/DMR)

Subject: Transportation

Saturday, November 13, 2004 America Online: Billyzone