UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert Simpson Ricci, *et al.*, | CIVIL ACTION Nos. |
| | 72-0469-T |
| | 74-2768-T |
| Plaintiffs | 75-3910-T |
| | 75-5023-T |
| v. | 75-5210-T |
| Robert L. Okin, *et al.*, | |
| Defendants | |

**THE DEPARTMENT OF MENTAL RETARDATION'S
MOTION TO STRIKE THE WRENTHAM ASSOCIATION'S
*MOTION TO RE-OPEN CASE AND RESTORE TO COURT'S ACTIVE DOCKET*__**

On the eve of a recent status conference in this matter, and without any notice (prior to the day of filing), the Wrentham Association filed a *Motion to Re-Open Case and Restore to Court's Active Docket* (the *"Wrentham Motion"*) and a 58-page supporting memorandum (the *"Wrentham Memo"*). The Department of Mental Retardation ("the Department") hereby moves to strike from the Court's docket both the *Wrentham Motion* and the *Wrentham Memo* as these pleadings were filed in violation of key provisions of the Order by which this Court closed the above-captioned consolidated cases on May 25, 1993.

In its Order of May 25, 1993 (the "Final Order"), this Court expressly decreed that "[t]hese five consolidated cases shall be and hereby are closed and removed from the court's active docket. Any action to enforce the rights of the plaintiff classes may be brought before the court *only* pursuant to the terms of paragraph 7 below." Final Order, ¶ 1 (emphasis added). Paragraph 7 of the Final Order provides, in relevant part, as follows:

a. If the defendants substantially fail to provide a state ISP process in

>compliance with this Order, or if there is a systemic failure to provide services to class members as described in this Order, the plaintiffs may seek enforcement of the Order pursuant to this paragraph. Individual ISP disputes shall be enforced solely through the state ISP process.
>
>\*   \*   \*
>
>c. Should the plaintiff class believe that the defendants are not in substantial compliance with this Order with regard to systemic issues, plaintiffs may seek to reopen this case and to restore this case to the active docket and to move for enforcement of this Order only after the following steps have occurred:[fn 5][1]  (1) plaintiffs have given written notice to defendants of the alleged non-compliance, including the facts alleged and the provision of the Order involved; (2) defendants have been provided with 30 days to review and respond to plaintiffs' notice, and to inform plaintiffs of any proposed plan of correction; (3) plaintiffs and defendants (or their respective counsel) have met personally at least twice to discuss and seek to resolve any remaining dispute under the notice. The court shall have jurisdiction to enforce the provisions of this Order pursuant to this paragraph, which shall be the exclusive means of enforcing this Order.

Hence, in order to invoke the jurisdiction of this Court, the Wrentham Association must first serve the Department with written notice of each alleged noncompliance they wish to raise with the Court and also set forth adequate supporting facts to permit a response. Final Order, ¶ 7(c). Not only has that not occurred here, the majority of instances of alleged noncompliance cited in the *Wrentham Memo* have never been the subject of *any* prior written communication from Wrentham Class Counsel. *See* Affidavit of Marianne Meacham, the Department's General Counsel, submitted herewith, at ¶¶ 6-13. Under the Final Order, the Department is then entitled to "30 days to review

---

[1] Footnote 5 in the Final Order states: "The procedures required by this subparagraph will apply except in a situation where serious irreparable harm would result if all the requirements were met; in such a situation, plaintiffs shall give the maximum practical notice and the parties shall comply with all the requirements to the extent possible, given the urgency of the situation." Here, the Wrentham Association does not allege any emergent situation that would justify failure to comply fully with the requirements of ¶ 7(c).

and respond to plaintiffs' notice, and to inform plaintiffs of any proposed plan of correction." Final Order, ¶ 7(c).  The parties (or their respective counsel) are then obliged to convene two face-to-face meetings "to discuss and seek to resolve any remaining dispute under the notice." *Id.*  Contrary to her obligation under ¶ 7(c), the current Wrentham Class Counsel (who has served in that capacity for approximately 16 months) has never "met personally" with the Department's General Counsel "to discuss and seek to resolve" outstanding disputes, despite numerous relevant developments since her appointment.  Meacham Affidavit, ¶ 21.  The other undersigned counsel (AAG Quinan), who has represented the Department in matters relating to this case for the past two years, has *never* been contacted by Wrentham Class Counsel to discuss *any* matter of substance.

