UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert Simpson Ricci, et al., | |
| Plaintiffs | Civil Action Nos.   72-0469-T |
| | 74-2768-T |
| v. | 75-3010-T |
| | 75-5023-T |
| Robert L. Okin, et al., | 75-5210-T |
| Defendants | |

**AFFIDAVIT OF MARIANNE MEACHAM**

I, Marianne Meacham, do depose and say as follows:

1. I am employed by the Department of Mental Retardation ("the Department") as the agency's General Counsel. In this capacity, I am familiar with this Court's Order dated May 25, 1993 ("the Final Order") in the above-captioned set of consolidated (and now closed) cases.

2. Pursuant to the terms of the Final Order, on April 12, 2004, then-Class Counsel for the Wrentham and Dever classes, Lisa Goodheart, Esq., sent a "notice" of the Department's alleged non-compliance with the Final Order. A true and accurate copy of this letter is attached as Exhibit A.

3. On May 17, 2004, the Department responded to this notice. A true and accurate copy of this letter is attached as Exhibit B.

4. Thereafter, meetings between the Department and Class Counsel were held on May 28, June 7, and June 8, 2004, and later a meeting was held on September 15,

1

2004 for the Dever and Wrentham Classes only. Department attorneys (including myself and counsel from the Office of the Attorney General) participated in these meetings in an effort to resolve the issues raised by Class Counsel, and in order to comply with ¶ 7 (c) of the Final Order mandating that, prior to the filing of any motion to reopen this case, "plaintiffs and defendants (or their respective counsel) [shall] have met personally at least twice to discuss and seek to resolve any remaining dispute under the notice." Final Order, ¶ 7 (c).

5. On July 1, 2004, the Department further responded to the Plaintiffs' ¶ 7 (c) demand. A true and accurate copy of the letter dated July 1, 2004 is attached hereto as Exhibit C.

6. During the meetings described above, the parties never discussed data from the Disabled Persons Protection Commission ("the DPPC") regarding complaints of abuse which are referenced in the *Memorandum in Support of Wrentham Association's Motion to Re-Open Case and Restore to Court's Active Docket ("Wrentham Memo"),* filed on February 7, 2006, at pp. 1 – 21. Aside from one brief (5 minute) telephone conversation in which Attorney Margaret Pinkham advised me that she was looking at this data, no process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

7. During the May - June 2004 meetings described above, the parties never discussed specific data regarding the Department's administration of medications to Class Members, or any data or other information relative to the Medication Administration Program (MAP) or critical incident reporting, which data is

2

discussed in the *Wrentham Memo* at pp. 1 – 21. No process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

8. During the May – June 2004 meetings described above, the parties did not discuss data regarding criminal background checks, or audits of compliance with the same, which data is discussed in the *Wrentham Memo* at pp. 21 – 22. No process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

9. During the May – June 2004 meetings described above, the parties did not discuss the allegations of increased utilization of restraints described in the *Wrentham Memo* at p. 35. No process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

10. During the May – June 2004 meetings described above, the parties did not discuss the death of non-class member David Malcolm in December of 2002. *See Wrentham Memo* at p. 34. Shortly after Mr. Malcolm's death, I had a discussion with then-Wrentham Class Counsel Lisa Goodheart about this incident. No process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

11. During the meetings described above, to the best of my knowledge and recollection, the parties did not discuss the death of Wrentham Class member

Rachel DeLine, which occurred in April of 2002. *See Wrentham Memo* at p. 34. Shortly after the death of Ms. DeLine, I discussed the matter with then-Wrentham Class Counsel Lisa Goodheart. No process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

12. During the May – June 2004 meetings described above, the parties never discussed the "2005 Wrentham Association Survey," nor were the findings of the Survey ever shared with the Department's counsel prior to the filing of the Wrentham Motion on February 7, 2006. *See Wrentham Memo* at pp. 42-45. No process was ever initiated by Wrentham Class Counsel to discuss this issue in the context of a notice of non-compliance as described in Paragraph 7 (c) of the Final Order.

13. During the meetings described above, the parties did not discuss the Department's policy decision to reduce its overall ICF/MR capacity in the context of any alleged violation of the Final Order. *See Wrentham Memo* at pp. 47-57. To my knowledge, Wrentham Class Counsel never initiated any process for discussion of this issue with the Department, as mandated by Paragraph 7 (c) of the Final Order.

