# The Commonwealth of Massachusetts

Executive Office of Health & Human Services
Department of Mental Retardation
160 North Washington Street
Boston, MA 02114

ATTACHMENT F

Jane Swift
Governor

William D. O'Leary
Secretary

Gerald J. Morrissey, Jr.
Commissioner

Area Code (617) 727-5608
TTY: (617) 624-7590

August 6, 2001

BY FAX AND REGULAR MAIL
Dana M. Tully, Esq.
Lisa C. Goodheart
Hill & Barlow
One International Place
Boston, MA 02110-2600

Beryl Cohen, Esq.
11 Beacon Street
Boston, MA 02108

Re: *Robert Simpson Ricci v. Robert Okin, M.D., et al.* – Order May 25, 1993

Dear Dana, Lisa and Beryl:

This letter is in response to Dana's letter of June 15th, and further to our meeting with you and the *Ricci* class representatives on June 29th. The Department viewed the meeting as a productive one, and intends to work closely with you to address the concerns raised in the meeting.

I. **Withdrawal of Paragraph 7(c) Demand**

Preliminarily, we acknowledge your withdrawal of your demand under Paragraph 7 of the Final Order.

II. **The Department's Ongoing Efforts To Contact Individuals Refusing Services**

In your letter, you reference the death of Karen Mutanen as suggestive of "systemic failure" to provide services to *Ricci* class members. We strongly disagree with the characterization of this tragic incident as somehow indicative of the Department's practice. Further, in our experience, the Department's interaction with individuals or families who have refused or are refusing services may, in some instances, be hampered by the individuals' or families' wish not to be contacted.

1

Printed on recycled paper

Despite these obstacles, the Department has implemented procedures to ensure that we maintain contact with individuals refusing services. Service coordinators assigned to individuals who are refusing services are now required to contact the individual on at least an annual basis to review his or her decision to refuse services.

At our meeting, you raised the question of how many individuals were currently listed as "refusing services." We indicated that, at that time, 27 individuals were refusing services. We are currently reviewing the status of such individuals, and will supplement this response if it changes.

In our meeting, you also requested that class counsel be permitted to examine the records of individuals refusing services. As we stated, under the Fair Information Practices Act, G.L. c. 66A, state officials have a duty to protect the confidentiality of personal information that they receive in the course of their duties. Individual consumer records cannot be shared with class counsel without potentially violating the individual's privacy rights, except under certain prescribed circumstances. Id. Only a written release, signed by the individual or guardian, would permit the Department to allow class counsel access to these confidential records.

Action Item:
In our meeting on June 29th, you requested that the Department provide you with some documentation of the Department's efforts to contact individuals refusing services. We are in the process of compiling these documents and will provide them to you within two weeks.

## III.  Results of Class Member Survey

As expressed in our meeting, we have several concerns regarding the assertions made with respect to the consumer survey that the Department and class representatives conducted. Some of the Department's fundamental concerns about the survey process are as follows.

First, the sample of people was not in any sense a "random" sample of *Ricci* class members. The 26 people interviewed were expressly *not* intended to represent the entire class; they were chosen from a much-reduced sample made up of only those individuals who left the facilities between 1972 and 1982. As you note, Belchertown class members were excluded from the sample.

The survey results are inherently subjective: interviews were conducted with individuals and family or staff, but no attempt was made to verify any factual assertions or opinions. In addition, certain of the categories of responses (individuals with "financial issues," "staffing issues") were vague, and it was difficult for the Department to determine how the percentages were derived from the results.

Perhaps most important, Mr. Riley's statements which were quoted in your letter were taken completely out of context. Mr. Riley's conclusions about the sampled group were as follows:

> "The results of the survey were generally very positive. The overwhelming majority of people surveyed were living in very positive situations which provided the supports they needed. Likewise, the great majority of people who were able to express their feelings indicated that they were satisfied with their situation. There were some very positive, affirming stories of personal growth and individual accomplishment which left the surveyors with a feeling that life in the community had been a rewarding experience for those individuals."

Further, Mr. Riley's statements about areas needing attention or improvement quoted in your letter do not evidence that the Department found a pattern of "systemic" deficiencies, but, rather, the opposite view:

> "It is important to note that our review of the survey results do not yield a pattern of shortcomings or particular service delivery themes. The situations which need attention are not concentrated in particular regions, nor are they found consistently across the state."

Action Items

Despite our disagreement over the meaning of the survey results, the Department is committed to addressing individual problems identified by the class representatives or through the survey process. Further, with regard to your request for additional surveys, the Department has indicated that there is already underway data collection regarding consumer satisfaction, i.e. the Boston University study, and that data will be shared when the study is issued in final form.

