UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT SIMPSON RICCI, *et al.* | ) | Civil Action Nos. 72-0469-T (Belchertown) |
| | ) | 74-2768-T (Fernald) |
| Plaintiffs, | ) | 75-3910-T (Monson) |
| | ) | 75-5023-T (Wrentham) |
| ROBERT L. OKIN, *et al.* | ) | 75-5210-T (Dever) |
| | ) | |
| Defendants. | ) | |

OPPOSITION OF WRENTHAM ASSOCIATION TO DEFENDANT'S MOTION
TO STRIKE MOTION TO RE-OPEN CASE

DMR apparently takes the position that the Wrentham Association has to re-do all of the work done by prior Class Counsel over the six month period of April-October, 2004, involving correspondence and face-to-face "re-opener" meetings, simply because it has new counsel. DMR also appears to claim that before the Wrentham Association can file a Motion to Reopen, it must first present every example of every problem cited in its Motion to DMR, and await DMR's response on each item. Then, only after history has repeated itself, could Wrentham file its Motion. Neither this Court nor the Final Order require such a delay and waste of effort, especially where Class members are exposed to irreparable harm.

In arguing that Wrentham's Motion to Reopen should be stricken, DMR has confused cause with effect. Because DMR has failed to provide sufficient Adequately Trained and Experienced Personnel in community settings, Class members have been exposed to abuse, and several have died as the result of neglect. Because DMR has failed to provide sufficient Adequately Trained and Experienced Personnel in community

1

settings, Class members have been subjected to higher rates of medication errors, sexual abuse and physical harm in certain community settings. Because DMR has not conducted Periodic Reviews of Class members' experiences in Community Settings, DMR cannot demonstrate that Class members are being provided with the services required by the Final Order and their ISPs. Throughout the re-opener meetings and exchanges of correspondence, DMR steadfastly denied that it failed to provide sufficient Adequately Trained and Experienced Personnel or that its surveys did not meet the Periodic Review requirement. Unless it now concedes that its staffing and surveys do not comply with the Final Order, DMR should not be allowed to take the position that there are unidentified "changed circumstances," such that it can avoid responding to the substance of Wrentham's Motion.

    A.    <u>Wrentham has fully complied with ¶ 7.1 of the Final Order</u>.

DMR's own exhibits to the Motion to Strike demonstrate that its Motion is not well-grounded in fact. Indeed, on April 12, 2004, in the first of several "re-opener" exchanges (see <u>Exhibit A</u> to the Affidavit of Marianne Meacham), Wrentham Class Counsel wrote:

> Notably, the majority of Ricci class members currently reside in the community, rather than in one of the state developmental centers, as was the case when litigation commenced some 30 years ago. . . . Defendants have made insufficient provision for the salary and benefits needs of the direct support, supervisory and professional staff who work with Ricci class members pursuant to the Purchase of Service contract system. As a result, there are systemic deficiencies including increased and unacceptable levels of staff turnover, lengthy and problematic vacancies in staff positions, a decrease in the quality of services and the number of clients receiving adequate services, and ultimately, real concerns about safety issues. . . . (Page 1, Par. 3).

> We also believe that DMR is failing to provide sufficient adequately trained and experienced professional staff, such as psychologists,

counselors, and speech and other allied health therapists, to meet the needs of Ricci class members on a systemic basis . . . At the same time, as the population of the Ricci class members continues to age, the therapeutic needs of that group will continue to increase, and the need for adequately trained and experienced staff to serve that group likewise continues to grow. . . . (Page 3, Par. 2).

Paragraph 2e of the Order calls for contracted consultant retardation professionals or a nationally recognized evaluation group to review community programs on a periodic basis . . . the defendants are not in substantial compliance with this requirement. The surveys and reports that have been made available to us to date simply do not constitute the kind of regular, comprehensive and independent reviews that we believe the Final Order requires. Again, the Administration's announced plans to close Fernald and the other facilities makes the need for such reviews of community programs all the more urgent and important . . . . (Page 3, Par. 3).

Finally, the plaintiffs . . . believe that the impacts of the proposed FY05 budget, together with the cumulative impacts of prior budget cuts over the past several years, will seriously interfere not only with DMR's ability to provide adequately trained and experienced personnel . . . but also with DMR's ability to substantially provide required services to each class member on a lifetime basis, and to maintain and implement the basic principles of the ISP . . . Ultimately, the DMR's determined efforts to do more with less, and to organize itself and manage its operations for increased efficiencies, simply cannot compensate for budget cuts of the depth and breath [sic] that have been incurred in recent years . . . and the fact is the defendants are no longer maintaining and securing sufficient funds to meet the needs of Ricci class members under the Order. (Page 3, Par. 4 – Page 4).

All of these issues, with the exception of Fernald-specific issues, form the basis of Wrentham's Motion to Reopen. Wrentham's Motion is essentially a much longer version of its previous correspondence, buttressed by evidence of the effects caused by DMR's failure to comply with the Final Order. These same issues were discussed and debated, starting with the first "re-opener" meeting held on May 28, 2004. The Agenda for the first meeting (Exhibit 1 to Wrentham's Motion to Re-Open) identified the following topics:

3

        9:30-10:30      Periodic Review of Community Programs

        1:00-2:00        Lack of Sufficient Adequately Trained and Experienced Personnel

                             (1)    at Fernald

                             (2)    in the community

        2:00-3:00        "Equal or Better" Transfer Certifications

        3:00-4:00        Budget Issues/General

Additional re-opener meetings were held on June 7, 2004, June 8, 2004 and September 15, 2004 – a meeting which focused exclusively on community monitoring.[1]

