November 10, 2006

William F Gear
109 Neponset Avenue
Roslindale, MA 02131

Michael Galligan
Department of Mental Retardation
65 Sprague Street
Hyde Park, MA 02136

FILED
IN CLERKS OFFICE
2006 NOV 13 P 3:00
U.S. DISTRICT COURT
DISTRICT OF MASS.

Dear Mr. Galligan:

    I have received your letter dated October 30, 2006 inviting me to Gena Gear's ISP meeting to be held on November 15, 2006 at Gena's home, 109 Neponset Avenue, Roslindale, at 10:00 AM.

    It would like to have this meeting without the need to hire an attorney to represent Gena. Please note that the person you described to me when you visited Gena, as taking Kim La Due's place as attorney for DMR, Jackie Berman, was not invited by Gena. Nothing personal, but Gena cannot afford to pay for an attorney at this time.

    As Gena's Father, legal co-guardian and spokesperson, it is my responsibility to bring forward any information or ideas that would be significant in preparing an ISP that would honestly reflect Gena's needs and necessary supports to fulfill her needs.

    As you know, Michael, Gena has not had an ISP implemented for the last ten years, and from 1996 to 2001 had not even had an ISP written. Finally in 2002, an ISP was written, modified, reviewed by an ombudsperson designated by the Commissioner, and was appealed. The Appeal was *allowed* by the Commissioner in a letter dated January 6, 2004.

*...The hearing officer's recommended decision made findings of fact, proposed conclusions of law and a recommended decision. After reviewing the hearing officer's recommended decision, I find it is in accordance with the law and with DMR regulations and therefore adopt its findings of fact, conclusion of law and reasoning as my own. Your appeal is therefore **allowed.***   Gerald J. Morrissey, Jr. Commissioner

    At that time, it seemed to me that Gena had won her appeal and could look forward to getting her supports. The truth is Michael, we have been struggling ever since to keep the DMR from separating Gena from her family.

    Here is some of what the hearing officer wrote in her FINDINGS AND CONCLUSIONS, dated December 9, 2003

1

"*On the basis of the evidence before me, I find that Department failed to implement the Appellant's ISP. As a Ricci Class Member, the Appellant has Special Eligibility. Unlike other individuals who are eligible for DMR services, individuals with Special Eligibility are to receive assessments, planning and the development and implementations of ISPs without regard to the availability of resources. {115 CMR 6.07 (1)} <u>While there appear to be a number of reasons for the failure of the Department to implement this ISP, I find that the primary reason was budgetary. DMR assumed that funds would be available that did not materialize.</u>*"   (emphasis added)

... *The parties should reconvene an ISP meeting. A revised ISP should then be developed in accordance with Dr. Julian's recommendations. Further evaluations should take place as needed. Once the ISP is developed it should be implemented...*

*The Appellant's father has envisioned a life-style for his daughter that he believes would best meet her needs. This lifestyle is laid out in the 2002 ISP. While his love and concern for his daughter are evident, all current clinical information relating to her treatment must be considered and factored into a plan to be implemented by DMR and their service provider network...*

Date: December 9, 2003
Marcia A. Hudgins
Hearing Officer


So, let us consider Dr. Julian's latest recommendations. The following is a letter written by Dr. Julian regarding Gena's latest evaluation.


Dr. John N. Julian
Psychiatric Consultation Follow-up
Patient: Gena Gear
Date of Birth: 7/26/64
Date of Evaluation: 6/15/06

*This is a follow-up evaluation approximately three years after initial psychiatric consultation. The patient has been maintained in the same residence for these last three years with essentially one to one staffing and support from her father. She has not had any formal programming during this time in terms of day program or vocational placement. The recommendations that were made in the evaluation of 8/13/03 have not been followed up on. However, in discussing the patient's case with father he reports that she has shown marked improvement over the last three years. Her frustration tolerance has improved markedly, as has her overall affective presentation. Impulse control has improved and the patient now rarely experiences agitated episodes even with limit setting. She does continue to have difficulty with transition at times and does show a general fear of leaving the van when she is out in the community although appears to have little difficulty getting in the van and traveling. Her overall level of self-talk has*

2

reduced dramatically both in frequency and intensity and the content has changed to the point that the patient does not appear to be re-experiencing past events in a dysphoric manner. On evaluation the patient appears much calmer with a bright and appropriate affect. She was able to sit with us for the entire interview and appeared comfortable doing so although her ability to engage in spontaneous verbal interaction remains severely limited. However, father states that with prompts she will increase communication but this was not witnessed during the evaluation. The patient remains on Paxil at 40 mg and still takes no other psychotropic medication. She requires no other medication and is considered in good health.

