Judge Tauro,

Are you aware that
the DMR is proceeding
with a full court press
on guardians to place
90 (DMR's goal) residents
by June 2007?

Thought that you
would want to know,

Diane Walsh

December 11, 2004


Mr. Gerald Morrissey, Commissioner
Commonwealth of Massachusetts
Department of Mental Retardation
500 Harrison Avenue
Boston, MA  02118

Subject: Placement Letters to Fernald Guardians and Placement Options


Dear Commissioner Morrissey:

The purpose of this letter is twofold: to ask you to stop the continued pressure you and
your staff have applied to the guardians of Fernald residents to coerce them into
transferring their family members out of Fernald, and to illustrate how the choices you
are presenting to guardians do not meet the standard of "equal or better" as directed by
the federal court.

I received a letter dated December 6, 2006 about my brother, John Walsh, which
contained the following statement, "As you know, the Fernald Developmental Center is
closing and remaining at the facility will no longer be an option for John." This
statement, while presented as fact, is really nothing more than opinion.

The decision to close the Fernald Center was made by Governor Romney in February
2003. As you know, the Commonwealth has elected a new Governor who will assume
office next month. A new administration will most likely lead to a change in leadership at
the Executive Office of Health and Human Services. This change in management coupled
with the ongoing, court-ordered investigation by the US Attorney into the transfers that
have already taken place, make the closing of the Fernald Center far from a foregone
conclusion.

Yet despite the uncertainly of the situation, you continue to apply pressure to guardians to
meet with the Individual Transition Planning (ITP) Team to discuss placement in the
community or in another Department of Mental Retardation (DMR) facility. I am
personally aware of two cases in which the guardians and/or the residents selected for
placement are more than 90 years old! I find the targeting of these very elderly and
vulnerable guardians and residents unconscionable.

On February 8, 2006, Judge Tauro ordered all transfers from Fernald to other ICF/MRs
and community residences to be stopped pending the completion of US Attorney
Sullivan's inquiry and report to the court. I was in the courtroom that day and I did not
hear Judge Tauro qualify his order to authorize the DMR to continue any
placement/transfer-related activities prior to the delivery of the US Attorney's report.

I believe that by resuming these placement meetings before Attorney Sullivan presents his findings to the court, you and the DMR are in violation of the spirit, if not the letter of the Judge's order.

In the letter I received from the DMR, it states that a placement plan will be developed at a meeting on January 8, 2007 that "will be used to begin the active process of identifying a new community or facility home." Therefore my two choices are: to move my brother from his home of 51 years to another ICF-MR facility that is further away from me and may be slated for future closure or to move him to the community where he will receive services under the Home and Community Based Services (HCBS) Waiver Program.

Many guardians are not aware that when they sign the "Modification Individual Support Plan (ISP)" that is produced for their signature just prior to transfer, that they are providing their "consent" for the HCBS waiver program. This Modification ISP is not a full ISP but instead a one-page form that identifies the proposed alternative location for residence and day/work program for our family member.

Most guardians are also not aware that once in the HCBS waiver program, even if a service is specified in an ISP, it may not be provided if the funding is not available. Unlike an Intermediate Care Facility for the Mentally Retarded (ICF-MR) such as Fernald where the cost for care includes everything for the individual totaled into one figure (per diem rate), many of the services provided in the community are paid for through separate budget line items such as transportation, day program, health care, etc. This makes those services much more vulnerable to budget cuts as evidenced just last month when Governor Romney decided to cut several line items from the DMR budget. Even though my brother is a Ricci class member, I don't want to be compelled to return to court every time the Governor or the Legislature decides to cut money allocated for his transportation, day program or other service guaranteed under his ISP.

Lastly, there is the issue of staffing in the community. As you know, care delivered by familiar and trusted staff is extremely important to the safety, happiness, and well being of individuals with MR/DD. On November 15, 2006, Eileen McNamara wrote in the Boston Globe about the plight of caregivers whose meager pay raises were vetoed by Governor Romney. McNamara's column contained the following quotes from Tina Claydon, the residential director for ARC of East Middlesex, "Our turnover is very high. We have to recruit people from overseas because the wages are below the level most people here will accept." It is not unprecedented, Claydon said, for a high-functioning client living in a group home to earn more money at a job than the direct-care worker providing residential support. She asked, "Is it any wonder we can't keep workers?"

It seems clear that community placement with its issues of staff turnover, under funding, and lack of oversight as evidenced by the recent tragedy involving Lisa Burke (also documented by the Globe's Eileen McNamara) does not meet the court-ordered standard to provide "equal or better" services than those being provided at Fernald.

To my knowledge you have never answered the question, why do you want to close Fernald? For more than three years now, guardians and other family members have stated that they would support a so-called, "postage stamp" proposal for a Village at Fernald. Under this proposal, the state would sell a large portion of the Fernald campus for reasonable development provided that there remains a safe environment for our family members with an area large enough to accommodate current residents and staff. Isn't the time and energy of the DMR's ITP team better spent trying to iron out the details of this common sense win-win proposal rather than upsetting elderly guardians with letters about a closing that may never happen?

I, and many other Fernald guardians, await your answer.

Sincerely,

Diane Walsh

Diane Walsh, Co-Guardian of John G. Walsh (23 Malone Park Ave.)
5 Prospect Park
Hyde Park, MA 02136


cc: Beryl Cohen, Attorney for Ricci Plaintiffs
    Diane Enochs, Assistant Commissioner, DMR
    Rayford Farquhar, Assistant United States Attorney
    Jen Magidson, Advocate for John G. Walsh
    Marilyn Meagher, President Fernald League
    Linda Montminy, Facility Director, DMR
    Deval Patrick, Governor-Elect, Commonwealth of Massachusetts
    Reverend Richard Richardson, Chair, Human Services Transition Team
    Marylou Sudders, Chair, Human Services Transition Team
    Michael Sullivan, United States Attorney
    Judge Joseph Tauro, United States District Court ✓
    Guardians of Residents of 21, 22, 23 and 24 Malone Park Ave.