UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert Simpson Ricci, et al., )<br>)<br>    Plaintiffs, )<br>) Civil Action No.    72-0469-T<br>v. )    74-2768-T<br>)    75-3910-T<br>Robert L. Okin, et al., )    75-5023-T<br>)    75-5210-T<br>    Defendants )<br>) | |

### RICCI CLASS MEMBER OBJECTION TO RECOMMENDATION OF COURT MONITOR FOR INDIVIDUAL TRANSFER FROM FERNALD DEVELOPMENTAL CENTER

As Class Counsel for the Ricci class members of Fernald Developmental Center, in response to the recommended proposal of the Court Monitor to transfer an otherwise unidentified current Fernald resident to a community residence, please enter my strong objection for reasons stated below.[1]

On February 8, 2006, the Court ordered that "Pending the completion of Mr. Sullivan's inquiry, and his report to the court, all transfers from Fernald to other ICF/MRs and community residence shall be discontinued."

At this time, the investigation as ordered by the Court by the United States Attorney to "advise the court as to whether the past and prospective transfer processes employed by the Department of Mental Retardation comply with federal law, state regulations, as well as the orders of this court" has not been completed, nor has the report by the Monitor been provided to the Court.

Accordingly, it is clearly premature and beyond the directions of the Court for the Monitor to entertain requests for exemption from the existing Order prohibiting transfers. The Monitor's request now before the Court clearly states that since his appointment on February 8, 2006, "approximately nine individuals currently residing at Fernald have come forward seeking to voluntarily leave Fernald." However well-intentioned, the Monitor's support for the transfer of one individual from Fernald at this time creates a disorderly, precedent-setting preferential document review of a single resident leaving over 200 Fernald residents with a process once initiated by the Monitor which will hereafter require Federal Court approval of each of 200 transfers prior to transfer, which in itself creates a new procedure not recognized at law.

---

[1] The within Objection is filed in this form for reason that the Court Monitor has not filed a Motion, but has instead addressed his pleading in the form of a request in letter form to the Court (document 133).

The Court Monitor fails to advise the Court as to whether the transfer processes in the instant case presented to the Court comply with federal law, state regulations, as well as the orders of the Court. In an apparent hasty effort to respond to pressures by the guardian, the DMR and other special interests, the Monitor has failed to establish that as to this specific individual the Department has met prior to transfer all of the regulatory requirements set forth in the DMR Regulations (115 CMR 6.63).

There is no representation by the Court Monitor that the Facility/Regional Director has certified in accordance with the Final Court Order of 1993 that "the individual to be transferred will receive equal or better services to meet their needs in the new location, and that all ISP-recommended services for the individual's current needs as identified in the ISP are available at the new location."

There is no representation by the Court Monitor that a Right of Return letter was proposed to the individual's family members or guardians in accordance with the directions of the Court on April 7, 2005.

The Court Monitor's request fails to utilize an interdisciplinary and independent review by professional experts to assess the ISP needs of the individual. The request does not document any effort to utilize the expertise of the direct care staff and professionals at Fernald who currently care for the individual, especially those who may have known him for years.

The request makes absolutely no reference to the Individual Support Plan (ISP) of this individual, although the ISP is the central document protecting the individual's right to equal treatment, due process and individualized, active treatment. Compliance with the Final Order of the Court, entered on May 15, 1993, requires that "the individual to be transferred will receive equal or better services to meet their needs in the new location, and that all ISP-recommended services for the individual's current needs as identified in the ISP are available at the new location."

In the total absence of any reference to past, current or modified ISPs of the individual proposed to be transferred, it is impossible for the Court Monitor to make any recommendation to the Court regarding a proposed placement for this individual that would satisfy the 1993 Final Order or other Orders of the Court.

