UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT SIMPSON RICCI, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CA Nos.   72-0469-T (Belchertown) 74-2768-T (Fernald) 75-3910-T (Monson) |
| v. | ) ) | 75-5023-T (Wrentham) 75-5210-T (Dever) |
| ROBERT L. OKIN, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF INTERVENOR DISABILITY LAW CENTER'S
AND PLAINTIFF ARC'S JOINT MEMORANDUM OF LAW
IN SUPPORT OF THEIR JOINT MOTION TO MODIFY
THE COURT'S FEBRUARY 8, 2006 ORDER.**

Just a year ago, on February 8, 2006, the Court appointed United States Attorney Michael J. Sullivan to serve as Court Monitor for the above-captioned case to "advise the court as to whether the past and prospective transfer processes employed by the Department of Mental Retardation comply with federal law, state regulations, as well as the orders of this court." Court's Order dated February 8, 2006 ("February 2006 Order") at 1. The Court further stated that "[p]ending completion of Mr. Sullivan's inquiry, and his report to the court, all transfers from Fernald to other ICF/MRs and community residences shall be discontinued." February 2006 Order at 2. Unless modified, this injunction will prohibit the discharge of at least two individuals who wish to leave Fernald for alternative placements that the Monitor has determined will provide treatment that is "equal to or better" than what is provided at Fernald.

The Monitor has not yet completed his full inquiry or filed a report. However, he has filed two letters addressing the requests of family members and guardians of two unnamed

individual residents of Fernald Developmental Center to voluntarily move to homes in the community. Undated Letters to the Court from Michael J. Sullivan, United States Attorney, Documents 132 and 133, filed January 12, 2007. In each case, the Monitor, based on his own careful and methodical review and on the advice of expert physicians, has concluded that the individuals "can receive equal or better treatment" in the proposed programs.

The Monitor has informed counsel for the parties that he and his experts are reviewing the requests of approximately seven other unnamed individuals and/or their guardians to be discharged from Fernald. Some of these individuals have requested transfer to community programs, others have requested transfer to other institutional ICF/MR programs. It is possible that the Monitor will conclude that some or all of the requested programs will provide treatment that is equal to or better than the treatment provided at Fernald.

However, because of the February 2006 Order, neither the two individuals about whom the Monitor has already reported, or any individual for whom he finds the desired placement to be "equal or better," will be able to leave Fernald. Unless modified, the Order remains in effect until the Monitor completes his inquiry and reports to the Court.

The Fernald Plaintiffs have moved to extend the February 2006 Order to continue to enjoin the transfer of all Fernald residents. The Plaintiff Intervenor Disability Law Center, joined by the Plaintiff Arc of Massachusetts,[1] has filed an opposition to that motion and together they have filed a joint motion to modify the Order. By their motion, the Disability Law Center and The Arc seek to ensure that the two unnamed individuals may leave Fernald and that, in the future, other individuals who have requested discharge, and for whom the Monitor concludes transfer would lead to equal or better treatment, may also exercise their right to be discharged. At

---

[1] "Arc of Massachusetts" is the corporate name of the former Massachusetts Association for Retarded Citizens (MARC), one of the original plaintiffs in these consolidated cases.

2

such time as the Monitor completes his inquiry and files his report, the Court should consider whether to vacate, further modify, or extend its Order.

This memorandum is respectfully submitted in support of the Motion to Modify the February 2006 Order.

## Summary of Argument

Modifying the Order to allow certain individuals to leave Fernald to live in the community will be consistent with their wishes, the wishes of their families and guardians, and with their statutory and regulatory rights and previous orders of this Court.[2] First, modification will be consistent with federal and state laws that require community integration and the least restrictive placement for individuals with disabilities who have expressed a preference to leave the facility. Second, modification will be in harmony with the individuals' federal Medicaid rights to receive services promptly and to freedom of choice for services. Third, a modification will be consistent with Massachusetts' statutes and regulations that allow individuals who are voluntary residents to leave or withdraw from mental retardation facilities whenever they or their guardians desire.

## ARGUMENT

**I. FEDERAL LAWS REQUIRE COMMUNITY INTEGRATION FOR PERSONS WHO COULD BENEFIT FROM AND DO NOT OPPOSE COMMUNITY PLACEMENT.**

Consistent with Section 504 of the Rehabilitation Act, 42 U.S.C. § 794, Title II of the ADA, 42 U.S.C. § 12134(b), requires that public entities provide services to qualified individuals

---

[2] The moving parties suggest that the February 2006 order be modified to allow any class member who seeks discharge from Fernald and for whom the transfer would be appropriate to exercise that choice consistent with Department of Mental Retardation policies and practices. However, the legal arguments in support of the motion primarily but not exclusively address the rights of those individuals who desire transfer to programs in the community.

