March 5, 2007

William F. Gear
109 Neponset Avenue
Roslindale, MA. 02131

Ms. Gail Gillespie
Regional Director
DMR Metro Region
200 Trapelo Road
Waltham, MA 02452

Dear Ms. Gillespie:

In your letter dated 3/1/07 you write: *First, I would like to respond to your statement that services being provided to Gena are not "equal to or better" than services provided to individuals in an intermediate care facility for the mentally retarded (ICF/MR). As Gena's guardian you have refused services offered and recommended by the department for Gena for the last several years. You have instead chosen for Gena to live with you, refusing all residential program models offered, as well as recommended day programming."*

I will direct you to Dr. John Julian's Psychiatric Consultation Follow-up letter of 6/15/06. Dr. Julian wrote; ... *" In conclusion, I find the patient markedly improved from my evaluation three years ago both based on clinical observation and history reported by father. It may be that my previous diagnosis of impulse control disorder NOS and post traumatic stress disorder have now gone into remission. However, the patient has been in a very supportive low stress environment for these last three years and it is unclear how she might respond to major changes in her routine or environment."*

Gena's guardians and advocates trust Dr. Julian's opinion and have been trying to implement his suggestions. The model that has been instrumental in Gena's successful remission was a Staffed Living Arrangement. The DMR funded 24/7 staff, paid Gena's utilities. This model was administered by the Shriver Clinical Services Corp. under the direction of Conrad O'Donnell, and worked well to get Gena into remission. This was in force until the DMR arbitrarily and unilaterally decided to change the model to the Family Support Model. Gena's guardians had no choice in the matter of selection of options (3). We knew that we didn't want to go against Dr. Julian's suggestions by placing her into the Fernald, or a group home. We knew that Gena was doing well in her current environment and did not want to risk changing it.

The Department's offer, in essence, removed the plan that was working for Gena, a Staffed Living Arrangement, and replaced it with a Family Support Model. The staff was cut in half, forcing Gena's father to work 63 hours per week to cover the shortfall in supports.

You wrote: *"As Gena's guardian, you have refused services offered and recommended by the Department for Gena for the last several years. You have instead chosen for Gena to live with you, refusing all residential program models offered, as well as recommended day programming."*

It should be made clear that Gena's household is her household, not mine. I hire, train and supervise Gena's staff. From time to time I cover for late or absent staff. I watch over things and create a safe place for Gena to live. I am retired and would like to reclaim my life. This would require the DMR to return rationed supports to Gena. It isn't fair to force me to give up my freedom to make up for the Department's failure to provide Gena her Ricci Class Client supports that have been referred to as entitlements that are guaranteed, enforceable, and not subject to appropriation.

If it is not about the money, as Marianne Meacham, DMR General Counsel, stated in Judge Tauro's Court Feb. 2005, (p.11, line 7,8,9 transcript) *"Our sole concern is that Gena receive appropriate services. We want to facilitate that. We understand cost is not an issue here";* then it is about the Plan, the Model, or the hybrid, or some way to reinstate the supports that were working for Gena. There must be a better way. Gena has not had an ISP implemented for the last 10 years. For many of those years the Department failed to even write an ISP for Gena. The only valid ISP that was signed off on by Gena's guardians was the 2002 ISP. Before that time, from 1996 to 2002, there was no ISP written. The Department failed to implement the 2002 ISP because of budgetary reasons. This was appealed and the hearing officer acknowledged that the primary reason the 2002 ISP was not implemented was budgetary. The appeal was "Allowed" by the Commissioner.

The Department has proposed several ISP documents since Gena's successful ISP appeal. All the proposals call for Gena to be placed away from her home. This is contrary to the written directive of Dr. Andre Blanchet, Gena's medical safeguard. Dr. Blanchet wrote a letter on this subject on September 16, 2002.

*As Director of the Medical Safeguarding Program at Shriver Clinical Services, I have known Gena Gear for over six years.*

*Following the serious incidents that Gena suffered while she was in a group home, Gena has developed a Post Traumatic Stress Disorder. Any attempts of returning her to a group home situation put her at risk of reactivation of the traumatic experience and creating severe clinical and emotional problems. This should be absolutely avoided"*

*If in need of more information, please contact me at 781 544 1373.*

*Truly Yours,*

*Andre Blanchet MD*
*Shriver Clinical Services*

Under *Other Service Models Available for Gena*

### *Staffed Living Arrangement*

*The Department cannot support your request to share living with Gena in a 24 hour staffed living arrangement funded by the department.*
This is unfortunate for Gena. The only model that has worked for Gena is the Staffed Living Arrangement, the model that caused Gena to be in remission. This model has been denied Gena. Why would the Department fail to provide the supports that are known to work well for Gena? Is it the budgetary concerns? Its not supposed to be, but there seems to be no other way to see this that makes any sense.

### *Vacation Staffing*

*As we have in the past, the Department will fund one week's vacation staffing for Gena. You are free to choose to vacation in Canada longer than one week but the Department will not fund staffing for longer than one week.*

For most of the last ten years, Gena has spent approximately 10 weeks in my home at Cape Breton. She thrives there, loses weight from all the activity there, she has also developed a sense of self confidence and alertness from the pleasant environment she experiences there. Gena's 2002 ISP calls for freedom to travel. It was removed from all subsequent ISP documents written since that time, none of which was signed off on by Gena's guardians. To deny Gena this treasured support seems short sighted and single minded.

### *Community Integration*

3

*You have identified ongoing issues with Gena's ability to access the community due to her fear of leaving the vehicle once a destination is reached as a barrier to community activities. Gena's provider, Bay Cove, has requested your assent to creating a desensitization and behavior plan which would allow Gena to get accustomed to going outside by using positive reinforcers. This would allow Gena to have the recommended evaluations proposed by Dr. Julian such as the Sensory Integration Evaluation, an EEG, the Genetics evaluation and the Occupational Therapy evaluation.*

I have no problem with the Bay Cove creating a desensitization plan to help Gena. I have tried this with Dr. Blanchet and Ms. Allard, and others, for many years without success, but I am willing to allow Bay Cove to try a desensitization plan. As far as a behavior plan is concerned, we would have to consult Gena's psychiatrist before agreeing to this request. He removed the recommendation for a behavior plan on Gena's most recent evaluation. So, the behavior plan is off the table. It seems that every time Gena's guardians disagree with you, a request is made for a behavior plan.

In view of the simplicity of the resolution to this ongoing matter, we would appreciate the DMR restoring Gena's supports.

William F. Gear
Co-Guardian for Gena Gear

P.S  I will be in attendance march 7, 2007