**THOMAS J. FRAIN**
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740
TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

Thomas J. Frain
Walter J. Hayes, Jr.

January 6, 2006

<u>VIA FEDEX</u>

Beryl W. Cohen, Esq.
11 Beacon Street
Boston, MA 02108

      Re:    <u>Daniel Stefaniak; Community Placement</u>

Dear Attorney Cohen,

      This letter is to make you aware of some of the issues facing Danny Stefaniak and his family as he makes the transition from the Fernald Center to a state operated residence in the community.

      There was an ISP meeting regarding Danny Stefaniak on December 21, 2005. The state operated residence is a split level residence with four persons upstairs and four persons downstairs. Daniel lives upstairs and he has two other roommates. There is one vacancy on Daniel's floor due to a death. Each person has his or her own bedroom. The same "house manager" supervises the whole group home. There are separate kitchens and staffing schedules for each floor, although as discussed below, the two staffs are counted as one in certain situations and at certain times. All of the staff are DMR employees. The foregoing was the first ISP meeting since Danny left Fernald. His day program is run by Seven Hills, a DMR vendor. The following are the issues which *may* be deemed a violation of the *Ricci v. Okin* closing order's "equal or better standard" (although it should be noted that the proposed ISP is not due until January 20, 2006 and therefore it is possible that each of these issues will be resolved):

      In the consent decree, there were apparently referenced documents called "scopes of work," at least one of which mandated that there be separate toileting facilities for men and women. As I understand it the so-called "scopes of work" were not part of the closing order but I would imagine same was relied upon by class representatives while negotiating the closing order's language. My client believes that many of the "scopes of work" regarding privacy may have been destroyed illegally by the Department because they cannot be located. We have attempted – via searches of the active *Ricci v. Okin* active docket as well as the archived docket – to find these documents. We have been unsuccessful. There is a long history to this and I have enclosed a cover letter dated March 29, 2005 drafted by my client and dealing in part with this issue and the Final

THOMAS J. FRAIN
ATTORNEY AT LAW

Beryl W. Cohen, Esq.
January 6, 2006
Page 2

Consent Decree. Although there was no prohibition against men and women living in the same residence, they were supposed to have privacy — so called "discreet areas" — going to and from the single sex bathrooms. None of this was honored at Fernald although it has long been a subject of concern for Ed Stefaniak, Danny Stefaniak's guardian. Danny's group home does not have single sex bathrooms. There are two bathrooms on each floor but only one has a shower so when there are men and women residents both use the same bathrooms for toileting and showering purposes. We requested that the ISP state that the second floor — on which Danny resides — be limited to male residents in order to comply with the issue of "discreet areas."

We asked that it be inserted into the ISP that Pleasant Terrace remain a state operated group home served by state employees as that would seem the only way to ensure "equal or better." This particular group home has a core group of long serving DMR staff. While they are not well paid, the pay and benefits received as a DMR employee are far better than received as a vendor employee. Also, because turnover is lower, experience levels are higher in state operated group homes than in vendor operated residences. A host of other issues arise in vendor operated group homes, none of which would be good for Danny. It would seem to me to be a clear violation of the "equal or better" standard for Fernald residents to end up in vendor-operated group homes.

During the foregoing ISP there was also a discussion about staffing ratios. I told the assembled "team" that I believe that even with three residents on the second floor — as is presently the case - it was mandated under DMR regulations that there be a minimum of two staff overnight. There was a discussion on this issue between me and the "team" and the team stated that they were compliant and I said that they were not. I said that as this issue was directly impacting Danny's transition, that I would be reporting these issues to you as counsel for the Fernald parents.

115 CMR 7.06 (3)(a) states: "[r]egardless of the capacity of the home, the number of staff shall be sufficient to enable all individuals to evacuate with or without assistance within 2½ minutes, *without the necessity of staff who have evacuated returning*, in accordance with professionally accepted fire safety procedures." [Emphasis supplied] 115 CMR 7.06 (3)(d) states: "[i]n homes where three or four individuals live and in which *three or more individuals require assistance to evacuate within 2½ minutes*, there shall be at least two staff persons on duty at all times except at such times when only one individual is present in the home." [Emphasis supplied] All residents on Danny's floor require assistance vacating the home. DMR maintains that even though they have only one staff member over night on Danny's floor, they have two on the first floor. Thus, in an emergency this person from downstairs could come upstairs. My reply was that practice did not conform with the foregoing regulation.

THOMAS J. FRAIN
ATTORNEY AT LAW

Beryl W. Cohen, Esq.
January 6, 2006
Page 3

The prior ISP for Danny Stefaniak – the last held at Fernald – discussed his other Fernald supports which included full time doctors, nurses, dieticians as well as occupational and physical therapists. The team reported that for Danny's new group home there are 20 **_hours_** of nurse practitioner time covering 23 group homes in the area. There is also an RN level II with 20 **_hours_** for Danny's residence alone. There is a RN level IV staff position with 20 **_hours_** for seven (7) group homes, of which Daniel's is one. There is a full time LPN scheduled to be on staff at Daniel's group home – forty (40) hours - but that position is vacant.

There was a discussion about how Danny's program is being billed. I told them again that this would also be a *Ricci v. Okin* issue because if it was **DMR** funds being used instead of funds paid by Center for Medicare and Medicaid Services then it would seem that the funding for Daniel would be far more vulnerable to cuts and privatization.

Again, while I am bringing the foregoing to your attention, all of these issues may be resolved when we get the ISP which under the regulations is due on January 20, 2006. I will keep you apprised of this situation.

Thank you for your attention and time in this matter. Please feel free to call me with any comments or questions.

Sincerely yours,

Thomas J. Frain, Esq.

TJF/nc
Enclosure

cc:   Ed Stefaniak – Via First Class Mail
      Colleen Lutkevich, COFAR – Via First Class Mail