**Walter E. Fernald Corporation**
**Board of Trustees**
200 Trapelo Road
Waltham, Massachusetts 02452-6302

George Mavridis, President

May 11, 2007

Honorable Joseph L. Tauro
United States District Judge
Courtroom 20
John J. Moakley Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

Civil Action: Robert Simpson Ricci, et al., Plaintiffs
        v. Robert L. Okin, et al., Defendants

        72-0469-T; 74-2768-T; 75-3910-T
        75-5023-T; 75-5210-T

Subject:    Walter E. Fernald Corporation Trustees Response
           To Monitor's Report dated March 6, 2007

Dear Judge Joseph Tauro,

I am writing on behalf of the Walter E. Fernald Corporation Trustees. As you know, our predecessors founded the first publicly-funded institution serving the mentally retarded in the Western Hemisphere in 1848 as the Massachusetts School for Idiotic and Feebleminded Youth. In 1888 the School moved to Waltham, and in 1925 it was renamed the Walter E. Fernald State School in honor of its long-time superintendent. When the operation of the School became a responsibility of the Commonwealth, our Corporation remained in existence for the purpose of providing assistance to the residents of the Fernald and Templeton Development Centers. To this end, the Corporation retained assets in the form of funds and real estate, Today the Fernald Developmental Center is governed under, and complies with all of the regulations of Title XIX of the Social Security Act. (Background information on individual Trustees is attached as Enclosure 1.)

We believe that with your leadership and that of Governor Patrick we can continue to provide our retarded citizens with the care and services they require, in the home of their choice, without imposing an undue burden on the rest of our fellow citizens. We believe that there are important reasons for the Commonwealth to maintain Fernald as the home for some of its most profoundly handicapped residents.

We are submitting our comments about United States Attorney Michael Sullivan's report to you dated March 6, 2007. Our comments are focused on the conclusions of Attorney Sullivan, as expressed in Section 5 (pp 24 – 27) of his report. For your convenience, this section of the report is attached as Enclosure 2. Six key conclusions of Attorney Sullivan's report, which we support, include:

1. "The plaintiffs...claim that given the high level of sexual and physical abuse in the community, lack of accessibility to medical and dental services, along with high staff turnover and potentially less qualified staff, residential community homes are not the answer for many residents. Another concern is that although individuals in community residences supposedly have access to community activities, residing in the community does not guarantee that an individual will be integrated into the community. ...

2. For the severely mentally retarded....a loss of familiar surroundings and most importantly people, could have devastating effects that unravel years of positive, non-abusive behavior. ... Change for most of us comes at a cost, for the most vulnerable, the slightest change can have dramatic and permanent consequences.

3. We cannot imagine after residing in a home for thirty, forty or fifty years, and finally getting it to the point where you feel comfortable, stable and secure, that you are now told to pack up and move with potentially more moves to endure. Any of us would be outraged. ... There are other options that can address excess capacity and achieve some savings without resorting to closure of this facility.

4. At Fernald, it may be possible to group the homes and work sites of Fernald residents by dividing the buildings north of Pine Street and west of Cherry Lane and condense the campus. The Commonwealth could then sell the remainder of the land for residential development. DMR could also build some new residential homes on the land and have support services for these residents at Fernald.

5. Servicing individuals with mental retardation in ICF/MRs and the community each offers advantages and disadvantages to both systems. The model across the United States appears to be shifting toward housing the mentally retarded in community residences. Despite this trend, the strength that Massachusetts holds is allowing families to have a choice for their family members and wards. ... Our office was amazed at the many residents at Fernald that have lived there for thirty, forty and fifty plus years. Many of the State workers can boast twenty or thirty years tenure at Fernald. These employees have become more than individuals waiting to achieve the benefit of State retirement, they are family to the residents who rely on them every day for the most basic needs that we take for granted. Breaking these decade long bonds is not the solution these residents deserve, nor should they be forced to experience countless moves given the conditions they had to endure before the Court's intervention. ... The quality of life for the ICF/MR residents is excellent, and this Court's persistence and insistence, over the past three decades, in raising the level of care for the mentally retarded is certainly remarkable. ... As a result of a year long investigation, our office has concluded that some of the residents at Fernald could suffer an adverse impact, either emotionally and/or physically, if they were forced to transfer from Fernald to another ICF/MR or to a community residence. Our office would recommend the implementation of a development plan that would enable Fernald to remain open and provide services to some of the Commonwealth's most vulnerable citizens.

