

# LOCAL 1548
## AMALGAMATED TRANSIT UNION AFL-CIO, CLC

**CHARLES A. RYAN III, PRESIDENT / BUSINESS AGENT**
POST OFFICE BOX 1230   PLYMOUTH, MASSACHUSETTS 02362-1230
TEL: 508-732-0382   FAX: 508-732-0386

**JANET A. TOPALIS, FINANCIAL SECRETARY / TREASURER**
POST OFFICE BOX 1230   PLYMOUTH, MASSACHUSETTS 02362-1230
TEL: 508-732-0384   FAX: 508-732-0386
atu_local1548@yahoo.com

# Fax

| | |
|---|---|
| **To:** Zita Lovett / Judge Joseph Tauro | **From:** Janet A. Topalis |
| **Fax:** 617-748-9096 | **Date:** May 18, 2007 |
| **Phone:** 617-748-9183 | **Pages:** 9 (including fax cover sheet) |
| **Re:** | **CC:** |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

---

Zita,

As discussed, please find attached a copy of the reply to my appeal letter (April 19, 2007) from The Department of Retardation dated May 16, 2007, which was the date of Claudia's ITP Meeting. I was handed this letter at the ITP Meeting.

I have attached a copy of the DMR regulations which are referenced in the reply letter from DMR.

DMR has stated to my attorney Joseph Franzese, the Dever Association Representative Daryl Every and others at the meeting including myself that they will retain the lease on the Prospect Street location which will be allowed to be occupied by a private vendor agency, "Bamsi" after June 30, 2007.

Knowing the above information, it is obvious the house is not closing, and the lease is not being terminated, and there will be no foreclosure; therefore it is my opinion that 115 CMR 6.25 (2) (e) does not apply to this situation which brings us back to the violation of M.G.L. 123B.

In addition, DMR still holds their position that the residence they have picked for Claudia remains and there are no other choices for her. DMR does not have a back up plan in the event the transfer takes place and does not work. I am afraid of what back up solution they could come up with for Claudia.

If you have any questions, please feel free to contact my attorney Joseph Franzese, at Franzese and Franzese, P.C. 24 School Street Suite 300 Boston, MA 02108, 617-227-4990 or myself at 508-747-5108.

Thank you again for your time and assistance with this urgent matter.

Sincerely,
*Janet A Topalis*
Janet A. Topalis
Guardian/Sister of Claudia A. Tetreault



# The Commonwealth of Massachusetts
## Executive Office of Health & Human Services
## Department of Mental Retardation
## Southeast Region
## 68 North Main St. Carver, MA 02330

Deval L. Patrick
Governor

Timothy P. Murray
Lieutenant Governor

JudyAnn Bigby, M.D.
Secretary

Gerald J. Morrissey, Jr.
Commissioner

Richard J. O'Meara
Regional Director

Tel: 508-866-5000
Fax: 617-727-7822
TTY: 508-866-7602

Janet A. Topalis
20 Standish Avenue
Plymouth, MA 02360

May 16, 2007

Dear Ms. Topalis,

   I am responding to your letter outlining your concerns related to the closure of your sister Claudia's home located at 44 Prospect Street, East Bridgewater, MA.

   As we discussed during our April 3, 2007 telephone conversation, the proposed new home is a four bedroom, accessible, ranch style home located in a rural area at 11 long Point Road, Lakeville, MA. This home currently supports three ladies with similar abilities. We believe the ladies are compatible and would be good housemates for Claudia.

   All homes managed by Southeastern Residential Services are required to meet the same safety standards and regulations. The Lakeville home has a pool adjacent to the home. Safety protocols are followed and available for your review. The pool is enclosed with a locked fence and emergency flotation alarm. Claudia's Community Membership ISP objective is to use a pool at least twice each month to provide enjoyment and assist her in pain management. In addition, the Lakeville home has a Jacuzzi tub available to help relieve pain due to her medical conditions.

   Claudia's medical care will continue to be monitored by the SRS RN Oversight Nurse and Nurse Practitioner. There is 60 hours of direct care nursing assigned to the Lakeville home to monitor her daily needs. As we agreed during our telephone conversation, Claudia will continue to maintain her current medical team. Her primary care physician and specialty physicians associated with the Boston hospitals will remain the same. Staffing patterns will be consistent with her current staffing ratios at the East Bridgewater home.

   Claudia's current day services will need further evaluation. Due to the distance from her current program she will need to change to a local program closer to the Lakeville home. The proposed new program is Open Roads in Middleboro, MA. SRS will provide additional supports to the Open Roads program throughout her transition to ensure a safe and supportive transfer. Her current staff from the East Bridgewater home will assist with her transition to the new location.

