UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| ROBERT SIMPSON RICCI, et al., | : | Civil Action Nos: | 72-0469-T (Belchertown) |
| Plaintiffs, | : | | 74-2768-T (Fernald) |
| | : | | 75-3910-T (Monson) |
| v. | : | | 75-5023-T (Wrentham) |
| | : | | 75-5210-T (Dever) |
| ROBERT L. OKIN, et al., | : | | |
| Defendants. | : | | |

**DEVER CLASS PLAINTIFFS' LIMITED OBJECTIONS TO THE MONITOR'S REPORT**

In response to the Monitor's Report dated March 6, 2007, and in accordance with the Court's March 7, 2007 Order treating that Report as a magistrate's report and recommendation, the Paul A. Dever Association for Retarded Citizens, Inc., as class plaintiffs, hereby submit three narrow objections to the Monitor's Report pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and Rule 3(c) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts. (Docket Nos. 158, 160, and 170 at 41.)

Dever Class Plaintiffs object to the Monitor's Report only insofar as it may apply to transfers from one community residence to another. The Court Monitor's review to date has focused on transfers from ICF/MR institutions, particularly Fernald, not transfers from community residences. As the Monitor's Report notes, 70% of the transfers from Fernald since February 2003 were to another ICF/MR, and the Department of Mental Retardation ("DMR") deems such transfers not to require "equal or better" certification under this Court's 1993 Final Order. (Monitor's Report, Docket No. 158, at 1, 14.)

Notwithstanding the Monitor's focus on Fernald transfers, the Report highlights "some very concerning neglect and abuse trends in Contract Vendor operated community residences, as

10589160.1

compared to the ICF/MRs and State operated community residences. . . . particularly sexual abuse, [which] were of great concern to [the Unites States Attorney's] office and shows that residents in our community homes are at a greater risk of being abused and/or neglected." (Monitor's Report, Docket No. 158, at 16-17.) Given the heightened risk to community residents and the Monitor's focus on institutional transfers, the Monitor's Report should not be adopted by this Court with respect to transfers from one community residence to another. More investigation and analysis remains to be done in that area.

## BACKGROUND

Governor Weld announced the closure of the Dever Development Center in 1991, and the facility was finally closed in 2002. Today, the transfers relevant to most former residents of Dever are those from one community placement to another, not transfers from ICF/MR institutions like Fernald. That is because Dever has been closed for some five years. The interests of Dever Class Plaintiffs, virtually all of whom live in community settings now, therefore, differ from those of the Fernald Class, who continue to reside in an ICF/MR.

One critical difference lies in the quality of care and the regulation of that care. The quality of care at ICF/MRs is so highly regulated that DMR posits the "equal or better" certification mandated by this Court's 1993 Final Order does not apply to transfers among ICF/MR facilities. (Monitor's Report, Doc. No. 158, at 14.) By law, all such ICF/MR facilities must satisfy certain minimum standards, which renders certification unnecessary, according to DMR's rationale. Not so with community residences, where the quality of care varies greatly from one placement to another.

Recent filings in this case underscore the Monitor's articulated concerns about the quality of care in certain community settings and why transfers among such residential placements merit

further scrutiny. For example, by letter dated April 4, 2007, DMR announced that two of its community residences would be closing in order to consolidate "vacancies scattered throughout our residential network." (Docket No. 172.) Two weeks later, a resident of one of the homes slated for closure, through her guardians, objected to the proposed transfer to another community residence, articulating sound reasons for those concerns in a four page letter addressed to the contact person identified by DMR. (Docket No. 174.) The guardians specifically requested an Individual Support Plan ("ISP") meeting in order to address their concerns about the proposed transfer. (Docket No. 183.) In response, DMR claimed -- on advice of its counsel -- that no such meeting was warranted because the proposed transfer was "not a change subject to the Department of Mental Retardation Individual Support Plan modification regulations" and did "not come within the Department of Mental Retardation transfer statute or the related regulation." (Docket No. 187 at 2-3.) Those regulatory protections do not apply to these transfers, DMR asserts, because the closures result from "'circumstances such as contract termination, in whole or in part.'" (Id. at 1-2, quoting 115 CMR 6.25(2)(e).) The guardians have retained counsel to contest the matter.

