# Commonwealth of Massachusetts
# Disabled Persons Protection Commission

## FISCAL YEAR 2006

# DPPC ANNUAL REPORT



**DPPC Mission Statement**

*"To protect adults with disabilities from the abusive acts or omissions of their caregivers through investigation, oversight, public awareness and prevention"*

Report suspected abuse of persons with disabilities to the
DPPC 24-Hour Hotline
1-800-426-9009 V/TTY

**Inside the Report:**

| | |
|---|---|
| Staff Listing | 2 |
| Executive Director's Letter | 3 |
| DPPC Hotline | 4 |
| Investigation Unit | 7 |
| Oversight Unit | 8 |
| Outreach & Prevention Unit | 9 |
| IT Unit | 11 |
| Legal Unit | 12 |
| The State Police | 13 |
| DPPC & SPDU Staff Hiring | 16 |
| Building Partnerships | 17 |
| FY2006 In Review | 20 |
| Staff Performance Award | 23 |
| Allegations of Abuse | 23 |
| APS 19C Investigations | 24 |
| Indicators of Abuse & Neglect | 30 |
| DPPC Commissioners | 31 |

Mitt Romney — Governor
Kerry Healey — Lieutenant Governor
Jack McCarthy — Chairman
Carla A. Goodwin, Ph.D. — Commissioner
Jo Ann Sprague — Commissioner
Nancy A. Alterio — Executive Director

DPPC
50 Ross Way, Quincy, MA 02169
Phone: 617-727-6465 V/TTY
         800-245-0062 V/TTY
Fax:    617-727-6469
Web:   http://www.mass.gov/dppc
Hotline: 800-426-9009 V/TTY

**Disabled Persons Protection Commission**
**Annual Report FY2006**



Page 2

# DPPC STAFF



**DPPC MANAGERS**
Back Row from Left:
Emil DeRiggi, Deputy Executive Director; Ann Murray, Intake/Oversight Manager
Middle Row from Left:
Heidi Cresta, Intake/Oversight Manager; Nancy Alterio, Executive Director
Front Row from Left:
Ralph Calderaro, General Counsel; John Brown, Director of Administration & Finance

**DPPC STAFF**
Starting at top row from left to right:

- Trooper Tim Grant; Greg Bolger; Heidi Cresta
- Ralph Calderaro; Trooper Brenda Watts; Andy Zamagni
- Audrey Drinan; Lisa Bukow
- Susan Love; Patty Collings
- Kathy Bodrero; Ann Murray; Emil DeRiggi
- Berkys Kazimierczak; Julie Walden; Ada Diaz
- Seana Miller; Paula Mather; Kerry Joyce
- Nancy Alterio; Gail Quinn
- David Viens; John Brown; Michelle McCue



*The DPPC staff thanks you for taking the time to review DPPC's FY2006 Annual Report. If you have questions or require additional information, please contact the DPPC at (617) 727-6465.*

# LETTER FROM EXECUTIVE DIRECTOR



Dear Reader:

About seven years ago, only six months after assuming my position at the Disabled Persons Protection Commission (DPPC), I was presenting to a room full of professionals about the importance of reporting abuse committed against persons with disabilities. Before I introduced the DPPC and its role to the conference participants I asked the attendees for a show of hands as to how many had heard of the agency. As anticipated, only about two or three out of 100 or so attendees raised their hands. Seven years later, I asked this same question to another group of about 100 professionals and the opposite showing occurred as all the attendees, except for two or three, raised their hands in awareness of the DPPC. As the show of hands confirmed, many more professionals are aware of DPPC and their reporting responsibilities today in comparison to seven years ago. This awareness is reflected not only in the show of hands but in the significant increase in reporting to DPPC's 24 hour Hotline. In fiscal year 1999 DPPC received only 3988 reports of abuse in comparison to 6,594 reports in fiscal year 2006, a 65% increase.

