UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ASSOCIATION FOR RETARDED CITIZENS OF MASSACHUSETTS, INC., et al., | | |
| Plaintiffs, | Civil Action Nos. | 72-0469-T |
| | | 74-2768-T |
| v. | | 75-3010-T |
| | | 75-5023-T |
| COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF MENTAL RETARDATION, et al., | | 75-5210-T |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE DEPARTMENT OF MENTAL RETARDATION'S
MOTION TO DISSOLVE THE COURT'S ORDER OF FEBRUARY 8, 2006**

In a pair of directives issued 13 months apart, this Court has ordered that "all transfers from Fernald to other ICF/MRs and community residences shall be discontinued" (Order of February 8, 2006) "pending further order of this court" (Order of March 7, 2007). Because no proper legal grounds for an ongoing injunction exist, and because the Court has not set forth "the findings of fact and conclusions of law which constitute the grounds of its action," as required by Fed. R. Civ. P. 52(a), the Department hereby moves that the orders dated February 8, 2006, as extended on March 7, 2007, be dissolved immediately.

**BACKGROUND**

In 1993, this Court entered an omnibus disengagement order "closing the federal court's oversight of these cases" and "remov[ing] [them] from the court's active docket."

*Ricci v. Okin*, 823 F. Supp. 984, 985-986 (D. Mass. 1993). Since then, the Court has never acted to formally reopen the cases. Nonetheless, by order dated February 8, 2006 (the "February 2006 Order"), this Court appointed United States Attorney Michael J. Sullivan as court monitor in these cases and directed him to determine "whether the past and prospective transfer processes employed by the Department of Mental Retardation comply with federal law, state regulations, as well as the orders of this court." Docket no. 90 at 1. By the same order, the Court temporarily enjoined all transfers by the Department of individuals from the Fernald Developmental Center. Specifically, the Court ordered: "*Pending the completion of Mr. Sullivan's inquiry, and his report to the court,* all transfers from Fernald to other ICF/MRs and community residences shall be discontinued." *Id.* at 2 (emphasis supplied). The Monitor then conducted an intensive, 13-month investigation into the Department's past and prospective transfer processes and determined that the Department was in full compliance with all applicable laws, regulations, and orders of the Court. *See* "The Monitor's Report" dated March 6, 2007, at pp. 13-23 (Docket no. 158).[1]

About five weeks prior to the filing of the Monitor's Report, the Fernald plaintiffs filed a one-sentence motion to extend the February 2006 Order "until further Order of the Court." Docket no. 138 (dated January 31, 2007). The Court allowed that motion "pending further order of this court" on March 7, 2007. Docket no. 160.

---

[1] For example, on page 16 of his report, the Monitor concluded that, contrary to the allegations of certain plaintiffs, "DMR was in compliance for the transferred residents with certifying equal or better services in the community" [the key requirement of this Court's final disengagement order of May 25, 1993]. He also concluded that, with respect to the nearly 50 transfers of Fernald residents that took place between 2003 and 2006, the families' and guardians' reactions and attitudes were "extremely positive," leaving "[no] impression that there were any concerns or tendencies to seek a return to Fernald." Docket no. 158 at 22-23. "[C]ommunity placement for many individuals has been a great success." *Id.* at 16.

2

On February 14, 2007, plaintiff Association for Retarded Citizens of Massachusetts (and intervenor Disability Law Center) filed a motion seeking modification of the February 2006 Order.  Docket no. 150.  In brief, these parties asked the Court to permit the transfer of those current Fernald residents who have expressed a desire to transfer from Fernald to either a community-based residential setting or another ICF/MR and whose proposed transfer enjoys the support of the Court Monitor.  In late February 2007, the Department joined this motion, advising the Court that, in multiple communications to Department staff pre-dating the February 2006 Order, the guardians and family members of several Fernald residents had expressed a desire to pursue prompt placement for their wards from the Fernald Center to community residential programs.  Docket no. 155.[2]   Pointing to the legal right of these individuals to so move, as recognized by the Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), the Department moved the Court to allow these placements from the Fernald Developmental Center to take place without further delay.  Docket no. 155 at 1.

