Rebecca McQuarrie
76 Newbury Road
Rowley, MA 01969
978-432-1262 (Home)
978-430-4268 (Cell)
rebeccamcquarrie@yahoo.com

November 13, 2007

U.S. District Court Judge Joseph L. Tauro
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Suite 7110
Boston, MA 02210

Dear U.S. District Court Judge Tauro,

I am writing this letter in reference to my sister Barbara Garrette who was a resident in the Fernald State School and is a plaintiff in the class action lawsuit against the State of Massachusetts (Case #74-2768-T). (RICCI Class Member)

My sister Barbara has been diagnosed as a "Highly Functional" special needs individual. According to the ruling in this case, the plaintiffs are entitled to receive services (any type of services needed) to be able to live comfortably on their own. From the time she was released from the institution until July of 2004, Barbara lived with our mother, Margaret Stevens.

Upon my mother's death in July of 2004, Barbara moved into her own subsidized apartment. At this time I was overseeing my sister's care but I realized that I couldn't do it alone so I contacted Penny Rogers, Service Coordinator, Department of Mental Retardation (DMR) to assist in obtaining services for Barbara as established in the above case. From 2004 until the present I have found that I am still providing all of the services for my sister with little or no help from DMR. Worse, DMR has been obstructionist in involving me in my oversight role.

In February of 2005, Barbara and I sat down with individuals from DMR and Seven Hills Foundation (the company contracted by DMR to provide these services) and developed an Individual Support Plan (ISP) that we all agreed to. From 2005 to present it is clear to me that the services that were agreed upon are not being provided, despite my many conversations with DMR and Seven Hills Foundation staff.

Lastly, I seem unable to bridge a confidentiality loophole with the DMR case workers. My sister always wants to please. As her health care proxy I have asked that I be involved in treatment decisions. Barbara always concurs in my presence that DMR is to keep me fully informed. She has put this in writing, and it is in her file at DMR. She had confirmed this to her treating primary care physician repeatedly in private, i.e. outside of my presence.

But, since Barbara is legally speaking, medically competent, I can never become her custodian, unless her health status dramatically changes. As a result DMR repeatedly refuses to include me in Barbara's care decisions since I am not Barbara's "custodian". They claim, always in my absence, that Barbara confirms to DMR that she wishes to make her own decisions, and therefore I cannot receive any information in regard to Barbara's care from DMR. Consequently, my relationship with DMR is contentious. I have no faith that Barbara is not being taken advantage of to prevent oversight of DMR care by me. I have been thwarted at every turn with bureaucratic double speak. I respectfully request that you interview Barbara in private to settle this issue. I cannot be fully responsible for my sister, and have DMR caseworkers hide behind confidentiality laws, in a self interested manner, to prevent me from fulfilling my promises to my mother to take care of Barbara.

It is my hope that both of these organizations are investigated to make sure that my sister is receiving the services promised to my mother when she agreed to take Barbara out of Fernald, before she died.

Thank you in advance for your help and guidance, I have no where else to turn.

Respectfully,

*Rebecca McQuarrie*

Rebecca McQuarrie