UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert Simpson Ricci, *et al.*, | CIVIL ACTION Nos.<br>72-0469-T<br>74-2768-T<br>75-3910-T<br>75-5023-T<br>75-5210-T |
| v.   Plaintiff | |
| Robert L. Okin, *et al.*, | |
| Defendants | |

### AFFIDAVIT OF TERRI ANGELONE

I, Terri Angelone, on oath hereby depose and state as follows:

1)   That I am employed by the Arc (formerly Association of Retarded Citizens) of Greater Boston (hereinafter referred to as the "Arc") as CEO. I have held this position since May, 1999.

2)   As CEO I am, amongst other things, responsible for overseeing the day to day operations of the Arc and the services that it provides.

3)   The Arc of Greater Boston is an association of individuals with intellectual and developmental disabilities which strives to improve the quality of life of children and adults with such disabilities through public education, legislative advocacy, self-advocacy and program development and implementation. This includes serving as guardians for individuals with intellectual or developmental disabilities.

4)   The Arc of Greater Boston's mission includes the advocating for services and supports that people with disabilities and their families say they want or they need as well as supporting individuals with disabilities to achieve their goals as valued members of the community.

{Client Files\EMP\245085\0999\AAG\B0146881.DOC;1}

Exhibit A
Affidavit of Terri Angelone

5) The Arc is known for its advocating for individuals to live in community settings as opposed to institutions. Despite this philosophy, the Arc will only advocate for those individuals who have a desire to live in the community or who are appropriate for community placement. In its capacity as guardian, the Arc will at no time force any individual to reside in a location that they adamantly oppose or that will not offer them the highest possible standard and quality of living.

6) The Arc maintains contractual and other relationships with the Department of Mental Retardation ("DMR"). Despite this relationship, the Arc makes any and all decisions regarding the individuals it serves on an independent basis. While DMR may have input in decisions, it is ultimately the independent decision of the Arc that is implanted when providing services to individuals.

7) I have read the motion and accompanying affidavits filed in federal court which attempts to implicate the Arc in potential wrong doing or actions that may be contrary to this Court's order.

8) In my capacity as CEO of the Arc I am aware of the requirement ordered by the Court that any individual transferring from the Fernald Development Center must be given the option to remain at that facility. In all the cases referred or alluded to in the Fernald Plaintiff's motion, this option has been provided to the individuals in question. These individuals all have also been provided with the option to return to Fernald should they not be successful in their new environment.

9) At no time was a case manager reassigned to certain cases due to the beliefs that a transfer into the community was objectionable by the staff.

{Client Files\EMP\245085\0999\AAG\B0146881.DOC;1}

10) With my knowledge and assent, Ms. Carrie Johnson was assigned to handle the guardianships in question that are referred to in the motion and affidavit by Ms. Marilyn Meagher. This reassignment was not due to the initial case manager objecting to the transfers of individuals into the community. This reassignment was implemented at the request of the initial staff person who asked that the cases be reassigned. The initial staff person assigned indicated that she did not feel she could give the Fernald Developmental Center cases a fair assessment based upon her personal beliefs. Accordingly the cases were reassigned in order to make an informed decision whether transfer of the individuals involved was an appropriate option to consider. This is not an unusual practice at the Arc to reassign case managers.

11) I am aware that the primary focus of Ms. Meagher's affidavit concerns the transfer of "Anna" from Fernald to the community. The Arc implemented various procedures to ensure that the decision to move into the Bedford home was Anna's decision. She has indicated her desire to reside at the Bedford home. Had Anna informed my staff of her desire to remain at Fernald, that request would have been honored. At no time did any member of the Arc attempt to or actually force Anna into living in the community against her wishes. In fact, Anna decided to begin her residency at the Bedford home independently, a day earlier than the Arc's intended transfer date.

12) Although not mentioned in Ms. Meagher's affidavit, similar procedures were implemented for other individuals for which the Arc serves as guardian in reaching informed decisions to move into the community.

13) The decisions to transfer Anna and other individuals were made after careful deliberation and consultation with relevant staff, clinicians and state representatives.

14) The Arc maintains that the services received by Anna and other individuals it provides guardianship services for is in their best interest and was implemented based upon their consent and desire to live in the community and our belief that they will be receiving the highest quality of care and quality of life in the new residence.

15) While the motion does not specifically ask that Anna and others served by the Arc move back to Fernald, it is the Arc's position that any consideration to do so would be detrimental to the needs and desires of the individuals. Such action should not be an option for the Court to consider.

I have read the foregoing and hereby state that it is true and accurate to the best of my abilities and recollection.

Signed under the Pains and Penalties of Perjury on this 25th day of February, 2008.

_____
Terri Angelone
Chief Executive Officer
Arc of Greater Boston

{Client Files\EMP\245085\0999\AAG\B0146881.DOC;1}