**George Mavridis**
202 Brooksby Village Drive Unit 308
Peabody, Massachusetts 01960-8517
978 535 4322 (voice & facsimile)
gmavridis@verizon.net

March 10, 2008

Attorney Michael Sullivan, Monitor
John J. Moakley Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

Reference: Ricci v Okin, 74-2769-T (Fernald) et al.

Subject: Comments on AT relocation case &
         Monitor's Report March 6, 2007

Dear Attorney Michael J. Sullivan:

United States District Court Judge Joseph L. Tauro assigned your office to investigate the transfer of AT, a 91-year old resident of Fernald to a state operated group home in Bedford, Massachusetts. I would like to address this unfortunate situation and comment on the Department of Mental Retardation transfer process as discussed in your report dated March 6, 2007.

Today the Department of Mental Retardation has placed an embargo on all communication and visits between AT and her friends and staff at Fernald. In a few months I suspect she will get resigned to her new living arrangements, the staff is being extra nice and she will report that everything at the Bedford home is acceptable and may be very good when questioned by or in the presence of Department of Mental Retardation staff. AT will be referring to the condition of her room, the furniture, quality of food and her treatment in general. Years ago this reconditioning of a person was called the Stockholm syndrome.

The major item that AT will not address will be her loss of 50-years of living in the same neighborhood with the same circle of friends, staff, access to familiar social events and attending Sunday Mass in her local parish church.

These intangible things will be her major loss and they are the major intangible items we try to give to ordinary elderly people in our communities. We have developed electric stair lifts, walk-in bathtubs and ramps at the front porch (both permanent and temporary) of houses and developed a new job category called "Home Health Aides." We, as a society are creating all these things so our elderly citizens can maintain their decades old homes and live out their lives in their community.

Attorney Sullivan, you expressed similar thoughts on pages 24 to 27 of your report.

**Former Governor Mitt Romney proposed and Governor Deval Patrick is committed to depriving AT and all the mentally retarded citizens the right to remain in their home of choice during their elder years. Why, just because they cannot vote?**

During the second half of 2006 Attorney Beryl Cohen; Diane Booher, former Fernald League President; and I were appointed by Judge Tauro to review the transfer documents for the first 43 Fernald residents who had been transferred out of Fernald. Our findings lead to your appointment as court monitor. We never had the opportunity to discuss our findings versus your findings.

If we had a discussion I would have noted the difference between a transfer document written in late 2003 and a transfer document written in 2005. In 2003 the individual transition plan was one page that listed the dates of proposed transfer visits to the new house and day programs. In 2005 Joanna, my cousin and ward, transferred to a state operated group home. Joanna's transfer plan was 9 pages and included her personal characteristics; an Individual Support Plan Review; Transition contact persons at Fernald, at the residential and day program agencies; Schedule of house and day program transfer visits including the number of familiar staff who should accompany Joanna; furniture to be transferred and new furniture that I would purchase; and her financial summary.

On page 13 you quoted DMR about "equal or better services." They responded that "the completed Individual Support Plan, in conjunction with the ISP Process represents the certification by the Facility Director (Linda Montminy) that the Individual's needs **are being** (my emphasis)met in the new location."

Joanna's certification of "equal or better services" is an individual support plan modification sheet signed by the facility director's designee. On July 7, 2005 the designee signed off and allegedly compared the last Fernald individual support plan (February 2005) with the first community individuals support plan (September 2005). July 7, 2005 Fernald's facility director's designee certified that Joanna's September 2005

2

Individual Support Plan met all needs specified in her February 2005 Individual Support Plan.

We (plaintiffs) think all the Fernald residents who transferred after February 25, 2003 relocated because of Governor Romney's proposal to close Fernald and not just a personal desire. Commissioner Gerald Morrissey first proposed offering all the residents a "right to return letter" in June 2004 as part of a 13-point plan. The plaintiffs rejected some of the items in the Commissioner's plan (The plan was given verbally and his counsel would not distribute copies of his prepared text.) that were not in the best interest of the residents. Commissioner Morrissey proceeded with those items that were beneficial to the Department and the right to return letter was not one of the acceptable 13 items. Commissioner Morrissey did not agree to distribute the right to return letter until Judge Tauro issued a court order in July 2005. The plaintiffs suggested that the right to return letter should apply to all the residents who transferred since February 2003 or at least from June 2004 (the day the letter was offered). The Commissioner rejected this idea. During the July 2005 court hearing Judge Tauro expressed the idea that when persons leave a home, you should always leave a window open for their return.

Unfortunately, I have to agree with your comments on page 16 about neglect and abuse trends, particularly sexual abuse, in community residences. Joanna transferred in August 2005 and was sexually abused in February 2006. The alleged abusers were read their Miranda rights but the case never went to trial because Joanna is profoundly retarded, could not testify as the victim and identify her abuser in court.

Beginning on page 20 you explain the legal difference between "consent" and "informed consent" On page 21 you state: "The doctrine of informed consent imposes on a physician the duty to explain the procedure to the patient and to warn him of any inherent risks or dangers, it is specific to the medical procedure and is not intended to be used synonymous to the requirement of consent."

For the severely or profoundly mentally retarded individuals, some with medical and behavioral complications, who still live at Fernald I would argue that relocation with these complications does require "informed consent."

My reason is the major difference is the availability of medical assistance between residing at Fernald or in a community house operated by a vendor or the state. You acknowledge on page 15. I think this a significant risk to medically fragile persons like AT. And your reference Kissinger v. Lofgren, 836 F.2d 678, 680 (1st Cir. 1988) would require the state to provide informed consent.

3

You conclude on page 21: "DMR's Notice of and the Request for Consent to proposed Facility Transfer letter in fact complies with the consent requirements for transfers involving non-medical circumstances. 115 CMR 5.08 requires informed consent for medical procedures and other potential invasion tactics or procedures such as Level II or III modification interventions (restraining an individual) or involving a person in research activities."

I believe the mildly retarded Fernald residents, without medical or behavioral complications were transferred from Fernald many years ago and I agree only consent was required.

Very truly yours,

George Mavridis
Fernald Plaintiff
Representative

cc:   Judge Joseph L. Tauro
      Attorney Rayford A. Farquhar
      Attorney Beryl Cohen