Furthermore, neither the *Wrentham Motion* nor the *Wrentham Memo* alleges the existence of a noncompliant ISP process or identifies "a systemic failure to provide services to class members" that has been properly raised and discussed with the Department as required by paragraph 7(c) of the Final Order.  This failure to abide by the terms of the Final Order, as outlined in the attached Affidavit of Marianne Meacham and accompanying exhibits, precludes the Wrentham Association from seeking relief directly from the Court.  The Department cannot simply be haled into federal court in a closed case if the sole basis for federal jurisdiction consists of the terms of a court order with which the plaintiffs have not complied.

Under the Final Order, exhaustion of ¶ 7(c) processes must occur before resort to the Court.  Adherence to the prerequisites for filing a motion to re-open a case mandated by the Final Order is warranted for the pragmatic reason that this Court should not be inundated with groundless allegations of noncompliance that arise because outside parties (such as Class Counsel) misconstrue certain actions taken by the Department or fail to properly analyze complicated data concerning the

developmentally disabled.  If given the chance to meet with Class Counsel in a ¶ 7(c) conference to discuss some of the brand-new allegations of noncompliance grounded upon misinterpretations of data collected by third parties, the Department would demonstrate to Class Counsel that the negative conclusions she has drawn from incomplete or misleading data are unwarranted.  The Court would then have fewer contentious issues with which to grapple.

With respect to the most significant allegations contained in the *Wrentham Memo*, however, Wrentham Class Counsel never even *initiated* the process mandated by ¶ 7(c) of the Final Order.  Meacham Affidavit at ¶¶ 6-13.   For example, the Wrentham Association has never before alleged that the Department's processes for administration of medications to Wrentham Class Members violate the Final Order. *Id.* at ¶ 7.  In other instances, Class Counsel initiated the ¶ 7(c) process but, following discussion with the Department's counsel, *withdrew* the notice of alleged noncompliance.  *See, e.g.,* Exhibits D through F appended to the Meacham Affidavit.

The Department is prepared to treat the *Wrentham Motion* and *Memo* as the "written notice to defendants of alleged noncompliance[s]" required by ¶ 7(c) of the Final Order.  As such, the Department is entitled to "30 days to review and respond to plaintiffs' notice, and to inform plaintiffs of any proposed plan of correction." *Id.*  The Department will then work with Wrentham Class Counsel to promptly schedule the required "face-to-face" meetings called for in ¶ 7(c) of the Final Order. [2]  At that juncture, if areas of controversy remain, and Class Counsel elects to file a

---

[2] Given the lengthy passage of time since predecessor counsel for the Wrentham Association and the Department's attorneys last convened for a ¶ 7(c) meeting, further discussion between the parties is warranted before the Court is asked to re-open this matter -- even on those few subjects concerning which current Class Counsel claims that predecessor counsel exhausted the ¶ 7(c) process back in 2004 (*e.g.,* the "equal or better certification" claim, the issue of whether the Department has complied with the Final Order's requirement that it arrange for periodic independent review of its community-based services, and staffing issues).  The Department has undertaken significant

proper *Motion to Re-Open the Case*, the Department will file a detailed response to any allegations of noncompliance with the Final Order. If this Court denies the instant *Motion to Strike*, then the Department will file a comprehensive rebuttal to all of the unfounded allegations of noncompliance with the Final Order contained in the *Wrentham Memo*, consistent with its right under the Final Order to take thirty days to prepare a detailed response to fresh allegations of noncompliance.

---

measures since June of 2004 to address the Wrentham Association's concerns, of which current Class Counsel may not be aware, and further discussions may obviate the need for this Court to take any action on these subject matters.

**CONCLUSION**

For all of the reasons detailed herein and in the attached affidavit, this Court should strike from its docket both the *Wrentham Motion* and the *Wrentham Memo* and decline to take further action until such time as the Wrentham Association has fully complied with the provisions of the Final Order relative to the opening of a closed case.

Respectfully submitted by the

DEPARTMENT OF MENTAL RETARDATION,

Through its attorneys:

_____
Marianne Meacham, BBO No. 550468
Special Assistant Attorney General
General Counsel
Department of Mental Retardation
500 Harrison Avenue
Boston, MA  02118
(617) 727-5608


/s/ Robert L. Quinan, Jr.
_____
Robert L. Quinan, Jr.  BBO No. 553010
Assistant Attorney General
Office of the Attorney General
One Ashburton Place, 20th floor
Boston, MA  02108
(617) 727-2200, ext. 2554

Dated:  February 22, 2006