14. On June 15, 2001, then-Wrentham Class Counsel Dana M. Tully sent the Department a notice of alleged non-compliance, as required by § 7 (c) of the Final Order, referencing the death of a Ricci class member named Karen Mutanen and with regard to certain findings arising from the 2000 Class Member Survey of 26 individuals. A true and accurate copy of the letter from Class Counsel is attached hereto as Exhibit D. After discussions with the Department's counsel in 2001,

4

        Wrentham Class Counsel withdrew this notice. A true and accurate copy of the letter from Dana M. Tully dated July 6, 2001 is attached hereto as Exhibit E, together with a response letter from myself dated August 6, 2001, a true and accurate copy of which is attached hereto as Exhibit F.

15. Although the Department furnished Wrentham Class Counsel with detailed information regarding the 26 individuals surveyed in 2000 via letter dated March 28, 2002 (see Exhibit K), during the 2004 meetings described above, Class Counsel requested additional follow-up information. Due to the discontinuation of the Paragraph 7 (c) process by current Wrentham Class Counsel on November 5, 2004 (see Exhibit J), the parties had no further communication regarding this topic.

16. During the meetings described above, in May-June of 2004, the parties addressed the issue of adequately trained staff. *See Wrentham Memo* at 24. Since these meetings, Department counsel have not been asked or had occasion to participate in further meetings or discussions with Wrentham Class Counsel on this topic.

17. During the May – June 2004 meetings described above, the parties discussed the issue of staff turnover and salary levels for direct care workers. *See Wrentham Memo* at 24. Since these meetings, circumstances have changed and yet Department counsel has not been asked to participate in meetings or discussions with Wrentham Class Counsel on this topic.

18. During the meetings described above, in May-June of 2004, the parties addressed the issue of the Final Order's requirement of "periodic review" of the community-based system. *See Wrentham Memo* at 37-39. Department staff,

5

including Assistant Commissioner for Quality Management Gail Grossman and Assistant Commissioner for Policy & Planning Janet George met with then-Class Counsel Lisa Goodheart, Esq., and the Wrentham and Dever Class representatives on September 15, 2004. Defendants made certain written proposals to the Plaintiffs to resolve the issue, but no agreement was reached. A true and accurate copy of the letters between counsel containing these proposals is attached hereto as Exhibits G, H, and I.

19. Following these meetings, on or about November 5, 2004, I received notice from Attorney Margaret Pinkham advising the Department of her representation of the Wrentham Class and of the Wrentham Class's decision to terminate Paragraph 7 (c) discussions around this topic. A true and accurate copy of the letter from Attorney Pinkham is attached hereto as Exhibit J. Since these meetings, Department counsel has not been asked to participate in any further meetings or discussions with Wrentham Class Counsel on this topic.

20. During the meetings described above, in May-June of 2004, the parties addressed the issue of the Final Order's requirement of a certification of "equal or better" services. *See Wrentham Memo* at 37-39. The Department then thoroughly addressed this issue in its filing with this Court in response to the Fernald Motion, which this Court denied without prejudice on January 20, 2005. Since then, Department counsel has not been asked to participate in any further meetings or discussions with Wrentham Class Counsel on this topic.

21. Between November 2004 and the present, the Department has communicated with Attorney Pinkham in the course of providing information about Wrentham Class

members pursuant to the Stipulation and Order for the Protection of Confidential Information agreed upon by the parties and approved by the Court, but not about the issues outlined in Paragraphs 6-20 above.  Indeed, Attorney Pinkham and I have never "met personally . . . to discuss and seek to resolve" outstanding disputes, as required by Paragraph 7(c) of the Final Order.

22. Just prior to the filing of the *Wrentham Memo*, on the afternoon of February 7, 2006, I spoke briefly with Wrentham Class Counsel and advised her that it was my belief that the parties had an obligation under Paragraph 7 (c) of the Final Order to meet to attempt to resolve the issues which had not heretofore been part of the prior ¶ 7 (c) process, or which had been the subject of such process but about which no discussions had occurred since 2004.

Signed under the pains and penalties of perjury this 22nd day of February, 2006.

/s/ Marianne Meacham
_____
Marianne Meacham, Esq.