IV.   Communications With Class Members Concerning the Final Order

With regard to updating the DMR publication, "A New Beginning: The 1993 Order In The Mental Retardation Cases, Questions, Answers, and Resources," as stated in our meeting, the Department revised and mailed out over 11,000 "New Beginning" booklets which contain all of the information specified in the Final Order in late 1999. It was mailed to class members, guardians, DMR staff, providers, advocacy organizations and a host of other interested parties.

At our meeting on June 29th, the Department committed to undertaking yet another *Ricci* publication mailing.

## V. Class Members In Nursing Homes

In your letter, you raise concerns about *Ricci* class members in nursing facilities. In response, we would like to review some of the Department's efforts relative to these class members.

In 2000, the Department issued DMR Policy 2000-2 entitled "Class Members Residing in Nursing Homes and Rest Homes." As members of both the *Ricci* and *Rolland* Classes, Ricci Class members residing in nursing facilities receive the services and oversight that the Department has developed in response to the *Rolland* Settlement Agreement.

Admissions
Admissions of *Ricci* Class members to nursing facilities are only permitted with the express approval of the Regional Director who has determined that nursing facility care is appropriate for the individual. The Department's Nursing Home Project staff, upon notification by the PASARR agent, tracks each class member's admission separately, and case follow-up is done on each individual. As *Rolland* class members, *Ricci* class members residing in nursing facilities receive specialized services if such services are recommended as a result of the PASSAR screening process.

Monitoring of Service Delivery
The Department conducts monthly monitoring visits through its Area office staff; in addition, Mary Akoury, part of the *Rolland* Nursing Facility Project Team, has visited each *Ricci* Class member residing in a nursing facility for longer than 90 days.

Community Placements
With regard to community placement of *Ricci* class members from nursing facilities, *Ricci* class members have a priority status for community placements. In FY 01, 30 *Ricci* Class Members residing in nursing facilities were determined to be able to handle and benefit from community placement, and were moved into community settings.

On a case-by-case basis, class members who are either in nursing facilities or in the process of being admitted to a nursing facility, have been considered for admission to one of the Department's intermediate care facilities. If a facility placement is considered more appropriate, and the individual or the guardian consents, referrals for admission have been made.

Finally, the Department's managers have been directed to be vigilant to ensure that *Ricci* class members, including those who are also *Rolland* class members, receive all services described in their ISPs.

Action Items
In our June 29th meeting, you asked for information on the status of admissions to the Marquadt facility. We will report on this information to you within two weeks.

## VI. Other issues

Although not mentioned in your letter, there are several tasks that the Department has devoted substantial time and resources to in response to concerns raised by you in a prior meeting. We will take this opportunity to report on our progress relative to these tasks.

### "Missing Class Members"

The issue of what the class representatives refer to as "missing" individuals has been, in the Department's view, mischaracterized as a "systemic failure" on the Department's part to provide services to class members. Many of these individuals who were "missing" from the published Class Member List were not able to be located for two very understandable reasons. Of the 131 class members who were "missing" from the Master List, 65 of them were deceased; further, a significant number were placed in the mid- to early 1970's, before some of the consent decrees were signed. In some instances, either the individual or their family simply decided to move without notifying the Department. Despite these facts, the Department conducted an extensive search process involving state and federal agencies, and, ultimately, 114 out of 131 of the individuals have been located. We will continue our effort to locate 17 class members still "missing."

### Address Changes

A new process for tracking address changes for class members was developed and put in place on July 1, 2000. Since then, quarterly reports indicating individuals who have moved have been sent to *Ricci* class representatives and counsel. The last was sent on August 3, 2001.

### Verification of Desire of Class Members to Have Names Withheld From The *Ricci* Class Member List

The Department has also gone to great lengths and expense to re-examine the wishes of 475 *Ricci* class members or their guardians to have their name withheld from the Master List. In September 2000, letters were mailed to each of these 475 individuals and his or her guardian; 266 responses were received, with 254 wishing to change their decision and now be included on the list. Another mailing was done to those who had not responded to the first mailing; an additional 56 responses were received, with 44 indicating a desire to change their designation. This brings the total to 299 individuals indicating a desire to be included in the Master List. We will continue our efforts to determine whether additional class members wish to have their names included on the Master List.

## VII. Guardianship Issues

Based upon conversations with class representatives, we understand that some of the class representatives have concerns about the Department's activities and role with respect to guardianship proceedings. Unfortunately, we did not have time to address this

issue at the last meeting. It is the Department's position that guardianship matters should be handled appropriately by both legal and Area office staff, and that all interactions with guardians, especially interactions with family guardians, be courteous, respectful, responsive and appropriate. I would suggest that this item be placed at the top of the next *Ricci* class representative agenda.

We hope that this letter is responsive to the issues raised in your June 15th letter. We look forward to setting the next date for a meeting with the class representatives to follow up on the issues referenced herein.

Please feel free to call me with any questions or concerns.

Very truly yours,

Marianne Meacham
General Counsel

Cc:   Gerald J. Morrissey, Jr., Commissioner
      Jack Riley