Following the re-opener meetings, DMR and Wrentham were at an impasse.[2] The only relevant change in circumstances is the fact that Wrentham is now represented by a different law firm – one which needed to climb the long learning curve in this case, such that the Wrentham Association was not in a position to file its Motion immediately. During that time, DMR made it difficult for class counsel to get up to speed, including refusing to provide counsel with a list of Wrentham Class members and guardians, until ordered to do so by this Court. It is disingenuous for DMR to now claim that the time required for new counsel to catch up is a reason for the Court to not get involved, especially in light of the harm that Class members continue to face. The Wrentham Association was not obligated to continue to meet with DMR after it satisfied the 7(c) requirements, and the Final Order does not give DMR veto power over the Wrentham

---

[1] At the end of this meeting, DMR again stated that it would address Class counsel's request for follow-up on the 26-person survey done in 2000, and assigned Jack Riley to respond to Class counsel's letter of July 30, 2004. DMR's March 28, 2002 letter (Exhibit K to the Meacham Affidavit) did not address the issues raised in Wrentham's July 2004 communication. Notes from that meeting are attached hereto as <u>Exhibit 1</u>.

[2] It also bears noting that Class Counsel met with DMR to discuss community placements, equal or better certifications, ISP process, budget cuts, staffing levels and vacancies, and the Fernald closure process. Meetings and/or conference calls took place on June 27, 2001; January 30, 2002; March 29, 2002; December 13, 2002; February 26, 2003 (conference call re closure); March 14, 2003; April 4, 2003; April 17, 2003; July 17, 2003; August 28, 2003; November 25, 2003; January 21, 2004; February 27, 2004; April 14, 2004.

Association's determination that the issues that were the subject of those meetings must be brought to the Court's attention.

      B.      <u>Further Delay Exposes Class Members to Serious Risk of Irreparable Harm</u>.

The facts set forth in Wrentham's Motion to Reopen demonstrate that further delay will be extremely harmful because Class members and other DMR clients in certain community settings are not protected from abuse. This is <u>exactly</u> the situation addressed in Footnote 5 of the Final Order, which provides that the "re-opener" procedures will not apply "in a situation where serious irreparable harm would result if all the requirements were met." While DMR would like to delay the inevitable examination of the community-based programs, doing so exposes Class members in certain group homes to further harm, neglect, and failure to meet the needs set forth in their ISPs. The time for talking is well past – it is time for the Court to again take action on behalf of Class members.

The Wrentham Association has devoted years of effort to attempt to convince DMR to address systemic violations of the Final Order, without success. During this same time period, people in DMR's care, including Class members, have died at the hands of their care givers. In 2005, a Fernald Class member was run over by a direct care worker employed by the North Shore Arc. In 2004, the Disabled Persons Protection Commission ("DPPC") investigated 14 reports of abuse involving deaths – it substantiated abuse in 5 deaths and another 4 cases were referred to local authorities for criminal investigation. In 2003, David Malcom, a resident at a group home operated by South Shore Mental Health, died after he was not given his seizure medication and the group home manager instructed staff to wait until the day-shift workers came on duty

5

before bringing him to the hospital.  In 2002, Rachel Deline died of a lithium overdose, and an unnamed DMR client choked to death on latex gloves.  In 2000, the DPPC substantiated findings of abuse in two deaths.  Karen Mutanen was also found dead in 2000, years after DMR stopped following up on her need for services, despite receiving a letter from her mother stating that she needed help caring for Karen.  Because Class members have been, and continue to be, exposed to irreparable harm, DMR's motion to strike should be denied.

For all of these reasons, and those stated in Wrentham's Motion to Re-Open, the Wrentham Association requests that this Court deny DMR's Motion to Strike and grant the Motion to Re-Open.  In the alternative, the Wrentham Association requests that the Court issue an order making it clear that the scope of review by the Independent Monitor, United States Attorney Michael Sullivan, includes the issues raised in the Wrentham Motion to Re-Open.

|  |  |
|---|---|
|  | WRENTHAM CLASS MEMBERS,<br>By their attorneys, |
|  |     /s/ Margaret M. Pinkham<br>Margaret M. Pinkham (BBO #561920)<br>Daniel J. Brown (BBO #654459)<br>BROWN RUDNICK BERLACK ISRAELS LLP<br>One Financial Center<br>Boston, MA  02111<br>Telephone:  (617) 856-8200<br>Fax:  (617) 856-8201<br>E-mail: mpinkham@brownrudnick.com |
| DATED:   March 8, 2006 | E-mail: dbrown@brownrudnick.com |

6

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

**Fernald/Monson/Belchertown Classes**
Beryl Cohen, Esq.
11 Beacon St.
Boston, MA  02108

**Dever Class**
Neil Moynihan, Esq.
Nixon Peabody
101 Federal Street
Boston, MA  02110

**ARC**
Cathy E. Costanzo
Center for Public Representation (CPR)
22 Green Street
Northampton, MA  01060

**Disability Law Center**
Stanley Eichner, Esq.
Disability Law Center, Inc.
11 Beacon Street, Suite 925
Boston, MA  02108

**Office of the Attorney General**
Juliana deHaan Rice, Esq.
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place
Boston, Massachusetts  02108

**Department of Mental Retardation**
Marianne Meacham, General Counsel
Commonwealth of Massachusetts
Executive Office of Health & Human Services
Department of Mental Retardation
500 Harrison Avenue
Boston, Massachusetts  02118

DATED:  March 8, 2006        Margaret M. Pinkham

# 1416977 v1 - pinkhamm - 000004/0784