In conclusion, I find the patient markedly improved from my evaluation three years ago both based on clinical observation and history reported by father. It may be that my previous diagnoses of impulse control disorder NOS and post traumatic stress disorder have now gone into remission. However, the patient has been in a very supportive low stress environment for these last three years and it is unclear how she might respond to major changes in her routine or environment. At this point I would still recommend a sensory integration evaluation for possible education around self soothing techniques that she may employ should the need arise. In addition, I would still recommend genetic follow-up as the patient is soon to be going into Franciscan's Children's Hospital under general anesthesia for her routine medical issues and a blood draw could be done at that time as well as an appointment made with Dr. Jane O'Brien a geneticist at Franciscan's. Gena's father has expressed an interest in tapering the patient's Paxil and I think if she continues to do well there is no reason this could not be attempted at a very slow and conservative rate. However, I would wait until her future is more settled and a primary clinician and treatment team is firmly established.

It was a pleasure seeing Gena and her father again. If I can be of any further assistance in helping with this young woman's care, please do not hesitate to contact me.

Sincerely,


John N. Julian M.D.
Board Certified in Adult and Child Psychiatry
Assistant Clinical Professor
Dept. of Psychiatry Harvard Medical School
ACC 812, Massachusetts General Hospital
Boston, MA 02114
   Telephone (617) 724-6300


In this recent evaluation, Dr. Julian seems to call for maintaining a supportive, low stress environment for Gena, that she may stay in remission, thus avoiding a return to full blown impulse control disorder and post traumatic stress disorder that an abrupt change in Gena's routine or environment could cause.

The Department has proposed several ISPs since Gena's 2002 successful ISP Appeal. All the proposals call for Gena to be separated from her family. This is against the advice of Dr. Andre Blanchet, Gena's Medical Safeguard, who wrote a letter on this subject September 16, 2002.

*As Director of the Medical Safeguarding Program at Shriver Clinical Services, I have known Ms. Gena Gear for over 6 years.*

*Following the serious incidents that Gena suffered while she was in a group home, Gena has developed a Post Traumatic Stress disorder.* <u>*Any attempts of returning her to a group home situation put her at risk of reactivation of the traumatic experience and creating severe clinical and emotional problems. This should be absolutely avoided.*</u>
(emphasis added)
*If in need of more information, please contact me at 781/544-1373*

*Truly yours,*

Andre Blanchet MD
Shriver Clinical Services


In the three years time between Dr. Julian's initial and follow-up psychiatric evaluations, Gena was able to effect a remarkable recovery. Dr Julian wrote: "*On evaluation the patient appears much calmer with a bright and appropriate affect... In conclusion, I find the patient markedly improved from my evaluation three years ago both based on clinical observation and history reported by father. It may be that my previous diagnosis of impulse control disorder NOS and post traumatic stress disorder have now gone into remission.*" Dr. Julian continued on in an attempt to raise caution about upsetting Gena's life. "*However, the patient has been in a very supportive low stress environment these last three years and it is unclear how she might respond to major changes in her routine or environment*".


It does not make sense to write up yet another ISP that would insist on placing Gena in a group home. Instead of doing that, let's look at what has worked and try to continue doing that and also improve on it.

Gena has had 24 hour help by devoted and loving staff, hired, trained, and supervised by me, her father. Her utilities were taken care of by the former provider. Gena was able to travel to her family's home at Cape Breton for extended vacations since she left the group home in 1996, now she is limited to one week of vacation time. This right was won in her successful appeal of the 2002 ISP. You can't just write another ISP and take that away from her. The DMR also withdrew Gena's transportation supports. The successful appeal of the 2002 ISP calls for Gena, "*To have a vehicle under control of*

4

*the household, either leased to the provider or Gena, and large enough to have the driver and Gena seated more that an arms length away from each other."* This has been changed to: *Gena's father provides all transportation for Gena", i*n the latest ISP written by the DMR.

The 2002 ISP states: *"To develop a situation where Gena would have a meaningful activity during the daytime hours; an individualized day situation without others who are disabled."* Currently the Department is trying to find a congregate day program for Gena. I have visited each and every day program the DMR has recommended, and determined that none of them would be appropriate to safeguard Gena's remission.

Because the DMR has rationed Gena's staff supports by half, this forces me, Gena's father, to work 84 hours each week to make up for the staff cuts. This uncompensated workload prevents me from being able to earn a living. The Department mustn't be allowed to force me to work against my will. It is not my choice to do so. The Department must restore the supports to Gena that they have withdrawn.