The Court Monitor does not indicate compliance with DMR Regulations relating to the 45-day letter required to be provided to the guardians prior to a proposed transfer. [115 CMR 6.63 (2)] There is no evidence that the "45-day letter" was delivered to the individual Fernald resident. [115 CMR 6.63 (2)(a)] There is no evidence that the "45-day letter" was delivered to the guardian(s). [115 CMR 6.63 (2)(a)] There is no evidence that the "45-day letter" was delivered to other parties, as specifically described in the Regulations. [115 CMR 6.63 (2)(a)] There is no documentation that guardians requested, in accordance with the Regulations, the shortening of the 45-day timeline for transfer out of Fernald. [115 CMR 6.63 (d)] The Court Monitor makes no reference to whether the "45-da includes a statement of how the proposed move will result in improved services and supports and quality of life for the individual nor evaluate the sufficiency

of that statement. [115 CMR 6.63 (2)(c) 1]  There is no evidence that the "45-day letter" includes a statement as required by the Regulations that the parties may visit and examine the proposed home at a time and in a manner not disruptive to individuals who may be living in the home. [115 CMR 6.63 (2)(c) 3]

There is no explanation of how the Court Monitor is satisfied that the proposed transfer is initiated in response to the documented needs of the individual as opposed to the Department's policy established in February 2003 to close all ICF/MRs in Massachusetts, beginning with the Fernald Developmental Center.

There is no documentation that the Court Monitor reviewed the adequacy of the Department's explanation of the "Home and Community-Based Services" waiver program to the guardians in order that guardians could give informed, written consent to the proposed community placement for this individual.  In particular, the Monitor does not refer to his review of any written information that details the differences between the service delivery models of the intermediate care facility and the community for people with mental retardation.

The Court Monitor does not describe how he determined whether DMR complied with the regulatory requirements to obtain knowing consent, voluntarily given by an individual's guardian who understood and weighed the risks and benefits involved in the proposed transfer.  There is no evidence that the Court Monitor interviewed all co-guardians or used the written DMR Client File to evaluate whether DMR complied with informed consent regulations 115 CMR 5.0, including the process by which DMR informed guardians that no punitive action will be taken against the individual's guardian if consent is withheld or withdrawn. [115 CMR 5.08 (3)(e) 4]  There is no documentation that the advantages and disadvantages of the proposed move were explained to the individual from whom consent is secured as required by the Informed Consent regulations. [115 CMR 5.08 (1)-(3)]

According to the request, the Court Monitor also did not consult the individual's Fernald treatment team to evaluate whether DMR complied with the above-mentioned informed consent regulations: the intended outcome of the proposed placement; the risks of the proposed placement, as well as the risks of not proceeding; alternatives to the proposed placement, particularly alternatives offering less risk or other adverse effect; and whether professional members of the ISP team believe the proposed placement will result in improved services, supports and quality of life for this individual.  The request does not indicate that the Court Monitor consulted with the ISP team to assess whether services for this individual have been reduced at Fernald since February 2003, or whether services or supports have been available as recommended by the individual's ISP team over the past several years.

There was no independent, interdisciplinary review of the proposed transfer by a licensed psychologist, nurse, social worker, physical or occupational therapist. The reliance by the Monitor upon the opinion of a medical doctor to validate the proposed transfer is an extreme example of the oversimplification of assessing the needs and complexity of providing active treatment to retarded individuals.  (Primary issues facing many of the Fernald residents are not medical.  Although the role of a physician in caring for a retarded person is not to be minimized, it is important to note that there are only two physicians assigned to treat some 200 individuals at

Fernald and that the same physicians are the only medical doctors on any ISP team.) Unfortunately, the Court Monitor has relied on the opinion of a single medical doctor who necessarily made a cursory paper review of the resident who has continuously resided at Fernald for the past 54 years. The Court Monitor describes a narrow role for the medical doctor: to review the medical history and future medical needs of the individual, and provide a medical overview. Insofar as the text of Dr. Baldor's medical report was not made available to Plaintiffs' counsel, it appears the following health care issues arise following a careful reading of the information included in the Court Monitor request.