3

in the most integrated setting appropriate to each person's needs. The most integrated setting is defined in the preamble to the Attorney General's Title II regulations as "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, app. A, at 450. This is referred to as the "integration regulation" of the ADA. In June of 1999, the Supreme Court of the United States held that unjustified institutional segregation and isolation constitutes unlawful discrimination under the ADA's integration regulation. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999). The Court enunciated two legal principles that animate the ADA. First, it stated that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." Olmstead, 527 U.S. at 600. Second, "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." Olmstead, 527 U.S. at 601. The Supreme Court stated that the ADA's prohibition of discrimination may require the placement of persons with mental disabilities in community settings rather than in institutions. Therefore, modifying the Order will allow certain individuals to exercise their rights to community integration, in accordance with Title II of the ADA and Section 504.

## II. BOTH FEDERAL AND STATE LAWS AND THIS COURT'S 1993 DISENGAGEMENT ORDER REQUIRE FREEDOM OF CHOICE FOR SERVICES.

Without modification, the Court's February 2006 Order would mandate continued institutionalization for certain class members at Fernald and deny them the opportunity to receive equal or better community-based services that they and their families desire. Pursuant to federal and Massachusetts' Medicaid program rules and the Court's 1993 Disengagement Order, these

class members have the right to receive community-based services promptly, and the right to freedom to choice the services they receive.

Medicaid is a jointly funded state and federal program that provides medical services to individuals with low income pursuant to Title XIX of the Social Security Act. 42 U.S.C. §§ 1396 et seq. Although states are not required to participate in Medicaid, Massachusetts has a Medicaid program and it receives federal matching funds to provide services. In return, Massachusetts must comply with the Medicaid Act's requirements, including regulations promulgated by the United States Department of Health and Human Services ("DHHS"). 42 U.S.C. § 1396a; 42 C.F.R. §§ 430 et seq.

As part of its Medicaid plan, Massachusetts provides services such as intermediate care facilities for individuals with mental retardation ("ICF/MR"), defined as "an institution (or distinct part thereof) for the mentally retarded or persons with related conditions." 42 U.S.C. §1396d(d); see also 42 C.F.R. § 435.1009. Massachusetts also provides home and community-based care pursuant to the Home and Community Based Waiver ("HCBW") of Title XIX of the Social Security Act. 42 U.S.C. § 1915(c). Under the HCBW program, Massachusetts receives federal funds for services that will provide assistance in a home or other community setting for individuals who, but for the provision of these services, would require an institutional level of care. 42 U.S.C. § 1396n(c)(1); see also 42 C.F.R. § 441.300.

Since Massachusetts has chosen to provide ICF/MR and HCBW services, it must meet all the Medicaid requirements in implementing the services. As such, Massachusetts must comply with federal requirements to provide services "with reasonable promptness," 42 U.S.C. §1396a(a)(8),[3] and must allow persons with mental retardation the freedom to choose whether to

---

[3] The reasonable promptness provision has been held to be an enforceable right under 42 U.S.C. § 1983. Boulet v. Cellucci, 107 F. Supp. 2d 61, 72 (D. Mass. 2000); Doe v. Chiles, 136 F.3d 709, 719 (11th Cir. 1998).

receive services in a state-operated facility or in a community-based residence. 42 U.S.C. §1396n(c)(2)(C); see also 42 C.F.R. §441.302(d).[4]

Massachusetts must also comply with the Medicaid obligations pursuant to the Court's 1993 Disengagement Order. In that Order, the Court mandated that DMR "maintain its certification of state schools under federal Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., and maintain compliance with the Department of Mental Retardation's Title XIX obligations with respect to services in the community, for as long as the state participates in those programs for each facility or service as to which the state receives Title XIX funds." Id. DMR now cannot comply with its Medicaid or 1993 Order obligations at least in regard to the particular class members who seek discharge from Fernald unless the Court's February 2006 Order is modified as requested in this Motion. For the individuals who need and want services in the community, modification of the February 2006 Order will permit them to choose HCBW services and allow prompt access to those services.