> 6. In summary, based on our review of all the conditions that are considered for 'equal or better' services, it is the opinion of the Monitor that residents should continue to have the opportunity and option to move from Fernald to other ICF/MRs, or to a community residence, provided that the Certification Process is enforced. Additionally, and most importantly, considering the uniqueness of each of the ICF/MRs, and the vulnerability of the residents, Fernald residents should be allowed to remain at the Fernald facility, since for some, many or most, any other place would not meet an 'equal or better' service outcome."

It is our firm belief that the Commonwealth needs, and will continue to need, Fernald as an intermediate care facility for approximately 300 residents, and its other medical and social services that are currently being used by Fernald residents and mentally retarded individuals living in the community.

Enclosure 3 is a plot plan of the present Fernald campus, a plot plan of a minimum campus with today's unnecessary buildings in outline and a report Mavridis prepared December 9, 2004. We acknowledge that 186 acres of land on Trapelo Road in Waltham exceeds the need of the present 189 Fernald residents and 29 residents of the Marquardt Nursing Center. Instead, we concur with Attorney Michael Sullivan and advocate consolidating the Fernald programs in the west quarter and redeveloping the remainder of the property to be compatible with the neighborhood. Mr. George Mavridis originally suggested this concept to several other concerned groups as well as to Attorney Sullivan.

Today, the Greene Building's Duhamel Therapeutic Pool which is used daily by residents and staff (approximately 125 per month), and the community – most often other facilities and organizations serving disabled citizens. The George Hunt Gym is used regularly by local schools for basketball programs, volleyball leagues and table tennis clubs, with each entity providing a substantial donation toward the maintenance of the Greene Building facility and to the benefit of the residents. The Donnell Ball Fields is used in a fashion similar to the gym: priority is given to groups serving disabled citizens, then children and finally adults. Substantial donations are made to assist in upkeep and to benefit the residents. Fernald's day and work programs employ many individuals living in the community, as well as residents of the facility.

Additionally, the 186-acre Fernald campus is home to the Tufts Dental facility, UMASS Medical School's Shriver Research Center; three family homeless facilities serving almost 300 homeless women and their children; and the Marquardt Skilled Nursing Home for mentally retarded individuals who are chronically ill and dying.

We believe that there will be other creative uses for at least some of the land that might be available following the consolidation of Fernald's ongoing functions in a portion of the site. For example, we endorse Waltham Mayor Jeanette McCarthy's proposal to maintain the Fernald Center and to create on a portion of the remaining land a National Historic Park and Site to honor the mentally handicapped throughout our nation. Mayor McCarthy outlined this proposal in a letter to Governor Romney dated April 18, 2006, of which you received a copy.

We respectfully ask that you review Attorney Michael Sullivan's recommendations in Section 5, Pgs. 24 – 27 in conjunction with Mayor McCarthy's proposal. In 2003 Fernald was the home of approximately 300 severely or profoundly retarded individuals. Today, only 189 remain at the facility. In addition to

advancing age, most have additional medical or behavioral complications and have called Fernald "home" for decades.