   As indicated, the residential program at that location is closing. We have offered similar residential supports at a new location. I have been advised by counsel that this is not a change subject to the Department of Mental Retardation Individual Support Plan modification regulations. "If [a] change in residence results from . . . circumstances such as contract termination, in whole or in part, . . . such change shall not be considered a modification within the meaning of 115 CMR 6.23." This is stated at 115 CMR 6.25 (2)(e) concerning Modification of Individual Support Plans. Similarly, I have been advised by counsel

that these circumstances do not come within the Department of Mental Retardation transfer statute or the related regulation. These provisions are found at G.L. c. 123B (3) and 115 CMR 6.63(1) and (1)(b).

Once again, I encourage you to participate in the planning for Claudia's move from the East Bridgewater home. I will be happy to review all information and arrange a visit to the Lakeville home, at your convenience. Claudia's Individual Transition Planning meeting is scheduled for May 16, 2007.

The East Bridgewater staff will be re-assigned to their new work locations in June 2007. As I stated, I am concerned about delaying the planning process until late June, as your sister Pat requested. We believe it is in Claudia's best interest to have familiar staff from the East Bridgewater home available to assist her during her transition.

We regret the difficult decisions that impact on the lives of the individuals we support. SRS respects and appreciates your advocacy for Claudia's needs. Your assistance will enable us to assess and prepare Claudia for this change in her life. The information you provide, as a family, is valuable and immeasurable. Once again, SRS will assist you with the visit to the home. I believe some of your concerns can be addressed at the visit. The staff at the Lakeville home is dedicated seasoned employees. I am confident they will support Claudia throughout this transition in a caring and sensitive manner.

Very Truly Yours,

*Jacqueline Winslow*

Jacqueline Winslow, Director
Southeastern Residential Services

Copy:   Richard O'Meara
        Patrick Murphy
        File

May 18 07 Case 1:72-cv-00469-JLT    Document 187    Filed 05/18/2007    Page 3 of 9    p.3

115 CMR: DEPARTMENT OF MENTAL RETARDATION

6.24: continued

   3. any significant changes in the individual's circumstances or abilities, including:
      a. changes in the individual's eligibility;
      b. changes in the individual's physical or mental health, including a review of the appropriateness and effectiveness of current medications and behavior modification procedures;
      c. changes in the individual's financial resources;
      d. changes which may affect the individual's priority for a particular support;
      e. changes in the individual's ability to make informed decisions regarding his or her personal or financial affairs; and
      f. changes in the availability of needed supports;
   4. whether the goals identified in the ISP are consistent with the current desires and needs of the individual and whether the strategies and supports identified in the ISP continue to be the least restrictive, appropriate and available strategies and supports to promote achievement of those goals; and
   5. the continued effectiveness and appropriateness of any authorizations given by the individual, his or her guardian, if any, a court, or other authority.

   (3) <u>Distribution, Approval and Implementation</u>. The updated ISP shall be distributed, approved and implemented in accordance with the procedures set forth at 115 CMR 6.23(5).

→ 6.25: <u>Modification of Individual Support Plans</u>

   (1) The ISP shall be modified when necessary to reflect changes in the individual's goals and needs, to promote a quality of life for the individual which is consistent with the outcomes described in the quality of life areas set forth at 115 CMR 6.23(2), or to provide for the least restrictive, most adequate and appropriate supports consistent with the individual's desires and needs. 115 CMR 6.25 applies to all modifications of ISP's. Changes which are not "modifications" listed at 115 CMR 6.25(2) are not subject to the requirements of 115 CMR 6.25.

   (2) Any of the following changes, unless proposed as part of the annual review process set forth at 115 CMR 6.24, shall be considered a modification of the ISP:
      (a) Any change in the goals for the individual identified pursuant to 115 CMR 6.23(4)(e)1.;
      (b) Any change in the strategies, or in the types of supports identified pursuant to 115 CMR 6.23(4)(e)2. that will be utilized to assist the individual to attain the identified goals, or in the duration and frequency of such strategies and supports, as set forth pursuant to 115 CMR 6.23(4)(e)4., or in the strategies, identified pursuant to 115 CMR 6.23(4)(e)6., that will be used to address unmet support needs;
      (c) A change in the priority assigned to the individual's needs pursuant to 115 CMR 6.07 where such change will affect the availability of supports to the individual;
      (d) Initiation of a behavior modification plan or modification of any part of a behavior modification plan involving the use of an aversive or intrusive technique;

[handwritten: None of these apply. →]

      (e) A change in the location of an individual's residence from a Department facility or a home operated by the Department or by a provider of residential supports licensed by the Department to another such facility or home. However, if the change in residence results from requirements for <u>competitive procurement or is necessitated by circumstances such as contract termination, in whole or in part, lease termination, foreclosure, or any unsafe or hazardous condition of the residence</u>, such change shall not be considered a modification within the meaning of 115 CMR 6.25.