Just as DMR interprets the Court-ordered "equal or better" certification to apply selectively (Monitor's Report, Docket No. 158, at 14), it construes the transfer and ISP regulations not to apply to situations they were intended to govern. DMR's purported reliance on the regulatory exemptions -- contract or lease termination, foreclosure, unsafe/hazardous condition -- is belied by the stated reason for the closures given by the Regional Director in his April 4, 2007 letter: "to consolidate the[] vacancies" scattered throughout DMR's residential network. (Docket No. 172.) If the real reason those homes are closing stems from contract termination, then why would the Regional Director state otherwise in his April 4, 2007 letter.

Similar letters sent by DMR to Fernald residents threatening the closure of that facility were not well received by this Court. (Tr. of 3/7/07 Hearing, Docket No. 170, at 42-43.)

Further investigation should be undertaken to determine whether and under what circumstances transfers from one community setting to another fall within the protections of the transfer regulation, 115 CMR 6.63, and whether DMR has been complying with that regulation. Contrary to the Court Monitor's finding of compliance with respect to transfers from Fernald (Monitor's Report, Docket No. 158, at 17-18), anecdotal evidence from recent filings in this case suggests that DMR is not even attempting to comply with that regulation with respect to the two community homes being closed due to consolidation. Indeed, DMR's stated rationales for those closures are inconsistent. The Court Monitor's findings regarding transfers from Fernald do not apply to transfers from community settings, and thus, the Monitor's Report should not be the final word on such community transfers.

## **LIMITED OBJECTIONS**

In accordance with Fed. R. Civ. P. 72(b) and Rule 3 of the Local Rules for Magistrate Judges in this District, the Dever Class Plaintiffs object to the following specific findings and recommendations of the Monitor's Report:

1. **"Of note is DMR's position that transfers from an ICF/MR to another ICF/MR do not require a certification of equal or better because such certification is not required by the Final Order. Although the Final Order is silent on this specific scenario, our office found that all of the ICF/MRs were Title XIX certified. Each facility currently has the minimum services, staffing and amenities to provide equal or better services."** (Monitor's Report at 14.)

The Dever Class objects to this portion of the report to the extent it could be read to countenance DMR's selective application of the "equal or better" certification requirement of this Court's Final Order. Nothing in that Order is precatory; it states unequivocally, at ¶ 4:

4

> Defendants shall not approve a transfer of any class member out of a state school into the community, or from one community residence to another such residence, until and unless the Superintendent of the transferring school (or the Regional Director of the pertinent community region) certifies that the individual to be transferred will receive equal or better services to meet their needs in the new location, and that all ISP-recommended services for the individual[']s current needs as identified in the ISP are available at the new location.

Ricci v. Okin, et al., 823 F. Supp. 984, 987 (D. Mass. 1993). Community residences, unlike ICF/MRs, are not (by and large) certified under Title XIX, or required to provide certain minimum services, staffing or amenities regardless of funding. By its plain terms, the certification required by ¶ 4 of the Final Order is a prerequisite to the "transfer of any class member . . . from one community residence to another such residence . . . ." Id. It should not be read any more narrowly than that.

> **2. Although the Monitor's Report Found That DMR Complied With The Transfer Regulation, 115 CMR 6.63, For The 49 Transfers Out Of Fernald, That Does Not Ensure Compliance With That Regulation Involving Transfers From Community Residences.** (Monitor's Report at 17-18.)

As recognized by the Monitor's Report, the ISP regulation contains a section entitled "Transfers: Special Requirements," which applies to individuals who move from one home that is operated, licensed or funded by DMR to another. 115 CMR 6.63(1). Such moves require modification of the individual's ISP, governed under a different regulation, which applies to "[a] change in the location of an individual's residence" that is operated or licensed by DMR. 115 CMR 6.25(1)(e). Together, those regulations require written notice of the proposed transfer to be sent by registered mail at least 45 days in advance, and an ISP modification meeting to be held within 30 days. 115 CMR 6.25(1)(e) & 6.63(2). If the would-be transferee or her guardian objects to the proposed transfer, the transfer is effectively blocked unless and until the individual or her guardian consents, or DMR prevails at an adjudicatory hearing or on an appeal to the Massachusetts Superior Court. 115 CMR 6.25(7) & 6.63(3)&(4).