I don't believe the increase in reporting is due to an increase in abuse, but rather because more professionals are aware of their obligation to report. Through the efforts of the Building Partnerships for the Protection of Persons with Disabilities initiative (BPI), multiple agencies are working together under the leadership of Northwestern District Attorney, Elizabeth D. Scheibel to educate professionals and the public at large about the prevalence of violence committed against persons with disabilities. It is impressive to see agencies and professionals from various disciplines coming together, recognizing their common goals and working together for the good of those they serve. Through the efforts of the Massachusetts District Attorneys Office (MDAA), the eleven district attorneys, State and local police, Department of Mental Retardation (DMR), Department of Mental Health (DMH), Massachusetts Rehabilitation Commission (MRC), Sexual Assault Nurse Examiners (SANE), Massachusetts Office for Victims of Crime (MOVA) and the DPPC, training is now provided to new law enforcement recruits, veteran police officers, emergency medical personnel, victim advocates and professionals providing services to persons with disabilities. Training is provided through a number of mechanisms including on-line training through the State Police Academy for state and local police, one day training in each of the academies through the Municipal Police Training Committee for new recruits, a 40 hour basic investigation course, and a 40 hour sexual assault course for adult protective service investigators and a one hour training for medical staff through SANE.

In addition, during fiscal year 2006 service providers and their employees were provided the opportunity to attend five regional trainings which focused on how they should effectively address abuse committed against their consumers. These trainings presented a video and manual entitled, *Protect – Report – Preserve; Abuse Against Persons with Disabilities*. The training materials were developed by BPI through the efforts of many contributors. Providers and their staff enthusiastically welcomed the trainings and the distributed materials. Although many professionals are aware of their reporting responsibility, many are still not clear on what constitutes abuse, and beyond reporting, what to do when abuse is suspected. One attendee reported, *"I learned much more information in this training than I had expected. Before this training I would not be sure what to do in situations like these."* Another attendee went on to file a report of abuse and stated, *"Preserve, Protect and Report is a wonderful training. Please recommend this program to other agencies, because without it this report would not have even been made."* Another participant was impressed with the relationships among the various agencies and the efforts of the multidisciplinary approach and wrote, *"While I completed my response sheet immediately afterward, I am a processor and only over the weekend realized how much the training enriched my life. As I drove my son from Cape Cod to camp in Northampton, I felt so proud that the Commonwealth had made the commitment to protect the vulnerable. Passing state troopers on the Mass Pike, I appreciated the nonpartisan commitment that is truly being operationalized: the blending of diverse areas of expertise to provide seamless service. Most of all, the demeanor of the presenters and moderators were the best role models for how the system can work: being open, collegial, compassionate and passionate."*

Although much has been done to educate professionals about the prevalence of violence committed against persons with disabilities and how to respond to that violence, it is clear that more work remains. We need to continue our efforts to ensure that professionals not only are aware of DPPC but also are able to recognize abuse and neglect and respond accordingly. In addition, just as we have partnered with many others, it is imperative that we partner with those that are the target of the abuse: persons with disabilities. If we are truly going to effect change we need to educate persons with disabilities to recognize and effectively respond to abusive situations. Those that are being victimized need to be empowered to recognize and stop the abuse. Recognizing this, BPI is partnering with Massachusetts Advocates Standing Strong (MASS) in the upcoming fiscal year to develop training curricula and materials to enhance the ability of persons with disabilities to recognize abuse. Partnering with self advocates will enhance protection for victims with disabilities.

My sincere thanks to the many professionals who have strived to protect victims with disabilities and reported suspected abuse to DPPC's Hotline.

Yours truly,

*Nancy A. Alterio*

Nancy A. Alterio
Executive Director

**Disabled Persons Protection Commission**
**Annual Report FY2006**

Page 4

# DPPC HOTLINE



*From left: Berkys Kazimierczak, Greg Bolger and Julie Walden*

The Disabled Persons Protection Commission (DPPC) operates a 24-hour Hotline to which citizens of the Commonwealth can report incidents of suspected abuse involving adults with disabilities by dialing 1-800-426-9009V/TTY. A written report is also required within 48 hours of the oral report. A written report of deaths must be forwarded to DPPC within 24 hours of the death. The DPPC Hotline and the Intake/Oversight Unit staff who operate it are a vital part of the DPPC's efforts to protect adults with disabilities, who are dependent upon others, from abuse and neglect.