The Court has taken no action on pleadings numbered 150 and 155, pending since February, except to permit the transfer of one individual whose mother spontaneously addressed the Court from the gallery during a hearing held on March 7, 2007, pleading that her son be permitted to move from Fernald.  *See* Docket no. 164.  At this hearing, counsel for the Department asked about the effect of the February 2006 Order through May 31, 2007, in light of the Court Monitor's statement that voluntary transfers should be

---

[2]  On January 12, 2007, the Court Monitor filed, and the Court published, two letters to the Court, confirming that, at least with respect to certain specified individuals (whose names were redacted for confidentiality reasons), the Department has undertaken all appropriate transfer planning actions and the specific transfers the Department and individual guardians are proposing are in the best interests of the subject Fernald wards and meet the "equal or better" standard set forth in the 1993 disengagement order.  *See* Docket nos. 132 and 133.

3

permitted as provided in the certification process set out in the May 1993 disengagement order. Transcript of March 7, 2007, proceedings (Docket no. 170), at 42. The Court stated that "[e]verything [would remain] the same" and that individuals who had been waiting to transfer, for some 13 months at that point, "will have to wait another 45 days." *Id.* at 43.

### REASONS FOR GRANTING THE MOTION TO DISSOLVE

By its express terms, the February 2006 Order expired upon the filing of the Court Monitor's report on March 6, 2007. *See* Docket no. 90 at 2. After filing a report finding the Department's transfer processes to be in compliance with all relevant laws and regulations, the United States Attorney reportedly considers his role in this case to have come to an end. But, in action taken on March 7, 2007, the Court extended, apparently indefinitely, that part of the February 2006 Order that barred transfers from the Fernald Developmental Center. *See* Docket no. 160 (the "March 2007 Order"). As further developed below, there is no lawful basis to impose or continue any further restriction on transfers from Fernald. Additionally, there is no basis in fact sufficient to maintain the ongoing injunction; indeed, no findings of fact have entered to support either the February 2006 or March 2007 Orders.

**1. An Injunction May Not Properly Enter in a Closed Case.**

On May 25, 1993, this Court entered a final, "comprehensive" disengagement order in these cases. *Ricci v. Okin*, 823 F. Supp. at 985. That order, entered with the consent of Department, specified the sole conditions under which these cases could be reopened and restored to the Court's active docket. *Id.* at 986, 988, ¶¶ 1, 7. The conditions for reawakening this Court's jurisdiction have not been met and, indeed, the

Court has not seen fit to reopen these cases, despite the filing of two motions by certain plaintiffs seeking such a formal revitalization of the cases. *See* Docket entry for January 20, 2005 (order denying without prejudice Fernald plaintiffs' motion to reopen case); Docket entry for June 7, 2006 (same re Wrentham plaintiffs' motion).

As argued in the Department's May 31, 2007, filing, this Court presently lacks both jurisdiction and authority to enjoin further transfers from Fernald. *See* Docket no. 198 at pp. 9-16.[3] For the reasons stated in the Department's filings (Docket nos. 155 and 198), which are expressly incorporated herein and summarized in Point 3, *infra*, the Department submits that the February 2006 Order and any associated injunction must be dissolved.

**2. The Court's Injunctive Orders Possess Neither the Requisite Clarity Nor Adequate Factual or Legal Support to be Binding on the Department**

To bind a party, an injunctive order must explicitly direct the party to do, or refrain from doing, a specified thing. *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991). Rule 65(d) of the Federal Rules of Civil Procedure provides: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained[.]" Neither the February 2006 nor the March 2007 orders, however, set forth the reasons for their issuance. In fact, the March 2007 Order did nothing more than allow a one-sentence motion asking for an order "prohibiting the transfer from Fernald to other ICF/MRs and community residences [sic] until further Order of the Court." Docket no. 138.

Notwithstanding the March 2007 Order, the Court ordered, a mere five days later,

---

[3] *Cf. Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 538 (1st Cir. 1993) (Keeton, J., dissenting) (district court lacked jurisdiction to enter substantive orders in a closed case).