In The Honorable Judge Joseph Tauro's Federal Courtroom, a conversation took place between The Honorable Judge, and the General Counsel for the Department of Mental Retardation, Marianne Meacham, Gerald Morrissey Jr., Commissioner of the DMR, and Ms Margaret Pinkham, attorney, Brown Rudnick Berlak, and Israels. The transcript reads in part:

THE COURT... *there are a couple of disturbing things that I want to bring up. I have a letter, for instance – where is that letter – from the Gears, Mr. William Gear. I take it he is not here. But you have – I don't mean to put you on the spot, Commissioner, but has anybody brought this to your attention?"*

MR. MORRISSEY: *Yes, Your Honor.*

THE COURT: *All right. I don't know what answer is. But it certainly seems to me that – and I am sure that it has been brought to your attention and you have looked into this. And you can't be satisfied with the lack of satisfaction of one of your constituents.*
*Are you going to speak to it?*

MS. MEACHAM: *I'd like to Your Honor.*

THE COURT: *Yes. Go ahead.*

MS. MEACHAM: *I mean, I think the situation with Mr. Gear and his daughter is a situation we have been very aware of for many years. His daughter – and most recently there was a dispute about whether or not she could be best taken care of in a residential placement setting as opposed to continuing to live with her father.*

THE COURT: *It says that in here.*

*MS. MEACHAM:* Yes. And that went to an ISP appeal. And the hearing officer made a decision regarding the ISP to be developed for Ms. Gear.

Mr. Gear requested that someone from outside the region be brought in to sort of facilitate that discussion. We did that. We brought in excellent senior staff from the Southeast Region at his request to facilitate the discussion and development of an ISP for Mr. Gear – for Gena Gear.

There has been very close involvement by Dr. Julian who is mentioned in the letter, who has been -- has done a clinical assessment of Gena, what her needs are, her needs for a day program. She's currently living -- I don't want to get too much into the facts. I'm trying to give you the process.

But she's currently not going to a day program. She is very isolated. We have our own concerns about her lack of services that she's getting, that he is allowing her to receive.

So we are back in the process. We have developed an ISP for Gena in the region that he requested with a provider that we believed in that process he had agreed to. And then again he raised issues that he wants Gena to live with him and not to participate in and day program services, which is not -- which is inconsistent with what the hearing officer opined.

The hearing officer said develop an ISP plan, irregardless of cost restraints, and follow the recommendations of Dr. Julian who, again is very involved in her case.

Dr. Julian's recommendations are that she increase her activity, that she increase her integration with the community, that she attend a day program, have more stimulations. And that's what we have been working towards with Mr. Gear.

He is now as a result of that sort of in disagreement wit what was discussed as the current plan.

And I've asked, again, one of our most seasoned individuals Mr. Jeff Riley, who used to work for the Department, who's now outside the Department, now working in the school system, works for the Department on a limited basis on Ricci class issues, to see if he can sit down with Mr. Gear and again come to some kind of resolution about what is in Gena's best interests.

It has to be in accordance with what Gena's physician Dr. Julian is recommending. And we are very, very aware of this and have worked very hard to try to satisfy Mr. Gear's concerns. He had an attorney Mr. Tichner for awhile. Mr. Tichner resigned or withdrew from the matter so we are now dealing directly with Mr. Gear.

And, again, we are hopeful that bringing Mr. Riley in to sort of facilitate this discussion, again, with a little bit of objectivity outside of the Department but tremendous experience will be able to resolve it.

Our sole concern is that Gena receive appropriate services. We want to facilitate that. We understand that cost is not an issue here.

We, again, had identified some programs that we felt would be excellent for her. But it's really about the family dynamic and an unwillingness to allow her to participate in the programs, to be contacted really in any way.

*THE COURT:* Now, you don't represent her, Mr. Cohen?

*MR COHEN: No, I do not, Your Honor.*

*THE COURT: So you are really not prepared to speak on the issue?*

*MR. COHEN: No, I'm not.*

*THE COURT: Okay So we won't – I take it you are not either.*

*MS. PINKHAM: Well, Your Honor, actually after I became involved in the case, I learned one of my colleagues at Brown Rudnick was the individual who had represented Mr. Gear over some period of time.*
*I think everything that Ms. Meacham has said is right, that the DMR has tried very hard to resolve the situation.*
*But I think it might be helpful for Your Honor to understand that Gena, the reason why she has lived with her father for the past several years is because she was abused at a group home which –*

*THE COURT: There is some --*

*MS PINKHAM: -- which caused her father a great deal of distrust with the mechanism. And he is frankly probably requiring above and beyond what any other guardian would require before he feels comfortable placing his daughter kind of back into the system. And that's frankly all I know.*