Dr. Baldor did not meet, observe or examine the individual who is the subject of his Client File review. The medical information excerpted from his record review by the Monitor is unclear. For example,
- The Court Monitor notes, "On average [the individual] suffers from 2-6 seizures monthly. He is treated with an application of the VNS magnet and sublingual Ativan and rarely requires such intervention (only once this past year)." Reported as such, it is unclear how many seizures this individual had during the past year. Did the other seizures require no treatment?
- The individual's behavior of intermittent physical aggression, including hitting, kicking and pushing is addressed only in a generalized statement that could apply to any individual: "His care givers should be aware of appropriate behavioral modification techniques to address any behavioral issue." Did Dr. Baldor assess the compatibility of housemates so that this individual is not living with others who will respond aggressively, or injuriously, should he hit, kick or push them first?
- Medical conditions are characterized as "chronic" and "minor" but complicating factors including the individual's ability to communicate his own history, to describe pain and current symptoms, or to understand medical treatments enough to comply with them are not evaluated.
- The Court Monitor does not describe the training and experience of the local primary care physician with patients who have developmental disabilities, including limitations of cognition and communication, and multiple, concurrent medical problems, or compare the same to the individual's current primary care physician at Fernald.
- According to the request, "Dr. Baldor concludes that an intercom system within his room would allow for unobtrusive monitoring of any nighttime seizure activity." The request does not address whether the home is staffed by the number of awake nighttime staff comparable to the number of staff the individual currently has at Fernald.
- According to the request, "Dr. Baldor suggests that a customized chair with back supports be available to prevent [the individual] from tumbling backwards during a seizure." Where will this chair be located? Day program in dining room? Work area? Residence in living room? Bedroom? Dining room? What if this individual has a seizure when seated elsewhere?
- The Court Monitor does not report on whether the individual will be transferred with one or more familiar staff or peer.

The Court Monitor comments that "my office visited the proposed community residence" for the individual, but does not evaluate whether the professional services and supports available at the home are equal to, or better than, the professional services and supports he currently receives at Fernald. The Court Monitor states that "the home will employ staff that are fully trained in

4

detecting and responding to epileptic seizures" suggesting that staff are not currently employed. This residence "will be home to four other men and two ladies." Is the contemplated residence currently operating so as to serve people with mental retardation? Finally, the request notes "the home has 24 hour nursing care" but does not describe the training of each nurse (R.N., LPN, Nurse Practitioner) and whether each nurse is assigned exclusively to this home and remains on site for each shift, 24 hours per day, 7 days per week.

The Court Monitor does not describe what records, if any, he reviewed for this individual. He describes a review of paper only by Dr. Baldor. Record reviews provide a limited view of the individual because the Department controls the Client File, including what is stored in the individual's working Client File, how long records are stored there, and all material stored in the archives. The Department controls whether, and how quickly, archival Client File materials are made available. The recent use of a computerized record-keeping system beginning June 2006 has further affected what professionals can document. Department Administrative staff instruct Fernald's professional staff on what they can, and cannot, document in the ISP, in assessments and more generally, in the DMR Client File.

In the absence of the Court Monitor's final report to the Court as directed to "advise the court as to whether past and prospective transfer processes employed by the Department of Mental Retardation comply with federal law, state regulations, the orders of this court," together with the limited review contained in this request as well as the precedent-setting preferential process employed, there is insufficient basis for the Court to allow the proposed transfer.

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(d) the Plaintiffs believe that oral argument will assist the Court and accordingly wish to be heard.

                                            Respectfully submitted,
                                            Fernald Plaintiffs
                                            By Their Attorney

Dated: January 31, 2007

                                             /s/ Beryl W. Cohen
                                            Beryl W. Cohen
                                            11 Beacon Street
                                            Boston, MA 02108
                                            (617) 742-3322
                                            B.B.O. 088620