**III. MASSACHUSETTS STATUTES ALLOW INDIVIDUALS WHO ARE VOLUNTARY RESIDENTS TO LEAVE OR WITHDRAW FROM MENTAL RETARDATION FACILITIES WHENEVER THEY OR THEIR GUARDIANS DESIRE.**

Laws and policies of Massachusetts do not allow the involuntary admission, commitment, or retention of individuals with mental retardation in state institutions. Sweeping amendments to the state's mental health code in 1970 were, among other things, designed to discontinue the practice of involuntary admission and civil commitment of people with mental retardation; to create an absolute requirement of voluntary admission processes for mental retardation facilities; and to establish the procedural and substantive requirements for both

---

[4] Courts have held that the freedom of choice provision is enforceable under 42 U.S.C. § 1983. See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 785 (1980).

voluntary and involuntary admissions.[5] Mass. St. 1970, c. 888 § 4, amending Mass. Gen. L. c. 123. Therefore, a Massachusetts resident may not be involuntarily institutionalized on the basis of his or her mental retardation. Instead, all residents of the state's mental retardation facilities are voluntary, admitted either by themselves or their guardians. Consequently, they have the right to leave the institution and cannot be retained against their will.[6]

Massachusetts statutes establish the procedural scheme and the substantive standards for the admission to and discharge of individuals from the state's mental retardation facilities.[7] The Legislature has stated unequivocally that "[n]o mentally retarded person may be retained at a facility except under the provisions sections six and seven [of chapter 123B]." Mass. Gen. L. c. 123B § 5. Pursuant to those sections, a person seeking admission, or his or her "duly authorized guardian," may make an application for admission to a facility. Mass. Gen. L. c. 123B § 6. The facility superintendent may admit and retain the person on a voluntary basis if "the person is in need of care and treatment and providing the admitting facility is suitable for such care and treatment." Id. Guardians may seek to admit their wards to mental retardation facilities only if a probate court has specifically granted them that authority.[8] Mass. Gen. L. c. 201 §§ 6A(b) and 14(b).

---

[5] The legislature ratified these standards in 1986 when it established a Department of Mental Retardation separate from the Department of Mental Health. Mass. St. 1986, c. 599 § 39, adding Mass. Gen. L. c. 123B and c. 19B.

[6] The Supreme Court has recognized that involuntary civil commitment to an institution for persons with mental disabilities is a "massive curtailment of liberty," Humphrey v. Cady, 405 U.S. 504, 509 (1972), which only may be accomplished upon the provision of due process of law. See, e.g., Jackson v. Indiana, 406 U.S. 715 (1972); Addington v. Texas, 414 U.S. 418 (1970); O'Conner v. Donaldson, 422 U.S. 563 (1975).

[7] Pursuant to its authority under Mass. Gen. L. c. 19B, § 7, the Department of Mental Retardation has designated the Walter E. Fernald Developmental Center as a "facility." 115 Code Mass. Regs. § 3.03.

[8] The court may grant such authority if it finds it to be in the "best interest" of the ward. Mass. Gen. L. c. 201 § 6A. However, the Supreme Judicial Court has interpreted § 6A to require, at least in cases where the ward objects to the admission, the probate court to authorize the admission or commitment only if the guardian can prove beyond a reasonable doubt that the ward meets the legal standards for civil commitment. Doe v. Doe, 377 Mass. 272, 385 N.E.2d 995 (1979). Since the state's law does not allow for civil commitment of a person with mental retardation

A person retained in a facility under the voluntary admission procedures "shall be free to leave such facility at any time." Mass. Gen. L. c. 123B § 7.[9] If the person's guardian requested the admission, the guardian "may withdraw the person at any time."[10]

In addition, in Massachusetts, a person with a mental disability may not be involuntarily restrained, or denied his or her liberty, if there is an appropriate less restrictive alternative available. This rule applies equally to people with mental retardation and those with mental illness and is reflected throughout state statutes, case law, and regulations. For example, every person in the care of the Department of Mental Retardation is entitled to at least an annual periodic review under the supervision of the superintendent. The periodic review must consider, among other things, "all possible alternatives to continued residential care," including available community resources. Mass. Gen. L. c. 123B § 4. Similarly, a guardian may not be appointed for a person who "is incapable of making informed decisions" due to mental retardation if there is a sufficient less restrictive method of protecting the person and his or her estate. Mass. G. L. c. 201 § 6A(a). The requirement appears explicitly as an element of civil commitment of persons with

---

unless s/he is also mentally ill, it appears that a probate court may not authorize a guardian to admit an objecting ward to a mental retardation facility nor to prevent a guardian from removing the individual from a facility. See John H. Cross, Robert D. Fleischner, and Jinanne Elder, Guardianship and Conservatorship in Massachusetts, 223-76 (Lexis 2d Ed. 2004). Therefore, applications for admission by authorized guardians of their non-objecting wards are appropriately treated by the Department of Mental Retardation as voluntary admissions.