Attorney Michael Sullivan described the community atmosphere he felt during his Fernald visits but some of the additional community events that he did not have time to witness include:

- Monthly birthday parties in the Activity Center (celebrating the birthdays of all residents having a birthday in a given month).
- Employee-of-the-Month selection and recognition.
- Seasonal and holiday parties, including but not always limited to Valentine's Day, St. Patrick's Day, Halloween (including a "haunted house" and pumpkin painting contest), and Christmas.
- Annual "theme celebrations", including but not always limited to the following: Hoe Down (complete with wheelchair-square dancing in the gym), Young at Heart Ball, Corn festival, Summer Festival (including entertainment, such as magicians, mimes, bands, jugglers, and stilt walkers).
- Annual Fernald Center Recognition Dinner with awards and special tribute to residents, staff and volunteers.
- Annual Memorial Services at Fernald's Chapel of the Holy Innocents for deceased members of the Fernald Community.
- Annual Greene Building Holiday Reception funded by the George Hunt Fund.
- Preparation of the Annual Holiday Wish-List (and fulfillment of it with donations from dozens of area businesses, churches, schools, non-profit and charitable organizations, and individuals and much shopping by volunteers).
- Summer concerts at the gazebo, given by volunteer musicians.
- Adaptive computer lab used by the residents. The Activity Center lab was established through donations of organizations and individuals.

We also believe that some members of the future generations of citizens with mental retardation will require the services available at Fernald. They did not live at Fernald prior to the Ricci v. Okin lawsuit, which addressed many of the Center's deficiencies. Therefore they do not need the protection of being included in the Ricci class but they deserve to enjoy the services of the renovated Fernald when and if a need arises. We recommend future open admissions at Fernald but without Ricci Class Membership.

In contrast to what the Court has heard from other groups, we strongly believe that in respect to whether Fernald remains open, we are dealing with a basic issue of rights.

Thank you for taking the time to read our comments concerning Attorney Michael Sullivan's report to the Court. If you have any questions or concerns about our comments please call or write and we will be happy to clarify our position.

Sincerely,

George Mavridis
Fernald Corporation President

P.S. Please direct all questions and comments to:

George Mavridis
202 Brooksby Village Drive Unit 308
Peabody, Massachusetts 01960-8517
978 535 4322 (voice & facsimile)
gmavridis@verizon.net

Enclosures:

1. Trustees Biographies
2. Section 5 of Court Monitor's Report
3. Proposed Plot Plan and Report

cc:    Governor Deval Patrick w/ enclosures
       EOHHS Secretary JudyAnn Bixby w/ enclosures
       Jean McGuire,
       DMR Interim Commissioner

Enclosure 1, Biographies

**Lincoln Boyden** lives in Belmont and became a Trustee of the Fernald Corporation in 2001. He retired from the private practice of law in 1996 and has subsequently volunteered his services at Cambridge and Somerville Legal Services, where until 2003 he has helped low income residents with housing problems, such as eviction and loss or denial of subsidized housing.

**Eduardo Cordeiro** is Vice President and General Manager at Cabot Corporation for one of their three core businesses – Cabot Fumed Metal Oxides. He is a graduate of Harvard Business School and Harvard University and is a United States naturalized citizen of Colombian and Indian descent. He was elected to the Board of Trustees of the Fernald Corporation in 2004.

**Peter Donovan** has been the Chief Executive Officer at Middlesex Human Service Agency, Inc. since 1984. Prior to that, he was an alcoholism counselor, an Assistant Executive Director, and then Executive Director at several different alcohol and substance abuse facilities. His special skills include program management, mediation/negotiation, fund raising, and individual/group and family counseling. He is currently serving as a Trustee of the Fernald Corporation.

**Thomas J. Frain** has been President of the Massachusetts Coalition of Families and Advocates for the Retarded, Inc. (COFAR) since November of 1999. His brother is a client of the Department of Mental Retardation, residing in a state-operated home. Tom is an attorney in Bolton, Massachusetts, specializing in domestic relations, real estate law, litigation, corporations, and estate planning. Prior to private practice, he served as a Staff Attorney for the Boston Stock Exchange; before attending law school, Tom worked as a money market and fixed income securities trader for two Boston-based financial institutions.

**Edward Haddad** joined the Fernald League in 1958 after his sister-in-law was admitted to the Walter E. Fernald State School. He has served in many capacities with Fernald organizations over the years, including the Advisory Board where he served as President and chaired the Building Representatives and Human Rights Committees. He was selected to help form COFAR and served on their executive board for many years. He is currently a trustee of the Fernald Corporation.