   (3) Requests for modifications shall be addressed to the service coordinator and may be initiated by:
      (a) the individual;
      (b) the individual's family and guardian, except that a request for modification by the individual's family will not be considered if the individual knowingly objects or if the individual's guardian objects;
      (c) the service coordinator; or
      (d) a current provider of supports to the individual; and
      (e) the individual's designated representative.

6.25: continued

(4) A meeting to determine whether a requested modification should be made shall be convened by the service coordinator as soon as possible but within 30 days of the request for the modification.
    (a) The following persons shall be invited to attend the modification meeting: the individual, the individual's family, guardian, and designated representative, if any, and providers of supports to the individual.
    (b) The modification meeting may be held in conjunction with any other meeting pursuant to 115 CMR 6.00 that is being held within 30 days of the request for modification.
    (c) At least ten days notice shall be provided to the participants prior to a meeting at which a requested modification is to be considered.

(5) The modification meeting and any timeline related to such meeting may be waived by the service coordinator at his or her discretion with the documented approval of:
    (a) the individual, if not under guardianship and capable in fact of understanding the consequences of the waiver;
    (b) the individual's family, if the individual is not capable in fact, is not under guardianship, and does not object; or
    (c) the individual's guardian, if any, if the individual does not object.

(6) In the case of any such waiver, the modification may be implemented subject to the requirements of 115 CMR 6.25(7).

(7) Within ten days after a modification meeting, or after waiver of such meeting, recommended modifications shall be reviewed by the Area or Facility Director or his or her designee, and approved or disapproved. The service coordinator shall notify the team members invited to participate in the modification meeting of the decision on the requested modification and of their right to appeal the modification to the extent provided by 115 CMR 6.63 or 115 CMR 6.30 through 6.34, as applicable, and shall, if applicable, issue a modified ISP.

(8) Where the change in residence would not be considered a modification because it results from requirements for competitive procurement or termination, in whole or in part, of a provider's contract, the service coordinator shall nevertheless convene a meeting of the individual, family, guardian, and providers for the purposes of exchanging pertinent information and reviewing the new provider's obligations under the ISP. If possible, such meeting shall take place in advance of the change in residence.

(9) Where modifications are in response to circumstances that pose an emergency involving a serious or immediate threat to the health or safety of the individual or others, the modification may be implemented immediately and the modification meeting may be postponed to a date no later than 30 days after the emergency. On or before the next business day, the service coordinator shall notify all persons eligible to participate in the modification meeting of the emergency modification.

6.30: Scope and Purpose

(1) 115 CMR 6.30 through 6.34 contains the standards and procedures for appeal and redress of certain matters affecting applicants for and recipients of supports provided, purchased, or arranged by the Department.

(2) The provisions of 115 CMR 6.30 through 6.34 shall not apply to, and shall not be used to resolve, disagreements within the Department or between the Department and providers concerning supports to individuals.

(3) The provisions of 115 CMR 6.30 through 6.34 shall not apply to appeals of transfers, which are governed by 115 CMR 6.63.

6.31: Subject Matter of an Appeal

The following issues may be appealed under 115 CMR 6.30 through 6.34:

115 CMR:

6.22: continued

(2) Conduct of Assessments and Consultations.
(a) Assessments and consultations shall reflect consideration of the individual's cultural, ethnic, and linguistic background, as well as any need for accommodation based upon disability or other factors.
(b) As appropriate and feasible, assessments and consultations regarding particular skills or behaviors shall be conducted in the actual environment in which the individual would typically perform the skill or behavior, or in a similar setting.
(c) Assessments and consultations shall be conducted with respect for the dignity, comfort, and convenience of the individual.