5

The Transfer and ISP Modification regulations exempt situations where moves are necessitated by contract termination, lease termination, foreclosure, or unsafe or hazardous conditions at the residence. 115 CMR 6.25(1)(e) & 6.63(1)(b). Except for transfers resulting from those specified circumstances, DMR must by law comply with the 45 day notice requirement, conduct an ISP modification meeting, and respect objections submitted by individuals or guardians who do not consent to the proposed transfer. The Monitor's review of the 49 Fernald transfers found that DMR generally complied with those regulatory requirements, but as the Report notes, each of those transfers was consensual. (Monitor's Report, Docket No. 158, at 18.)

Recent filings in this case suggest that DMR may be circumventing the Transfer and ISP Modification regulations for certain community transfers by claiming inapposite exemptions. The Court Monitor had no occasion to consider those circumstances in its review of the Fernald transfers. The Monitor's Report, therefore, should not be adopted as an endorsement of DMR's regulatory compliance with respect to community transfers. Those transfers and DMR's practices require additional investigation and consideration. Accordingly, the Dever Class objects to the Monitor's Report to the extent it suggests DMR is in compliance with the Transfer and ISP Modification regulations outside the context of its limited review of Fernald transfers.

3. **"Informed consent is a term associated with medical procedures, not requests to transfer. . . . DMR's Notice of and Request for Consent to proposed Facility Transfer letter in fact complies with the consent requirement for transfers involving non-medical circumstances. 115 CMR § 5.08 requires informed consent for medical procedures and other potential[ly] invasi[ve] tactics or procedures such as . . . restraining an individual or involving a person in research activities. This is not similar to a guardian providing consent to have his/her ward transferred to another ICF/MR or a community residence."** (Monitor's Report at 21.)

The Monitor's Report interprets DMR's Informed Consent regulation, 115 CMR 5.08, not to apply to transfers. That regulation defines "Informed Consent" as "the knowing consent

voluntarily given by an individual (or by the individual's guardian, if applicable) who can understand and weigh the risks and benefits involved in the particular decision or matter." 115 CMR 5.08(2). An individual or her guardian's informed consent must be made in writing, after all possible outcomes, risks and alternatives have been explained, and may not be the product of coercion or overbearing inducement. 115 CMR 5.08(3).

The Informed Consent regulation applies to any "admission to a facility." 115 CMR 5.08(1)(a). Those terms are not defined in the regulation, and no Court has yet had occasion to construe their meaning. One possible reading would limit "admission to a facility" to mean only the initial admission into the DMR system, or admission into an ICF/MR institution, as opposed to a community-based facility. A broader reading might encompass not only the initial admission, but subsequent admissions as well, and include a community residence as a "facility." Moreover, nothing in the Monitor's Report addresses informed consent beyond the confines of the regulation. To the extent the Monitor's Report would seek to preclude that broader legal interpretation of the Informed Consent regulation, the Dever Class objects.

## CONCLUSION

For the foregoing reasons, the Dever Class respectfully objects to these three provisions of the Monitor's Report because the findings and recommendations based on its limited review of the Fernald transfers cannot be extrapolated to apply to transfers involving community residences.

                                Respectfully submitted,

                                The Paul A. Dever Association
                                  for Retarded Citizens, Inc.

                                By its counsel,

                                /s/ Dennis A. Murphy
                                Cornelius J. Moynihan, Jr. (BBO #358840)
                                Dennis A. Murphy (BBO # 645168)
                                Nixon Peabody LLP
                                100 Summer Street
                                Boston, MA 02110
                                (617) 345-1000

## Certificate of Service

I, Dennis A. Murphy, hereby certify that the foregoing Dever Class Plaintiffs' Limited Objection To The Monitor's Report will be served electronically upon all counsel of record through the Court's ECF system, and that a paper copy will be served by first class mail, postage prepaid, upon non-registered participants indicated on the Notice of Electronic Filing.

                                /s/ Dennis A. Murphy
                                Dennis A. Murphy (BBO # 645168)

Dated: May 31, 2007