Three DPPC Intake Operators staff the Hotline between 9:00 a.m. and 5:00 p.m. on business days. An after-hours vendor contracted, trained, and monitored by DPPC staff, answers the Hotline after 5:00 p.m. and before 9:00 a.m. on business days. The vendor also answers the Hotline on weekends and holidays. During the time that the after-hours vendor answers the Hotline there are DPPC staff members readily available to manage emergency or complicated situations. Bilingual (Spanish – English) Intake Operators are available to take abuse reports, and all staff members are trained to communicate via TTY and to utilize Verizon's Telecommunication Relay Service. Staff members working on the DPPC Hotline are responsible for receiving, documenting and evaluating information provided by reporters. DPPC management reviews each report of abuse to determine the response needed to ensure the safety of the individuals involved. Reports are also evaluated to determine whether the situation meets the statutory criteria that establish jurisdiction under M.G.L. c. 19C.

**The statutory criteria requires that the victim of the alleged abuse must:**
- Be between the ages of 18 and 59 years,
- Be disabled by means of mental illness, mental retardation or physical impairment, and
- Require the assistance of a caregiver to accomplish daily living needs as a result of the disability.



ABUSE REPORTING TO DPPC HOTLINE 1987-2006*

| Year | Reports |
|---|---|
| 1987 | 389 |
| 1988 | 1016 |
| 1989 | 1485 |
| 1990 | 1642 |
| 1991 | 1948 |
| 1992 | 2749 |
| 1993 | 3293 |
| 1994 | 3366 |
| 1995 | 3259 |
| 1996 | 3487 |
| 1997 | 3840 |
| 1998 | 3976 |
| 1999 | 3684 |
| 2000 | 4203 |
| 2001 | 4605 |
| 2002 | 5445 |
| 2003 | 5773 |
| 2004 | 5979 |
| 2005 | 5666 |
| 2006 | 5989 |

* Does NOT include Death reports and Information & Referral Calls

Page 5 — Disabled Persons Protection Commission Annual Report FY2006

# DPPC HOTLINE CONTINUED...



**Hotline Activity Report Information**
- Number of Reports Screened in for 19C Investigation: 1824
- Number of Reports Not Under 19C Jurisdiction: 4165
- Total of Reports Received: 5989*

*Does NOT include Death Reports and Information & Referral Calls.

To establish jurisdiction, the Hotline staff must also examine the nature of the incident. DPPC's enabling statute, **M.G.L. c. 19C, and the DPPC regulations, 118 CMR**, require that the incident must:

- Include an act or omission by a caregiver and
- Result in a serious physical or emotional injury.

Information gathered by Hotline staff is entered into the DPPC database. The information is available for review each time a subsequent report is made involving a particular individual, alleged abuser or program. All relevant information is documented on a DPPC Intake form and is forwarded to an investigator in situations that meet DPPC's jurisdictional criteria.

If a reported situation does not meet the criteria to establish jurisdiction under M.G.L. c. 19C, a copy of the DPPC Intake form is forwarded, for review and action, to the service agency appropriate to the individual's age or disability (see graph on right).

A member of the State Police Detective Unit (SPDU) assigned to the DPPC reviews every report made to the DPPC Hotline. The review by the SPDU is to determine whether the information suggests a crime may have occurred and whether a criminal investigation is necessary. Suspected criminal activity is reported by the SPDU to the appropriate District Attorney's office for their review and action as needed.

The DPPC Hotline received an average of 499 abuse reports each month during fiscal year 2006. In addition, the Hotline staff answered questions and provided information and referral services to an additional 540 callers monthly.

**Death Reports**

The DPPC statute provides that any caregiver that is a state agency or subdivision of the Commonwealth or private agency contracting with the Commonwealth shall immediately orally notify the DPPC and local law enforcement of the death of any person under their care. A written report of such deaths must also be forwarded to DPPC within 24 hours of the death. Hotline staff received 605 death reports during fiscal year 2006 (see graph below). Each report of a death is entered into a database specifically for this purpose. This information is assessed to make a determination of whether the cause of death may be related to abuse, and if so, an investigation is conducted.