5

on motion filed by the United States Attorney, the transfer of a Fernald resident to a community placement. *See* Docket nos. 161, 162, and 164 (all dated March 12, 2007). These actions, particularly the "further order" of March 12, 2007 (Docket no. 164), leave the Department unsure about exactly what type of transfer activity (*e.g.*, making plans for transfers with the guardians of Fernald residents, endorsing or permitting the transfer of an individual who fervently wishes to leave Fernald, or going through with transfers initiated by the Department) is now prohibited. *Cf. Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam) (Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders.").

Furthermore, Rule 52(a) of the Federal Rules of Civil Procedure states that "in granting or refusing interlocutory injunctions the court shall . . . set forth the findings of fact and conclusions of law which constitute the grounds of its action." That has never occurred here – not in connection with the original order of February 8, 2006; not on March 7, 2007; nor subsequently.

It is now evident that proper grounds did not exist for the issuance of an injunction in February of 2006 against the transfer of even a single Fernald resident to other institutions or community placements, and clearly nothing justifies leaving that order in place indefinitely. Of critical importance, the Fernald plaintiffs have not challenged the Court Monitor's findings that the Department has complied with all relevant laws in its prior transfer activities. Nor have they furnished any reasons or authority for any continued injunction against transfers of Fernald residents. The Fernald plaintiffs' motion to continue the February 2006 Order past the date on which the Court Monitor filed his report consisted only of a single, one-sentence request, with no

6

supporting evidence and no "memorandum of reasons, including citation of supporting authorities," as is required by Local Rule 7.1(B)(1).  *See* Docket no. 138.

### 3. The Court's Injunctions Contravene Both Federal and State Law.

In its February 2007 filing, the Department explained why the injunction prohibiting transfers pending issuance of the Court Monitor's final report imposed an undue hardship on the Department, constituted an infringement on the rights of Fernald Class members, and was in contravention of the public interest.  Docket no. 155 at 3-4, 10-20.  Now that the Court Monitor has declined to fault the Department's transfer practices, nothing could warrant any continuing injunction against transfers.  Most urgently, the proposed transfers from Fernald that have been initiated because of the Department's receipt of *voluntary* requests for transfer made by certain individuals' guardians or family members must be permitted to proceed.  In the nine or so individual cases he reviewed, the Court Monitor exhaustively studied these proposed guardian-initiated transfers and concluded that the subject individuals can receive treatment in the new, less restrictive, setting that is "equal to or better" than that available at Fernald.[4]  The injunction prohibiting transfers from Fernald violates the right of Fernald residents to receive services in less restrictive community-based settings and improperly overrides the competent judgments of the government's treatment professionals.  *See Olmstead*, 527 U.S. at 582, 602; 42 U.S.C. § 12132; 28 C.F.R. § 35.130(d); and Docket no. 155 at 10-12.

---

[4]  The Court Monitor's conclusion followed a careful review of each individual's complete file, including review of their individual support plans for the last five years; visits with class members at Fernald and visits to the proposed settings, both residential and day programming; visits and interviews with guardians and family members; and a medical review by independently selected medical experts.  *See* Docket no. 158 at 1-2, 10-12, 14-16.

7

As explained in detail in the Department's prior filings, giving any further effect to the February 2006 Order would also contravene Massachusetts state law,[5] Title XIX's active treatment regulations (*see* 42 C.F.R. § 483.440), repeated directives of the Massachusetts Legislature,[6] and the Department's own regulations.[7]  *See* Docket no. 198 at 16-21; *see also* Docket no. 213 (Disability Law Center memorandum of law) at 2-3. Furthermore, the Department must be permitted its lawful latitude, consistent with federalism principles, to engage in transfer activities in order to efficiently allocate limited resources and plan for appropriate residential opportunities for all individuals under its charge.  *See* Docket no. 155 at 17-20 and Attachment 1; Docket no. 198 at 17-19, 26-30.  Adhering to the limitations of the February 2006 Order disserves the public interest in each of these respects.  *See id.*

### 4. The Court's Transfer Injunction Is Causing Irreparable Injury to Fernald Residents.

Perhaps of greatest significance, however, the continuing injunction is seriously harming individuals whose best interests call for treatment in a setting other than Fernald. This harm is in fact irreparable.  *See* Docket no. 155 at 15-17.  It is exemplified by the

---

[5]  *See* Docket no. 198 at 17-21.  Massachusetts law governing residency in Department facilities states: "Any person retained in a facility . . . ***shall be free to leave such facility at any time***, and any parent or guardian who requested the admission may withdraw such person at any time." M.G.L. c. 123B, § 7 (emphasis added).