*THE COURT: All right. Well, I think that – I can't criticize what you are doing. I am going to take at face value what you are saying to me. I know there is no reason for you to try to kid me. And it is not worth it. And we will never all reach the end result that we want if anything like that happens. I have to have faith in what you tell me and so I do. So it seems to me that you are on the right track. And the only thing I can do is urge you to exercise – continue to exercise your patience that seems to be demonstrated by what you are doing so far. And let's go on to something else.*

It should be noted at this time that Dr. Julian did not make the recommendation " *that she attend a day program"* ... I really don't know why Ms. Meacham would say that to the Honorable Judge. It is a misrepresentation. It is not true. Also, Ms. Meacham stated, *"Our sole concern is that Gena receive appropriate services. We want to facilitate that. <u>We understand that cost is not an issue here."</u>* (emphasis added)

The differences are easily resolved. Gena needs to maintain the supportive, low stress environment that Dr. Julian spoke of in his most recent assessment. As Gena's guardian and spokesperson, I believe that she does not want to live in a group home nor get placed into an inappropriate congregate day program . This is not supposed to be about the money, but it has all the appearances of being so. Why would the Department ration supports to Gena? How does that help Gena? Why does the Department insist on separating Gena from her family? Why did the Department say that they would not have anything to do with a household for Gena that included her father?

7

I am hoping that when we meet for Gena's ISP meeting this coming Wednesday, that the Department will take Dr. Julian's recommendations into consideration, and that an ISP can be written that can be signed off on by Gena's guardians. If so, this will be the only ISP in ten years to have that status, except for the 2002 ISP which wasn't implemented because the Department refused to fund it which necessitated my having to go through the appeal process. After a lengthy process, Mr. Sanderson wrote up an ISP ( the first of his career) that did not address Gena's needs, thus necessitating yet another appeal process. The net result of this four day hearing was to take away all that was gained from the 2002 successful appeal. I have serious concerns that the Department has violated both the spirit and the letter of the Ricci Class Consent Order. The Department's inability to write and implement an appropriate ISP for Gena for these last ten years seems to indicate a systemic failure of the Department.

But on the positive side, let's take a look at what has happened over the last few months. The Department has been helpful in getting Gena the medical services that were so long overdue (ten years wait). Kara Allen, NP, from Commonwealth Care Alliance has been very helpful in getting mandated and recommended health care issues into focus for Gena. Kara is a real pro with a gentle and reassuring demeanor. Gena likes and trusts her. Kara was able to arrange for a blood draw from Gena in the comfort of her home. Now we can move ahead and finally get the tests done for Gena that were recommended by Dr Julian in his evaluation August, 2003. The Department did not follow up on Dr. Julian's recommendations. But it is good to know that we are well on our way to getting the results. Kara will also be available to receive phone calls regarding Gena's medical issues, and will visit her at home. A primary care physician has been identified and will be available for emergency medical situations should they arise. Kara also spoke of obtaining the services of a psychiatrist. I told her that I would like to have Dr. Julian to be the one. She told me that she would ask him. That would be a real plus for Gena.

Another plus is that Gena's area of tie has been changed to the local office of DMR in Hyde Park. This is a positive step. We believe that your attention to detail and follow-up are reassuring. I can see that you are really trying to resolve our differences. In view of Dr. Julian's latest recommendations we should be able to write an appropriate ISP for Gena.

Again, on the positive side, Gena was able to take time out of her life in Roslindale to visit my home at Cape Breton over this past summer. This is so necessary for her to enjoy. She develops a sense of calm and joy. She takes long walks, gets plenty of exercise, enjoys her friends that she has made over the last ten years, and has a beautiful wholesome smile. It is this that has been so pivotal in her going into remission. I believe it is a reasonable request that her right to travel be reinstated by the Department. I am hoping that the Department will see the wisdom in doing so.

Also on the positive side, a replacement vendor has been put in place by the Department. Ms. Elizabeth Osorio from Bay Cove Human Services has been helpful and will be a real asset once an appropriate ISP is written for Gena.

Another positive is that Gena had her day at Franciscan's hospital last July. She had several more teeth removed. Unfortunately she is still experiencing pain in her upper right quadrant. The problem here is that we were told by her dentist that she must wait another eighteen months to be able to have general anesthesia. This, we were told, was a new Medicaid rule. We must be able to find a way of relieving Gena pain in the interim.

Yet another positive issue. We were visited by Michael Lundquist, Gena's landlord, last Friday. We had a pleasant chat, and Michael assured me that he would not have a problem allowing Gena to stay at her home until issues of her ISP were resolved.

Gena's use of syntax has much improved as well as her overall mood. I am hoping that this can continue by carefully crafting an ISP and providing the funding to implement it.

Sincerely,

William F. Gear

Cc:  Ms. Barbara Santella
     ISP team