[9] Under State law, the superintendent may also discharge a person even if the person or the guardian has not requested discharge. If a parent or guardian made the application for admission, the parent or guardian must be provided fourteen days' notice of the proposed discharge. Mass. Gen. L. c. 123B § 6. If the discharge is for the purpose of transferring the individual from one residential facility to another, the Department is required to consult with the guardian or the nearest living relative and, except in an emergency, to provide 45 days' prior notice. If the guardian or family member objects, the transfer may not take place unless the Department prevails at an adjudicatory hearing. Mass. Gen. L. c. 123B § 3.

[10] The only procedural requirements are that the notice must be in writing, that the superintendent "may restrict the right to leave or withdraw to normal working hours and weekdays" and, in his discretion, may require three days' written notice of the intention to leave or withdraw. Mass. Gen. L. c. 123B § 7. If three days' notice is required, the facility may conduct an examination of the individual to determine his or her "clinical progress, [his or her] suitability for discharge and to investigate other aspects of [his or her] case including [his or her] legal competency and [his or her] family, home or community situation." Id. The statute is silent on what, if any, action other than discharging the person as requested, the superintendent may take after the examination, if one is conducted.

mental illness. Mass. Gen. L. c 123 § 1. While finding no need to hold that the doctrine is constitutionally mandated, the Supreme Judicial Court has noted that "[r]egardless of the constitutional place of such a doctrine, either in general or in the particular context, we think it natural and right that all concerned in the law and its administration should strive to find the least burdensome or oppressive controls over the individual that are compatible with the fulfillment of the dual purposes of our statute, namely, protection of the person and others from physical harm and rehabilitation of the person. The statute lends itself to this quest." Commonwealth v. Nasser, 380 Mass. 908, 917-18, 406 N.E.2d 1286, 1291 (1980).

Thus, modification of the Court's February 2006 Order to allow individuals who want to leave to be discharged would be consistent with state law.

**CONCLUSION**

Unless modified, the Court's February 2006 Order puts state officials in the untenable position of choosing between obeying the Court's order or the valid federal and state laws discussed in the proceeding sections. For that reason and for the other reasons stated above, the Court should modify the February 2006 Order to allow the Department of Mental Retardation to discharge such individual class members who, on their own behalf or through their families and/or guardians, have requested transfer to other facilities or programs and for whom the Monitor has determined that the individual can receive equal or better treatment in the requested program. As modified, the Order should remain in effect pending the completion of the Monitor's inquiry and report to the Court.

<table>
<tr><td>Dated: February 14, 2007</td><td>Respectfully Submitted,<br>DISABILITY LAW CENTER<br>By its attorneys,<br><br>/s/ Richard M. Glassman<br>Richard M. Glassman (BBO # 544381)<br>Stanley J. Eichner (BBO#  # 543139)<br>Disability Law Center, Inc.<br>11 Beacon Street, Suite 925<br>Boston, MA 02108<br>(617) 723 8455<br>rglassman@dlc-ma.org<br>seichner@dlc-ma.org<br><br>ARC OF MASSACHUSETTS<br>By its attorneys,<br><br>/s/ Steven J. Schwartz<br>Steven J. Schwartz (BBO # 448440)<br>Cathy E. Costanzo (BBO # 553813)<br>Center for Public Representation<br>22 Green Street<br>Northampton, MA 01060<br>(413) 587-6265<br>sschwartz@cpr-ma.org</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

**Fernald/Monson/Belchertown Classes**
Beryl Cohen, Esq.
11 Beacon St., Rm. 900
Boston, MA 02108

**Wrentham Class**
Margaret M. Pinkham
Daniel J. Brown
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

**Dever Class**
Cornelius J. Moynihan, Jr., Esq.
Nixon Peabody, LLP
100 Summer Street
Boston, MA 02110

**Office of the Attorney General**
Robert Quinan, Esq.
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108

**Department of Mental Retardation**
Marianne Meacham, General Counsel
Commonwealth of Massachusetts
Executive Office of Health & Human Services
Department of Mental Retardation
500 Harrison Avenue
Boston, Massachusetts 02118


Dated: February 14, 2007                                /s/ Richard M. Glassman
                                                        Richard M. Glassman