**Robert Heineman** has been a Trustee of the Fernald Corporation since 1996 and is the current Vice President. He is a graduate of Dartmouth College and Harvard Graduate School of Design and is a registered architect who specializes in the design of health care and senior living facilities. He also serves on several other non-profit boards including the Gloucester Community Development Corporation.

**Martin S. Klein** served for 30 years as President of Institutional Strategy Associates, Inc., a firm specializing in management, planning and governance issues in health care and higher education. He had previously served as Vice President of The Boston Consulting Group, where he was responsible for that firm's work with government agencies and nonprofit organizations. His community activities have included membership on the boards of Mount Auburn Hospital, the Harvard Community Health Plan and the HCHP Foundation, the Visiting Nurse Association of Boston, the Big Sister Association of Greater Boston, and the Cambridge Center for Adult Education. Martin is a graduate of Harvard

College and Harvard Business School, and was a Fulbright Scholar at the Australian National University.

**Laurie Lindstrom,** is serving as the Chief Operating Officer of the Middlesex Human Service Agency, Inc. ("MHSA") which operates the three (3) shelters for homeless women and their children at the southeast end of the Fernald campus. Also, Laurie is a member of the Board of Directors of the Fernald Association, and a past Director of Marketing for the Greater Waltham Association for Retarded Citizens.

**George Mavridis** is a cousin and guardian of a former (39-years) Fernald resident with Down syndrome, who now lives in a state operated group house in Lynnfield. He is the Ricci plaintiff representative for the Fernald residents, past presidents of the Fernald League for the Retarded and COFAR. Mavridis is President of the Walter E. Fernald Corporation and has served on other Department of Mental Retardation committees as well. He is a retired registered professional structural engineer.

**Peter O'Meara,** a current Trustee of the Fernald Corporation, has been involved in serving and supporting people with mental retardation and their families for 36 years and has worked as an administrator of services in three states. He was the Superintendent of the Fernald School from 1985-1995. He serves in the cabinet of Governor M. Jodi Rell of Connecticut as the Commissioner of Mental Retardation. Peter is a graduate of Villanova University and Boston College Graduate School of Social Work and is a licensed Nursing Home administrator in Massachusetts and Pennsylvania.

**Johanna Smith** is an attorney with over 20 years of experience representing individuals and companies of all sizes in connection with business matters, including primarily low-income housing projects. She is currently Associate General Counsel at The Community Builders, Inc., a non-profit developer of low-income housing. She also serves as a co-president of Foundations for Faces of Children, a non-profit organization providing education and information services for families of children with craniofacial anomalies, and is a former member of the Belmont Conservation Commission. She is currently serving as Trustee and Treasurer of the Fernald Corporation.

**James Staton**, presently a Trustee of the Fernald Corporation, for over 30 years held senior management positions in healthcare organizations, including Brigham and Women's Hospital, Massachusetts General Hospital, and the New England Healthcare Assembly. He is active in Belmont-based volunteer organizations, including the Belmont Historical Society. Jim has degrees from the University of Virginia and Duke University and attended the Advanced Management Program at Harvard Business School.

## Enclosure 2, Section 5 of Court Monitor's Report

The Monitor's Final Assessment

DMR's directive to close Fernald has come with an offer by DMR for any resident seeking to remain at an ICF/MR, having the option of transferring to another ICF/MR. All of the ICF/MRs are Title XIX certified and DMR claims that they all have the capacity to potentially meet the need to provide equal or better treatment, care, professional services and medical treatment to all of the Fernald residents. With the appropriate involvement of family members and/or guardians, each resident at Fernald could be transferred to another ICF/MR to achieve the objective of closing Fernald, but clearly at a cost to individual residents. In this respect, DMR can duplicate the basic services and medical treatment for any resident at any of its ICF/MRs. Unfortunately, this solution does not solve the underlying problem.