(3) Required Assessments.
(a) The following assessments which are included in the Eligibility Report prepared pursuant to 115 CMR 6.08 shall be reviewed by the service coordinator on an annual basis and updated as required by 115 CMR 6.24 or as needed to reflect changes in the individual's abilities and circumstances:
   1. an assessment of the general type of supports needed by the individual;
   2. an assessment of the individual's ability to make informed decisions regarding his or her financial and personal affairs; and
   3. an assessment of the individual's financial status and eligibility for services or benefits from other entities such as the Social Security Administration.
(b) In the case of individuals residing in facilities or in homes operated, licensed or funded by the Department, the residential provider shall provide or arrange for annual health and dental assessments.
(c) Providers of DMR funded supports shall conduct safety assessments as required by 115 CMR 7.08, and other assessments required by the provider's contract with the Department.
(d) The ability of individuals residing in facilities to manage their funds shall be assessed at least annually as required by 115 CMR 3.08.

(4) Additional Assessments and Consultations.
(a) The service coordinator shall determine, in conjunction with the individual and other team members, whether additional assessments and professional consultations would benefit the individual or assist the team in identifying strengths and limitations related to the individual's ability to live with greater independence and social competence in less restrictive environments. Such assessments may include, but shall not be limited to, an assessment of the individual's daily living skills, communication skills, psychological status, social network, and whether the individual would benefit from assistive technology.
(b) Any such assessments and consultations shall be performed by the current provider who has primary responsibility for providing supports encompassing the area to be assessed. Subject to the availability of resources, assessments which are not within the competence or responsibility of any of the current providers shall be arranged by the service coordinator and provided or purchased by the Department.

(5) If requested, the service coordinator shall meet with the individual, his or her guardian, and the individual's family in advance of the ISP meeting to discuss the assessments and consultations and shall, if feasible and requested, arrange an explanatory meeting with the person who performed the assessment or consultation.

6.23: Development of Individual Support Plans

(1) ISP Meeting. The service coordinator shall convene and facilitate a meeting with the individual and other members of the ISP team in order to develop a support plan which sets forth the goals of the individual; the supports needed by the individual in order to attain those goals, which shall be based on the actual needs of the individual without regard to the availability of such supports; the availability of needed supports; the party responsible for providing supports; the frequency and duration of supports; and strategies for meeting unmet support needs of the individual. If the individual refuses to attend the ISP meeting, the team shall consider what, if any, adjustments could be made in the ISP meeting to encourage greater participation by the individual.

115 CMR: DEPARTMENT OF MENTAL RETARDATION

6.23: continued

(2) Quality of Life Areas. Within the six quality of life areas, the goals and any supports or strategies identified in the ISP must be consistent with and promote the following outcomes for individuals:

(a) Rights and Dignity. The individual's rights are respected, he or she is supported in the responsible exercise of those rights, and other supports are in place to assist, as necessary, in protecting the individual's human and civil rights; the individual's dignity is recognized and affirmed in the individual's home and community and in the manner in which supports are provided.

(b) Individual Control. The individual has opportunities to exercise control and choice in his or her life, and has access to education, experiences, and supports to increase his or her self-determination; the individual's opinions and preferences are listened to and treated seriously; the individual's needs and preferences are reflected in his or her activities and routines.

(c) Community Membership. The individual has a home which is similar in appearance to surrounding homes, which offers safety, refuge, rest, and satisfaction to the individual, and into which the individual can invite friends, family, neighbors and others to whom he or she wishes to offer hospitality; he or she has many and varied opportunities to participate in and contribute to the life of his or her community through work and through integrated social and recreational activities in culturally typical settings.

(d) Relationships. The individual has opportunities and support, as needed, to develop, sustain, and strengthen varied and meaningful relationships with family, friends, neighbors and co-workers.

*[handwritten margin note: "Not Allowing to sustain the relationships" with arrow pointing to (d)]*

(e) Personal Growth and Accomplishments. The individual has access to the supports necessary to enable him or her to contribute to his or her community, be as self-reliant as possible, develop his or her unique talents and abilities, and achieve his or her personal goals.

(f) Personal Well-Being (Health, Safety, and Economic Security). The individual receives health care and related services which are sufficient and appropriate to optimize the individual's health and well-being; he or she lives and works in environments that are safe, secure, and are adapted if necessary to meet the individual's needs, and safeguards are in place to respond to emergencies and threats to the individual's health or safety; he or she has sufficient economic resources to meet his or her needs.

(3) Timing of the ISP Meeting. The service coordinator shall convene a meeting to develop an ISP within 60 days after the individual begins receiving supports which require the development of an ISP pursuant to 115 CMR 6.20(4) and every two years thereafter.