**DEATH REPORTS FOR FY 2006**
- REPORTED: 605
- INVESTIGATED: 24
- UNSUBSTANTIATED: 9
- SUBSTANTIATED: 4
- PENDING: 11



**CASES REFERRED TO OTHER AGENCIES**
- DSS: 74
- DPH: 201
- EOEA: 514
- DMR: 1638
- DMH: 1087
- MRC: 589
- DOC: 43
- OTHER: 19

5

**Disabled Persons Protection Commission**
**Annual Report FY2006**

Page 6

# DPPC HOTLINE CONTINUED...

The goal of the DPPC Hotline is to provide every citizen of the Commonwealth a resource to which they can report suspected abuse of persons with disabilities. DPPC trains its staff to be efficient, effective, and courteous so that reporters can feel positive about their decision to report what they suspect to be abuse or neglect.

### Mandated Reporting
The DPPC receives reports of abuse from various sources. Some reporters of abuse are mandated, required by law, to make reports of suspected abuse to the DPPC.

### What is a Mandated Reporter?
Mandated reporters are persons who, as a result of their profession, are more likely to be aware of abuse or neglect of persons with disabilities. Mandated reporters are required by law to report cases of suspected abuse to DPPC when they have a suspicion that a person with a disability is being abused or neglected. Other persons who are not mandated to report may choose to file reports of suspected abuse.

### Who are Mandated Reporters?
* Medical personnel
* Medical examiners
* Social workers
* Foster parents
* Police officers
* Probation officers
* Educational administrators
* Guidance counselors
* Dentists
* Family counselors
* Daycare workers
* Psychologists
* Public and private school teachers
* Employees of private agencies providing services to people with disabilities
* Employees of state agencies in the Executive Office of Health & Human Services

### What is Reportable?
The standard for reporting suspected abuse and neglect is "reasonable cause to believe" which means that mandated reporters need only a "mere suspicion" that abuse or neglect was committed against a person with a disability.

Mandated reporters are also required to report to the DPPC all cases in which an individual with a disability has died, regardless of whether or not abuse or neglect is suspected.

### Protection for Mandated Reporters
Mandated reporters are immune from civil or criminal liability as a result of filing a report of alleged abuse of a person with a disability. Non-mandated reporters are also protected providing the report was made in good faith. If a mandated reporter is retaliated against by their employer for filing an alleged report of abuse, or by participating in the DPPC investigation, DPPC will conduct an investigation into the retaliation. Such retaliation is a crime and is punishable by up to $1000.00 fine, or up to one (1) year in jail, or both.

### Consequences for Not Reporting
The failure to report can result in severe consequences for the alleged victim, other potential victims, and the mandated reporter. Victims of abuse and neglect are at increased risk of further abuse, if it goes unreported. The frequency and severity of abuse and neglect are likely to increase over time if no intervention is made. A failure to intervene by not reporting will likely result in other individuals being abused and neglected. In Massachusetts, mandated reporters can be fined up to $1,000 for failure to report incidences of suspected abuse and neglect of individuals with disabilities.

### DPPC HOTLINE UNIT 2006 UPDATE

* Received information and entered intakes on 5,989 reports of abuse. 1,824 of these fell within the jurisdiction of M.G.L. c. 19c and were screened in for investigation.

* Received information and entered death intakes on 605 reports of death.

* Received 6,486 Information and Referral calls.

* Completed successful conversion to new Hotline vendor. This entailed developing a specific Hotline script, developing a new intake form, and training of both vendor and DPPC staff. A DPPC Manager traveled to vendor's site to directly train staff.

* Identified need for enhanced ALAB search. Proposal changes presented to MIS-IT Coordinator, who developed a script which has been implemented. This has reduced search time and has enhanced search capabilities.

* Developed scripts and implemented electronic transfer of intakes to MRC and DMH. Trained staff in new procedures. Resulted in overall time savings.

* DPPC Manager participates in DMR Central Mortality Review Committee meetings on a monthly basis.

6