[6]  *See* Line Item 5930-1000 contained in Chapter 26 of the Acts of 2003 (Fiscal Year 2004); Chapter 149 of the Acts of 2004 (Fiscal Year 2005); Chapter 45 of the Acts of 2005 (Fiscal Year 2006); and Chapter 139 of the Acts of 2006 (Fiscal Year 2007).  The relevant legislative language is discussed in Docket no. 198 at 16-17 and n. 17.

[7]  *See, e.g.,* 115 C.M.R. §§ 6.05(2)(e), 6.20, 6.23.  *See also* Docket no. 198 at 18-19.  The February 2006 Order is also inconsistent with the final disengagement order entered in these cases, which specifies that *Ricci* class members are entitled to "the *least restrictive*, *most normal*, appropriate residential environment, together with the most appropriate treatment, training, and support services suited to that person's individual needs." *Ricci v. Okin*, 823 F. Supp. at 987 n.2 (emphasis supplied).

injury suffered by a Fernald resident for the past 50+ years, whose guardian swore out an affidavit earlier this month averring that the Fernald resident has repeatedly asked the guardian over the past year about when he will be permitted to move to a group home near his relatives.  *See* Affidavit of [name redacted per court order], Docket no. 212-2, at ¶ 8.  This resident and his brother-guardian have visited the proposed new community-based placement and have "found it to be clean, well furnished and staffed, and overall, an excellent home for [the Fernald resident]."  *Id*. at ¶ 4.  This individual and his family have been interested for some 18 months now in a transfer from Fernald and the only impediments to that transfer have been the February 2006 Order, as extended on March 7, 2007, and this litigation generally.[8]  The guardian, however, has stated plainly that the legal issues under advisement will not affect his desire to see his brother transferred out of Fernald.  *Id.* at ¶ 13.  Individuals who desire to exercise their lawful right to transfer to a less restrictive placement should not be required to publicly disclose their intentions, perhaps retain counsel, and ask the court for permission.  No authority exists to support such an intrusive oversight role for the federal courts.

---

[8]  Yet United States Attorney Michael Sullivan, as Court Monitor in these cases, opined as far back as January of 2007 that this individual "can receive equal to or better treatment" at the proposed community residence. Docket no. 132 at 3.

9

CONCLUSION

Because the prior orders restraining the Department do not comply with Fed. R. Civ. P. 52(a) and 65(d), and because there is no lawful basis to impose or continue any further restriction on transfers from Fernald, the Department should be free to recommence transfer activities with individuals currently residing at Fernald (and/or their relatives or guardians).  Accordingly, the Department respectfully requests that the Court dissolve forthwith the February 2006 Order and any associated orders, directives, and injunctions.

    Respectfully submitted,

    DEPARTMENT OF MENTAL RETARDATION

    By its attorneys:

    MARTHA COAKLEY
    ATTORNEY GENERAL

    /s/ Marianne Meacham

    Marianne Meacham, BBO #550468
    Special Assistant Attorney General
    General Counsel
    Department of Mental Retardation
    500 Harrison Avenue
    Boston, MA  02118
    (617) 624-7701

    and

    /s/ Robert L. Quinan, Jr.

    Robert L. Quinan, Jr.  BBO No. 553010
    Assistant Attorney General
    Office of the Attorney General
    One Ashburton Place, 20th floor
    Boston, MA  02108
    (617) 727-2200, ext. 2554

Dated:  July 12, 2007

**CERTIFICATE OF SERVICE**

    I, Assistant Attorney General Robert L. Quinan, Jr., do hereby certify that a copy of the above *Memorandum of Law in Support of the Department's Motion to Dissolve the Court's Order of February 8, 2006* is being mailed via first class to all counsel of record who are not registered with the Court's Electronic Case Filing system.


Date:  July 12, 2007                                        /s/ Robert L. Quinan, Jr.