The true issue plaguing the plaintiffs as a whole runs much deeper than simply transferring all of Fernald's residents to another ICF/MR. For many residents, Fernald is their home, the average age is 57 years, the average length of stay is 47 years, the oldest resident is 95 and has been there for 81 years. The question is simply after all these years at this facility will their lives be equal or better if transferred elsewhere? As the guardians are getting older, they express both a fear and a mistrust. The guardians have expressed a fear of who will care for their loved ones, and a mistrust of whether promises made today will be broken in the future. The plaintiffs also claim that given the high level of sexual and physical abuse in the community, lack of accessibility to medical and dental services, along with high staff turnover and potentially less qualified staff, residential community homes are not the answer for many residents. Another concern is that although individuals in community residences supposedly have access to community activities, residing in the community does not guarantee that an individual will be integrated into the community. The plaintiffs fear that following Fernald's closing, Wrentham, Monson, Hogan, Glavin and Templeton will soon follow. The plaintiffs hold a genuine fear of years and years of shuffling sons, daughters and wards in an attempt to stay ahead of the next closure before being forced into community residences.

This very fragile segment of the Massachusetts' population strives for simplicity and constants to thrive and conduct their daily lives, and the threat of change does have an impact on the physical and emotional health of some of the residents. Similar to our old shoes that fit just right, or that favorite reclining chair that has molded perfectly to a body over the years, or the room and building we have spent our life calling home and those around us we consider family and friends, we all seek familiarity to ground our lives. We cherish these items for the indescribable comfort that they provide. For the severely mentally retarded, such a loss of familiar surroundings and most importantly people, could have devastating effects that unravel years of positive, non-abusive behavior. Moreover, the joy that each of us experiences from seeing the same person who serves morning coffee at the coffee shop, or that neighborhood person who greets you every morning for the past umpteen years, is also experienced ten fold by, in many cases, this segment of the population that has been cared for by the same State workers for ten,

twenty and even thirty years in the ICF/MRs. Change for most of us comes at a cost, for the most vulnerable, the slightest change can have dramatic and permanent consequences. Our office has been touched by the families willing to share their stories with us over the past year. The story of one mother and father who showed love and support for their son/daughter, and concerned that the closure of Fernald would mean a mad rush for the choice locations, decided to move their child. Their child had been cared for brilliantly at Fernald for over 40 years. Within one year, they received a call that their child was found on the floor and had died. Today, they ask themselves, in an attempt to do the right thing, had they failed their child by moving him/her after so many years of him/her flourishing at Fernald? The same fears grip others and for two Sundays and over twelve hours our office listened to such concerns by no less than 200 caring parents, sisters, brothers, aunts, uncles, guardians, nieces, nephews and friends.

Our office has been inundated with pleas to keep Fernald open since now, through the Court's intervention, Fernald is a much different place and has reached respectable levels of care.

On one particular Sunday our office spent six hours listening to stories portraying Fernald during those dark years when the conditions were atrocious. Now, they proclaimed, Fernald is a place where people can thrive and truly call home. Faces are familiar and people have brought laughter to the halls and the programs. On another Sunday we were invited to morning Service by Father William Leonard. We were moved by the outpouring of young volunteers from the community that wheeled residents from the Green building across the street to the Chapel for Sunday Service. Those same volunteers either stayed or returned in time to escort the residents back to the Green building upon completion of Services. The community had embraced the residents at Fernald and the residents enjoyed their Sunday morning Service. Overall, we all work hard every day to provide comfort, stability and security for our families. We cannot imagine after residing in a home for thirty, forty or fifty years, and finally getting it to the point where you feel comfortable, stable and secure, that you are now told to pack up and move with potentially more moves to endure. Any of us would be outraged.

Today there are far fewer citizens in our ICF/MRS than a decade ago. For those that have moved into the community homes and are thriving this has been a good and important outcome. The Commonwealth in its attempt to address excess capacity is moving towards consolidation. There are other options that can address excess capacity and achieve some savings without resorting to closure of this facility.