(4) ISP Components. The ISP meeting shall include but shall not be limited to the following:
(a) Discussion of the individual's goals and desires in terms of the quality of life areas identified at 115 CMR 6.23(2);
(b) Discussion of experiences and events in recent years that may affect the individual's immediate future, general health, safety, or long-term goals;
(c) Discussion of the individual's current circumstances, including his or her home and employment as well as any supports being provided, in terms of the individual's satisfaction and changes which must occur in order for the individual to achieve his or her goals;
(d) Identification of goals within one or more of the quality of life areas described at 115 CMR 6.23(2) for current support planning; and
(e) Development of a support agreement which sets forth:
 1. specific goals to be attained in each area identified pursuant to 115 CMR 6.23(4)(d);
 2. the strategies and supports that are the least restrictive and that will be utilized to assist the individual to attain these goals, which may include but shall not be limited to instruction in skills related to health and safety, self-care, communication, home living, work, leisure, social interactions, community use, self-direction and functional academics, provision of medical, dental and specialty services such as physical or occupational therapy, psychiatric or psychological services, and legal or advocacy services, and the party responsible for their provision or implementation;
 3. the settings in which the strategies will be implemented and the supports provided;

115 CMR: DEPARTMENT OF MENTAL RETARDATION

4. the expected duration and frequency of the supports:

115 CMR: DEPARTMENT OF MENTAL RETARDATION

6.23: continued

5. the criteria to be utilized in evaluating the effectiveness of such supports in achieving the individual's goals;
6. any unmet support needs and the strategies which will be utilized to address those needs;
7. team members' responsibilities for monitoring and reporting on implementation of the support agreement as well as the format and frequency of such monitoring and reporting; and
8. the date of the next review of the ISP, which can be no later than one year from the date of the ISP meeting.

(5) Distribution, Approval, and Implementation of the ISP.
(a) Within 30 days following the ISP meeting, the ISP shall be reviewed by the Area or Facility Director or his or her designee, approved or disapproved in part or in whole, and mailed to the individual, family, guardian, designated representative, if any, and providers. The service coordinator shall notify the individual and his or her family and guardian, if any, of their right to have, upon request, a meeting with the service coordinator to explain the ISP within ten days of receipt and of their appeal rights under 115 CMR 6.30 through 6.34.
(b) If the Area or Facility Director or his or her designee disapproves the ISP, in whole or in part, he or she shall discuss with the service coordinator his or her reasons for disapproval and suggest changes to the ISP. If the suggested changes would be considered modifications of the ISP pursuant to 115 CMR 6.25, the service coordinator shall consult with the individual and other team members regarding the proposed changes to the ISP. The service coordinator may reconvene the ISP meeting for the purpose of revising the ISP in accordance with the recommendations of the Area or Facility Director at the request of the individual or his or her family or guardian or if the service coordinator determines that the ISP meeting must be reconvened in order to develop an appropriate ISP.
(c) The individual, his or her guardian, if any, and any family members who participated in the development of the ISP will be asked to signify, in writing, their approval or appeal of the ISP. If such approval is not received within 20 days of mailing, an attempt will be made by the service coordinator to contact those individuals having a right of appeal to confirm their receipt of the ISP. Any participant with a right of appeal under 115 CMR 6.32, will be deemed to agree to the plan unless an appeal is filed within 35 days of mailing of the ISP or of the explanatory meeting held pursuant to 115 CMR 6.23(5)(a).
(d) When feasible and with the approval of the Area or Facility Director or designee and all parties having a right of appeal under 115 CMR 6.32, as well as the provider, the ISP or any portion thereof may be implemented prior to completion of the distribution and approval process set forth in 115 CMR 6.23(5).

6.24: Annual Review of Individual Support Plans

(1) Frequency of Review. The ISP shall be reviewed and updated on an annual basis. The individual or other team members may request more frequent reviews depending on the individual's desires, goals, needs, and circumstances.

(2) Conduct of the Annual Update.
(a) Within one year of the date on which an ISP was developed in accordance with 115 CMR 6.23, the service coordinator shall convene a meeting of the team to review and update the individual's ISP. At the discretion of the service coordinator, a new ISP may be developed in accordance with the provisions of 115 CMR 6.23 rather than updated in accordance with the provisions of 115 CMR 6.24.
(b) The service coordinator shall obtain and distribute any new or updated assessments, review monitoring reports generated by the Department and the provider, and, in consultation with the individual and other team members, make appropriate revisions to the ISP based on a review of the following:
1. the satisfaction of the individual and others, including the individual's family and guardian, if any;
2. progress toward achieving the goals identified in the ISP; and