In an attempt to find a solution for the Fernald residents, our office was surprised to find such vast acreage surrounding the various ICF/MRs. Glavin has 123 acres, Monson has 588 acres, Templeton has 2,600 acres, Wrentham has 400 acres and Fernald has 186 acres. At Fernald, it may be possible to group the homes and work sites of Fernald residents by dividing the buildings north of Pine Street and west of Cherry Lane and condense the campus. The Commonwealth could then sell the remainder of the land for residential development. DMR could also build some new residential homes on the land and have support services for these residents at Fernald.

Servicing individuals with mental retardation in ICF/MRs and the community each offers advantages and disadvantages to both systems. The model across the United States appears to be shifting toward housing the mentally retarded in community residences. Despite this trend, the strength that Massachusetts holds is allowing families to have a choice for their family members and wards. As this segment of the population ages, their parents and relatives are also aging. Many of the residents at Fernald have family members that live within close proximity to Fernald. We have met numerous individuals through our visits to Fernald that have expressed how difficult it would be for them to drive the distance to another ICF/MR to make that daily or weekly commute to visit their loved ones. Our office was amazed at the many residents at Fernald that have lived there for thirty, forty and fifty plus years. Many of the State workers can boast twenty or thirty years tenure at Fernald. These employees have become more than individuals waiting to achieve the benefits of State retirement, they are family to the residents who rely on them every day for the most basic needs that we take for granted. Breaking these decade long bonds is not the solution these residents deserve, nor should they be forced to experience countless moves given the conditions they had to endure before the Court's intervention.

Since the Monitor's Appointment in February, 2006, our office has witnessed outstanding medical and social care in all of the ICF/MRs. The quality of life for the ICF/MR residents is excellent, and this Court's persistence and insistence, over the past three decades, in raising the level of care for the mentally retarded is certainly remarkable. The Herculean effort shouldered by this Court since the early 1970s has, without doubt, enriched the lives of our mentally retarded citizens. This Court's effort is reminiscent of another monumental undertaking by the late Honorable Judge A. David Mazzone to revitalize Boston's Harbor as a waterway capable of nurturing and sustaining life. In many ways, this Court has accomplished the same task, as guardians of individuals residing within the ICF/MRs have provided our office with a clear understanding that the residents within these facilities receive the support that nurtures and enhances their quality of life.

As a result of a year long investigation, our office has concluded that some of the residents at Fernald could suffer an adverse impact, either emotionally and/or physically, if they were forced to transfer from Fernald to another ICF/MR or to a community residence. Our office would recommend the implementation of a development plan that would enable Fernald to remain open and provide services to some of the Commonwealth's most vulnerable citizens.

In summary, based on our review of all the conditions that are considered for "equal or better" services, it is the opinion of the Monitor that residents should continue to have the opportunity and option to move from Fernald to other ICF/MRs, or to a community residence, provided that the Certification Process is enforced. Additionally, and most importantly, considering the Uniqueness of each of the ICF/MRs, and the vulnerability of the residents, Fernald residents should be allowed to remain at the Fernald facility, since for some, many or most, any other place would not meet an "equal or better" service outcome.

Enclosure 3, Proposed Plot Plan and Report

# FERNALD CENTER POSTAGE STAMP

Alternate Property Proposal by George Mavridis, P.E. May 2004
202 Brooksby Village Drive Unit 308 Peabody, Massachusetts 01960-8517
978 535 4322    gmavridis@verizon.net

December 9, 2004

Fernald Center sustains the lives of nearly 300 residents and offers a model of care for people with severe and profound mental retardation that is worthy of replication around the country. It is a regional center, owned and operated by the Commonwealth of Massachusetts, with specialized staff and programs for adult and elderly retarded people who live with chronic illness and disability. Residences at Fernald provide affordable housing and clinical support for severely or profoundly retarded people with medical or behavioral complications who will never be self-supporting.

Relocation threatens the lives of Fernald residents. Accordingly, most guardians believe it is essential that their ward remain in Waltham on the state-owned land of Fernald Center with state-operated services provided by state employees. We join with others who envision improvements that benefit Fernald Center residents as well as residents in the surrounding neighborhoods and towns.

The Department of Mental Retardation is the major tenant at the 187-acre Fernald site. The Department provides homes, day programs, support services and leisure activity facilities for residents on site, as well as a variety of individuals in the surrounding cities and towns. Support service buildings include the Tufts Dental Center; the state-of-the-art Pearlman Food Service building; the Duhamel Therapeutic swimming pool; the Greene Gymnasium and the Therapeutic Equipment Center with staff who customize wheel chairs and other adaptive equipment to the needs of retarded individuals living in the greater Waltham area, including Fernald Center.

Fernald residents already enjoy cluster housing and open space by design. Their services are delivered with efficiency because they live in

11

units of 8 residents, combined into larger units of 16 up to about 80 residents in a building. Travel is minimized because their clinical and dental services, and many day and recreation programs, are located on campus. Any plan for Fernald Center needs to allow sufficient land for residents to receive active treatment according to Medicaid (ICF/MR) standards.

Marquardt Skilled Nursing Facility is the only state-operated, skilled nursing facility for retarded people available in Massachusetts. The specialized staff provides care for up to 29 retarded people from all over the state who need intensive medical and nursing care. The Fernald Chaplain provides vital services to the wider Waltham community and the residents of Fernald Center through the Chapel of the Holy Innocents.

The Commonwealth's 1200 developmental center residents are approximately four percent of the total population served by the Department of Mental Retardation. At least four percent of the mentally retarded population will always be severely or profoundly retarded with medical or behavioral complications. They should always have the option to live at a developmental center when the family cannot safely care for them.

Over the past few years several advocates for the Fernald Center residents have talked informally about the future of Fernald and a key point has usually been that the Fernald of the 1970's will never be needed or wanted again, and that a small more focused Fernald will always be needed. The conversation usually moved to the idea that 300 Fernald residents will never need 187 acres of land in Waltham.

We propose to isolate the buildings north of Pine Street and west of Cherry Lane (the main road that exits onto Trapelo Road). They are the homes and work sites used by Fernald residents.

Initially if the Department of Mental Retardation declares a portion of the Fernald property as surplus, we urge the Commonwealth to consider offering the property to other state agencies for their uses that are compatible with the Fernald residents and the local community. The Commonwealth will have rent-free offices and the 300 Fernald residents will not be evicted.

If the Department of Mental Retardation declares a portion of the Fernald property as surplus and the Commonwealth decides to sell that

portion of the Fernald campus to a developer, the sale price for a portion of the Fernald campus would be a combination barter and money transaction:

1.    The successful developer would pay cash for the land that is not needed for the continued operation of the Fernald Developmental Center.

2.    The successful developer would provide the necessary heating systems (including all the engineering) to supply heat and hot water to the remaining Fernald Center and maybe Shriver Research Center

3.    The successful developer would be the provider contractor for all the support services needed by the Department of Mental Retardation to operate the Fernald Center.

During the past few months we have been looking for old drawings of the Fernald property and we scanned two drawings and combined them so we have a layout of all the Fernald buildings and the property lines in a computer file.

Attached are two drawings that we produced. The first drawing shows the Fernald Center today with the buildings color-coded based on their usage. We have indicated the buildings that provide services to community residents. For example 90% of the Tufts Dental Clinic patients live in the community and not at Fernald. Ninety percent of the swimmers in the Duhamel Therapeutic Swimming Pool live in the Waltham community and 90% of the Greene Gym and the ball field's usage are by community residents and none of them are mentally retarded.

The second drawing shows the buildings east of Cherry Lane in outline form because we believe these abandoned and unnecessary buildings can be demolished and the area developed.  Some buildings in this area are shown in color. The Division Capital Asset Management or a developer should evaluate them before they are demolished. The Commonwealth can redevelop this section of the Fernald campus for other state uses or declare the land surplus and sell it. If the Commonwealth sells the land to the City of Waltham, or a developer, the east portion of Fernald will be developed and 300 Fernald residents will not be evicted. A win-win result!

Many retarded people are awaiting DMR services. These include the group turning 22 years old who are leaving the services of their public schools, and those on waiting lists from the community and nursing homes. Hospice and respite care for any retarded person could readily be coupled with Marquardt, the Clinic and residential space in the Village at Fernald.

We look forward to a dynamic working relationship with persons who agree that evicting the current residents of Fernald from their community of peers and staff is life threatening and unacceptable.

We believe this is a winning proposition. The present Fernald residents retain their homes and work sites. The east side of the campus will become a positive development in Waltham

George Mavridis, P.E.
Immediate Past President, Fernald League for the Retarded
Vice President, Walter E. Fernald State School Corporation

Enclosures: Drawings



**PRESENT CAMPUS**

COLOR KEY:

RESIDENCES

ABANDONDED

LEASED
  METRO BOSTON REGION
  MIDDLESEX HUMAN
  SERVICE AGENCY

CLOSED, RENOVATED
  EASILY REOPENED

DAY PROGRAM WORK SITES

LEASED
  SHRIVER
  FERNALD ASSOCIATION
  FERNALD LEAGUE
  TUFTS DENTAL

SUPPORT BUILDINGS

USAGE:

TUFTS DENTAL - 90% COMMUNITY
GREEN THERAPUTIC POOL - 90% COMMUNITY
GREEN GYM - 90% COMMUNITY WITHOUT
  MENTAL RETARDATION
BALL FIELDS - ALL COMMUNITY GROUPS
  WITHOUT MENTAL RETARDATION
GREENEHOUSE -
  1 FERNALD & 12 COMMUNITY WORKERS
CAN REDEMPTION -
  2 FERNALD & 12 COMMUNITY WORKERS
OTHER WORK SITES - ALL FERNALD WORKERS

FUEL SYSTEMS
FOR HEAT AND HOT WATER:

MALONE PARK - OIL
WORK SITES 5 & 7 - OIL
HILLSIDE - GAS
ACTIVITY CENTER - OIL
COTTAGES 19 & 20 - GAS
ALL OTHERS - POWER PLANT

**THE FERNALD CENTER**
**Commonwealth of Massachusetts**
**Department of Mental Retardation**

TRAPELO ROAD

SYSTEM BUILDING NO. 5

LAWRENCE SCHOOL

MAIN ENTRANCE

SYSTEM BUILDING NO. 6

COTTAGE COMPLEX

ACTIVITIES BUILDING

SOCCER

FIELD

EUNICE KENNEDY SHRIVER CENTER

PARKING     GREENE UNIT I

DUHAMEL POOL & GREENE GYM

GREENE UNIT II

SYSTEM BUILDING NO. 4

CHERRY LANE

HILLSIDE

PARKING

ADMINISTRATION BUILDING

NORTH NURSES HOME

TUFTS DENTAL

WHEATLEY HALL

CHAPEL

NORTH BUILDING

FARELL HALL

EAST BUILDING DOWLING HALL

HOME HALL

WITHINGTON REHAB CENTER

KELLY HALL

DOLAN HALL

WEST NURSES HOME

THOM HOSPITAL (MARQUARDT)

ACTIVITIES CENTER

EAST NURSES HOME

MacDOUGAL HALL

LEASED

PLAYGROUND

FOOD SERVICE BUILDING

WAVERLY HALL

MANUAL TRAINING BUILDING

PINE STREET

SCHOOL HOUSE

STORE HOUSE

SEGUIN HALL

WEST BUILDING

HOME LIBRARY

CHIPMAN HALL

WARREN HALL

BELMONT HOUSE

TABBE HALL

ADAPTIVE EQUIPMENT CENTER

LAVERS HALL

BOWEN HALL

SOUTH NURSES HOME

GROUNDS DEPARTMENT

WALLACE BUILDING (COMMUNITY RESPITE)

GREENHOUSE

POWER PLANT

COTTAGES #19 & #20

WAVERLY OAKS ROAD

